## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTH EASTERN DIVISION

| | |
|---|---|
| Tucker Oliver, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| HONDA MOTOR COMPANY LIMITED, AMERICAN HONDA MOTOR CO., INC., DENSO CORPORATION, and DENSO INTERNATIONAL AMERICA, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Tucker Oliver ("Plaintiff") brings this class action on behalf of himself and all others similarly situated against defendants Honda Motor Company Limited and American Honda Motor Co., Inc. (collectively "Honda"), Denso Corporation and Denso International America, Inc. (collectively "Denso").[1]  Based on personal knowledge as to matters relating to his own actions, and on information and belief based on the investigation of counsel, including counsel's review of consumer complaints available on the database of the National Highway Transportation Safety Administration ("NHTSA") and other publicly available information, as to all other matters, Plaintiff alleges as follows:

---

[1] Honda and Denso are collectively referenced as "Defendants."

## INTRODUCTION

1.      On April 27, 2020, Denso submitted a Part 573 safety recall report (the "Denso Recall Report" or "Recall Report")[2] to NHTSA voluntarily recalling approximately 2,020,000 defective low-pressure Denso fuel Pumps (the "Denso Recall") that it manufactured for automobile manufacturers because they posed a serious safety risk to vehicle occupants and others.  In the Denso Recall Report, Denso admitted that its low-pressure fuel pump is dangerously defective because it can fail and cause the vehicles to unexpectedly stall and cause engine shut down. Denso described the safety defect and its cause as follows:

> An impeller in some low pressure fuel pumps may become deformed under certain conditions which could render the fuel pump inoperable.
> …
> Under current knowledge, if an impeller is manufactured with a lower density, and contains a lower surface strength or is exposed to production solvent drying for a longer period of time, higher levels of surface cracking may occur which, when excessive fuel absorption occurs, may result in impeller deformation. Geographic location and vehicle applications influence the potential for deformation resulting in fuel pump inoperability.

2.      Denso admitted that the dangerous defect in its fuel pump ("Fuel Pump Defect") can cause rough running, engines to fail to start or stall at low speeds and

---

[2] The Recall Report is attached hereto as Exhibit A.

increase the likelihood of an automobile crash while driving at high speeds, describing the safety risks it poses to vehicle occupants and others as follows:

> If an impeller deforms to a point that creates sufficient interference with the fuel pump body, ***the fuel pump becomes inoperative.*** According to vehicle manufacturer's system evaluation, an inoperative fuel pump may result in the illumination of the check engine light and/or master warning indicators, ***rough engine running, engine no start and/or vehicle stall while driving at low speed,*** and, in rare instances, ***a vehicle could stall could occur while driving at higher speeds, increasing the risk of a crash***. (Emphasis added.)

3.     In the Denso Recall Report, Denso disclosed that a number of manufacturers collectively purchased over two million of Denso's self-described "defective/noncompliant equipment for possible use or installation in new motor vehicles or new items of motor vehicle equipment." Among these manufacturers is Honda. All of Honda's 2013-2019 vehicles equipped with Denso made low-pressure fuel pumps ("Class Vehicles") that gave rise to the Denso Recall are affected by the Recall.

4.     Denso's Recall of its defective fuel pumps is an admission that the Fuel Pump Defect in Class Vehicles presents an immediate and unreasonable risk of serious harm when the fuel pumps are used in their intended, foreseeable, and ordinary purpose.

5.     In fact, the Fuel Pump Defect in the Class Vehicles exposes occupants and others to extreme danger, or even death.  A vehicle that stalls or suffers engine

shutdown is at heightened risk for collision because it exposes drivers to react to remove themselves from danger, typically by exiting or attempting to exit the road. Drivers stranded on the side of the road experience a heightened risk of danger, whether it is from oncoming vehicles or weather elements.

6.     Fuel pump failure can also prevent the driver from accelerating at the necessary and anticipated pace. Diminished acceleration ability creates unexpected hazards, startling drivers of the Class Vehicles and other drivers in their proximity. Finally, once a Class Vehicle fuel pump fails, the vehicle becomes totally inoperable and will not start.

7.     Defendants collectively designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the subject fuel pump that includes the defective impeller identified in the Denso Recall. Additionally, at all material times, Defendants regularly met and collaborated, and continue to meet and collaborate, regarding product quality and trends. Through these regular discussions, each Defendant knew, should have known, or was reckless in not knowing what the other knew about the Fuel Pump Defect or the fuel pump in general.

8.     While Defendants knew, should have known, or was reckless in not knowing about the Fuel Pump Defect and the associated dangers, they manufactured, marketed, sold, leased, and warranted Class Vehicles, and, in their quest for

corporate profits, did not disclose to the unsuspecting public that Class Vehicles were inherently defective, dangerous and create a grave risk for bodily harm or death.  Defendants did not disclose, and to this day have not fully disclosed, what they knew about the Fuel Pump Defect to prospective purchasers and lessees, and existing owners and lessees.

9.      Honda unquestionably knew the Denso fuel pumps in its vehicles were defective, because, on January 29, 2019, Honda itself recalled approximately 437,032 of it vehicles for a defect in the Denso-made low-pressure fuel pump that can cause mechanical resistance, which can result in hesitated acceleration or stalling events (the "Honda Recall").[3]  Specifically, Honda admitted knowing of the Fuel Pump Defect as early as 2016.  Although Honda knew the Denso fuel pumps in its vehicles were defective, it misdiagnosed the condition and failed to provide an adequate repair. Specifically, rather than replacing all of the Denso defective fuel pumps with an a properly functioning or improved fuel pump, Honda issued a software upgrade as a temporary remedy for the Fuel Pump Defect if and when the fuel pump failed.  As a result, Class members whose vehicles were included in Honda's January 2019 recall did not receive a fix that actually remedied the dangerous Fuel Pump Defect in those vehicles.

---

[3] The Honda Recall Report is attached hereto as Exhibit B.

10.     The Honda Recall was inadequate because (1) it failed to accurately diagnose and remedy the Fuel Pump Defect, (2) it failed to include all Honda manufactured vehicles equipped with the Denso made low-pressure fuel pump, and (3) it failed to recommend that consumers quit driving their vehicle until it is repaired.

11.     As a result of Honda's actions and inactions, owners and lessees of the Class Vehicles have been and still are unknowingly driving on roads and highways in potentially ticking time bombs while Honda knowingly exposes its customers, from whom it made millions of dollars from the sale of the Class Vehicles, to the risk of grave physical harm or even death.

12.     Moreover, with or without a viable remedy for the Fuel Pump Defect, the Denso Recall has decreased the intrinsic and resale value of the Class Vehicles. Plaintiff and other Class members have been damaged as a result.

13.     Throughout the relevant period, Honda's marketing of the Class Vehicles was and is replete with assurances about their safety and dependability.  A vehicle that can suddenly stall and lose power during normal operating conditions is inherently unsafe and renders Honda's marketing of the Class Vehicles untrue and materially misleading.  Plaintiff and other Class members have been damaged as a result.

14.     Denso is also culpable because Denso and Honda together designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the defective fuel pump.

15.     Plaintiff brings this lawsuit on behalf of himself and all others similarly situated who own or lease a Class Vehicle equipped with the defective Denso fuel pump.

## JURISDICTION AND VENUE

16.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(a) and (d), because Plaintiff and Class members are citizens of a state different than Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

17.     Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff's Magnuson-Moss Warranty Act claim arises under federal law, and this Court has supplemental subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Honda because Honda conducts substantial business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by Honda anywhere were used or consumed in this state in the ordinary course of commerce,

trade, or use. Honda is one of the largest manufacturers and sellers of automotive vehicles in the world. Honda has, at all relevant times, conducted and continues to conduct business in Alabama, and every other state in the country.  Moreover, some Class Vehicles were manufactured at Honda Manufacturing of Alabama located in Lincoln, Alabama.

19.     This Court has personal jurisdiction over Denso because Denso routinely conducts business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by Denso anywhere were used or consumed in this state in the ordinary course of commerce, trade, or use. Vehicles all over the world, including this District, are equipped with Denso parts, including the Fuel Pump. Denso has, at all relevant times, conducted and continues to conduct business in Alabama, and every other state in the country.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of actions giving rise to these claims occurred in this District. Also, Honda has marketed, advertised, sold, and leased Class Vehicles within this District.

## **THE PARTIES**

**Plaintiff**

21.    Plaintiff Tucker Oliver is a citizen of Alabama and resides in Huntsville, Alabama.

22.    Plaintiff Oliver owns a 2016 Honda Accord which he purchased used from Jerry Damson Honda in Huntsville, Alabama in approximately October 2018 with approximately 18,000 miles on it.  Plaintiff Oliver's Accord is a Class Vehicle and equipped with the defective fuel pump.

23.    Prior to purchasing his class vehicle, Plaintiff Oliver interacted with at least one Honda sales representative who did not disclose the Fuel Pump Defect.

24.    Through his exposure and interaction with Honda, Plaintiff Oliver was aware of Honda's uniform and pervasive marketing message of dependability and safety, which is a primary reason he purchased his Class Vehicle.  However, despite touting the safety and dependability of the Class Vehicles, at no point did Honda disclose to him the Fuel Pump Defect.

25.    Plaintiff Oliver did not receive the benefit of his bargain.  He purchased a vehicle of lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  The Fuel Pump Defect has significantly diminished the value of Plaintiff Oliver's Class Vehicle.

26.    Had Honda disclosed the Fuel Pump Defect, Plaintiff Oliver would not have purchased his Class Vehicle, or certainly would have paid less to do so.

**Defendants**

### A. Honda Motor Company, Ltd.

27.    Defendant Honda Motor Company Limited ("HML") is a Japanese corporation with its principal place of business at 2-1-1, Minami-Aoyama Minato-Ku, 107-8556 Japan, and the parent company of American Honda Motor Company, Inc.

28.    HML, through its various entities (including American Honda Motor Company), designs, manufactures, markets, distributes and sells Honda automobiles in the United States, including Alabama.

### B. American Honda Motor Company, Inc.

29.    Defendant American Honda Motor Company, Inc. ("HMA"), is a California corporation with its principal place of business in Torrance, California.

30.    HMA is the U.S. sales and marketing subsidiary of, and is wholly owned by, HML, and is responsible for distributing, marketing, selling, and servicing Honda vehicles in the United States, including Alabama.

31.    HMA, through its various entities, designs, manufactures, markets, distributes and sells Honda automobiles through its hundreds of dealerships in the United States, including Alabama.

### C. Non-Party Acura

32.     Acura is a wholly owner brand, subsidiary, and/or division of HML and/or HMA.   HML and HMA employ engineering, legal, compliance, and regulatory personnel to make decisions regarding Acura vehicles.  These employees, on behalf of HML and HMA, ultimately made or ratified the decisions that gave rise to these claims.

**D. Denso Corporation**

33.     Defendant Denso Corporation ("DC") is a Japanese corporation located at 1-1, Showa-cho, Karlya, Alchi 448-9661, Japan.  DC is the parent company of Denso International America, Inc.

34.     DC, through its various entities, designed, engineered, tested, and validated the fuel pump that is equipped in Honda vehicles sold/leased in the United States, including in Plaintiff's state.

**E. Denso International America, Inc.**

35.     Denso International America, Inc. ("DIAM") is incorporated in Delaware and has its principal place of business at 2477 Denso Drive Southfield, Michigan 48033.

36.     DIAM is "Denso's North American regional headquarters and parent company for its North American operations, including design and production engineering, technical support, sales and finance."

37.    DIAM, through its various entities and on behalf of DC, designed, engineered, tested, and validated the Fuel Pump that is equipped in Honda Vehicles across the Unites States, including in Plaintiff's state.

## FACTUAL ALLEGATIONS

38.    Honda manufactures, markets, and sells vehicles all over the United States, including Alabama.

39.    Honda has branded itself as the maker of safe and dependable vehicles and has spent millions of dollars on extensive marketing and advertising campaigns to cement the association of safety and reliability with its Honda and Acura brands, including the Class Vehicles.  Through its investment marketing, Honda sought to portray itself as the safest vehicle brand on the market.

40.    Denso is the world's second largest Tier1 Original Equipment Manufacturer ("OEM"), producing parts and products for Honda and other manufacturers.  According to its website, Denso recorded nearly $50 billion in consolidated net sales in 2019.

41.    According to Denso itself, when designing, engineering, testing, and manufacturing its products, Denso aims to "[c]ontribute to future mobility that is safer, more comfortable and convenient for everyone."  The Fuel Pump fails to meet Denso's published standard.

42.     The Defendants collectively designed, engineered, tested, validated, manufactured and placed in the stream of commerce the Fuel Pump in a manner that subjects Class members to an unreasonable risk of death or injury.  Nonetheless, Honda marketed and sold the Class Vehicles, and has, at all times, uniformly branded the Class Vehicles as safe and dependable.

## I.     THE OPERATION OF CLASS VEHICLES' LOW-PRESSURE FUEL PUMP

43.     The Class Vehicles are equipped with Denso made low-pressure fuel pumps (the "Fuel Pump").

44.     All Class Vehicles are equipped with the same or substantially similar defective Fuel Pump.

45.     The Fuel Pump assembly is mounted inside of the fuel tank.  The Fuel Pump assembly consists of a fuel intake strainer at one end and a fuel output line at the other.  At the heart of the Fuel Pump assembly is an electric motor with a plastic impeller attached to a rotating shaft.  Protruding from the side of the Fuel Pump assembly is a fuel level float and a fuel level sender.  Figure One illustrates the parts of the Fuel Pump assembly.



*Figure 1 Fuel Pump Assembly Diagram*[4]

46.     As the electric motor rotates, the impeller spins generating negative pressure.  The negative pressure pulls fuel into the pump housing while it passes through the electric motor assembly and exits through the output, into the fuel line and forward to the fuel filter.  After exiting the fuel filter, the fuel flow is accelerated

---

[4] http://www.agcoauto.com/content/news/p2_articleid/195 (last visited May 11, 2020).

via a high pressure pump which delivers pressurized fuel to injectors mounted in the engine.  Figure Two illustrates this sequence.



*Figure 2 Fuel Pump Sequence*[5]

47.    At  all  times,  by  design,  the  Fuel  Pump  assembly  and  all  of  its components are exposed to gasoline within the tank.  Fuel pumps are designed to survive the harsh environment for at least 200,000 miles.[6]

## II.    THE  CLASS  VEHICLES  SUFFER  FROM  A  FUNDAMENTALLY DEFECTIVE FUEL PUMP

48.    As described herein, the Class Vehicles' Fuel Pump suffers from a fundamental defect causing it to prematurely fail.  Based on Denso's own admission, the failure results from a defectively designed plastic impeller in the Fuel Pump.

---

[5] https://www.autoplusdubai.net/blog/fuel-pumps-common-causes-and-how-to-identify-it/ (last visited May 11, 2020).
[6] https://www.autoblog.com/2015/11/24/how-long-does-a-fuel-pump-usually-last/ (last visited May 11, 2020).

49.     The Defendants' goal in designing a Fuel Pump must be to design one that operates safely for the life of the vehicle.  The Fuel Pump assembly in the Class Vehicles was underdesigned.  Specifically, as Denso admitted in the Denso Recall Report, "[i]f an impeller deforms to a point that creates interference with the fuel pump body, the fuel pump becomes inoperative."[7]

50.     Plastics absorb liquids, typically.  However, the degree of absorption varies depending on the type of plastic and its environmental conditions.  When plastics absorb liquid, such as gasoline, the plastic pieces' intended dimensions change.  Therefore, manufacturers like Denso and Honda must adequately design and validate plastic materials exposed to liquids to ensure that they remain dimensionally stable.

51.     Denso admitted its impeller was poorly designed to the point it cannot remain dimensionally stable under its intended conditions.  Specifically, Denso admitted in the Denso Recall Report that the impeller "may become deformed" causing the Fuel Pump to fail and become inoperable.[8]

52.     The Defendants did not design the Fuel Pump and impeller with the necessary robustness to operate safely under normal operating conditions.

---

[7] Exhibit A
[8] *Id.*

53.     At the time Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the Fuel Pump, they were aware of, and had access to, reasonable alternative designs.  Such designs would mitigate or eliminate the Fuel Pump Defect.

54.     For example, Defendants could have mitigated or eliminated the Fuel Pump Defect by using different designs and/or materials where:

> a.  The impeller was not fuel permeable under intended and foreseeable purposes;
>
> b.  The impeller would not lose its dimensional stability under intended and foreseeable purposes; and/or
>
> c.  The impeller would not contact the fuel pump body under intended and foreseeable purposes.

55.     Nevertheless, Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce Class Vehicles equipped with the defective Fuel Pumps that cause an unreasonable risk of injury or death to the Plaintiff, Class members, and others.

56.     Additionally, the Fuel Pump Defect not only damages the Fuel Pump, but it also damages other downstream components separate from the product itself.

57.     Specifically, the Fuel Pump feeds a down-stream high-pressure fuel pump. The fuel supplied cools and lubricates the high-pressure pump, two purposes

critical to fuel pump function and longevity. The Fuel Pump Defect deprives the high-pressure pump of both benefits, causing overheating, cavitation and immediate and accelerated wear from decreased fuel flow volume. The Fuel Pump Defect also causes anemic/incomplete combustion, manifesting as engine shake, as Denso admitted in the Denso Recall Report. Engine shake causes immediate and accelerated wear on rubber engine and drivetrain mounts.  Additionally, the Fuel Pump Defect causes anemic/incomplete combustion that manifests in lean combustion, which overheats and damages the catalytic converter's active materials - platinum, palladium and rhodium.

58.    The additional component wear begins the moment the Fuel Pump Defect manifests and is permanent.  The Fuel Pump Defect damaged, and continues to damage, Plaintiff and the Class members as the accelerated and irreversible damage to the above-mentioned components requires their replacement to restore the vehicle to its intended and reliably operable condition.

## III.   THE DESIGN FLAW REDUCES ENGINE POWER, CAUSES VEHICLE STALLING, AND CAN LEAVE THE CLASS VEHICLES COMPLETELY INOPERABLE COMPROMISING CONSUMER SAFETY

59.     The Fuel Pump Defect in the Class Vehicles exposes occupants and others to extreme danger, even death.  In fact, Denso specifically admitted in the Denso Recall Report that the Fuel Pump Defect can "increas[e] the risk of a crash."[9]

60.     The Fuel Pump is an integral component of safe vehicle operation.  But as described herein, the Class Vehicles suffer from a fundamental design flaw that causes the Fuel Pump to prematurely fail.  As Denso admitted in the Denso Recall Report, the deformed impeller comes in contact with the Fuel Pump body, creating excess running resistance, causing:

> illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash. [10]

61.     Engines necessarily require steady gasoline supply in order to function properly.  The Fuel Pump's primary purpose is to transfer gasoline from the tank to the engine. But when the Fuel Pump fails, gasoline is not supplied to the engine, causing reduced engine power, stalling, and/or engine shutdown.

62.     Compounding the problem, Fuel Pump Defect occurs spontaneously with no advance warning to the consumer, thereby creating an extremely dangerous

---

[9] Exhibit A, P. 1.
[10] *Id.*

condition for drivers, including those on the road who may be left helpless and unable to take action to get out of the way of oncoming traffic or reach safety.

63.     Class members' complaints set forth below exemplify the real-world dangers caused by the Fuel Pump Defect.

64.     Vehicle manufacturers like Honda monitor NHTSA and other databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, Honda knew, or should have known, of the many complaints lodged with NHTSA and elsewhere about the specific safety hazard that is the subject of the Recalls.

65.     By way of example, the consumer complaints set forth below demonstrate the seriousness of the Fuel Pump Defect and further show that Honda knew, should have known, or was reckless in not knowing of them.

66.     For example, on February 4, 2014, the owner of a 2013 Honda Accord filed the following complaint with NHTSA:

> SINCE I FIRST PURCHASED MY 2013 HONDA ACCORD, THE HONDA HAS INTERMITTENT HESITATIONS AFTER STOPPING AT TRAFFIC LIGHTS, STOP SIGNS, PARKING AND SO FORTH. FOR INSTANCE, FOR THE SECOND TIME IN THE LAST FIVE DAYS, I STOPPED, WENT INTO A STORE, RETURNED, CRANKED HONDA ACCORD, BACKED OUT, AND THE CAR WOULD NOT "GO."[11]

---

[11] NHTSA ID No. 10562814.

67.     On August 1, 2013, the owner of a 2013 Honda Accord filed the

following complaint with NHTSA:

> THERE IS A HESITATION/JERK/SHUDDER WHEN
> ACCELERATING AT VARIOUS SPEEDS. *TR[12]

68.     On November 7, 2015, the owner of a 2014 Honda Accord filed the

following complaint with NHTSA:

> MY 2014 HONDA ACCORD COUPE HAS 33,900+
> MILES AND FOR THE PAST YEAR, I HAVE HAD IT
> IN TO FOX HONDA IN GRAND RAPIDS FOUR
> TIMES FOR THE SAME PROBLEM. THE PROBLEM
> IS,    THAT    IT    STUTTERS    OFTEN    WHEN
> ACCELERATING AND TWICE, THE ENGINE HAS
> STALLED OUT AND HAD TO BE RESTARTED.[13]

69.     On December 1, 2014, the owner of a 2014 Honda Accord filed the

following complaint with NHTSA:

> SIMILAR TO NHTSA COMPLAINTS #10619205,
> #10607907, #10655300, #10630708, AND #10628501.
> DRIVING MY VEHICLE ON INTERSTATE, GOING
> APPROXIMATELY 70 MPH. THE VEHICLE CAME
> TO    A    LARGE    INCLINE    AND    BEGAN
> ACCELERATING, AND ALL OF A SUDDEN, THE
> ENTIRE VEHICLE SHUDDERED VIOLENTLY AND
> LOST    ALL    ACCELERATION,    AND    THE
> MALFUNCTION INDICATOR LAMP CAME ON AND
> WAS BLINKING. IT FELT LIKE THE VEHICLE HAD
> SHIFTED OUT OF GEAR, AND IT COULD NOT GET
> BACK IN GEAR. AFTER OVER 10 MINUTES, I
> RESTARTED THE VEHICLE, AND THE LIGHT DID
> NOT COME BACK ON. ALTHOUGH I COULD FEEL

---

[12] NHTSA ID No. 10533047.
[13] NHTSA ID No. 10788979.

THAT PUSHING ON THE GAS PEDAL DID NOT
FEEL THE SAME, AND IT FELT AS IF THE VEHICLE
WAS HESITATING AND STRUGGLING TO SWITCH
GEARS UP AND ACCELERATE.[14]

70.     On February 14, 2017, the owner of a 2014 Honda Accord filed the

following complaint with NHTSA:

TL* THE CONTACT OWNS A 2014 HONDA
ACCORD. WHILE DRIVING VARIOUS SPEEDS, THE
VEHICLE HESITATED AND THEN LUNGED
FORWARD WHEN THE ACCELERATOR PEDAL
WAS DEPRESSED THE DEALER COULD NOT
DETERMINE THE CAUSE OF THE FAILURE. THE
FAILURE RECURRED INTERMITTENTLY. THE
MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 14,000.
THE VIN WAS NOT AVAILABLE. UPDATED
05/17/17*LJ[15]

71.     On August 3, 2016, the owner of a 2014 Honda Accord filed the

following complaint with NHTSA:

TL* THE CONTACT OWNS A 2014 HONDA
ACCORD. WHILE DRIVING VARIOUS SPEEDS, THE
VEHICLE ACCELERATED INDEPENDENTLY
WITHOUT WARNING. THE CONTACT MENTIONED
THAT THE VEHICLE WAS BRAKING
INDEPENDENTLY WITHOUT WARNING. IN
ADDITION, THE STEERING WHEEL STIFFENED
AND TURNED RIGHT AND LEFT
INDEPENDENTLY. THE VEHICLE WAS TAKEN TO
THE DEALER WHERE THE CAUSE OF THE
FAILURE WAS UNDETERMINED. THE VEHICLE
WAS NOT REPAIRED. THE MANUFACTURER WAS

---

[14] NHTSA ID No. 10661422.
[15] NHTSA ID No. 10954427.

NOTIFIED OF THE FAILURE. THE APPROXIMATE
FAILURE MILEAGE WAS 18,000.[16]

72.     On March 9, 2016, the owner of a 2015 Honda Accord filed the

following complaint with NHTSA:

> WHEN   YOU   PRESSURE   [sic.]   ON   THE
> ACCELERATOR PEDAL TO POWER THE VEHICLE
> (LIKE    PULLING    OUT    INTO    TRAFFIC    OR
> CHANGING LANES IN TRAFFIC, THE CAR STALLS
> AND PUT YOU AT RISK OF GETTING INTO AN
> ACCIDENT. IT HAPPENS SITTING AT A TRAFFIC
> LIGHT OR DRIVING 55 MPH AND TRYING TO
> CHANGE LANES. DOES NOT MATTER IF THE CAR
> IS WARM OR COLD, BUT OCCURS LESS WHEN
> COLD.[17]

73.     On July 30, 2016, the owner of a 2013 Honda Civic filed the following

complaint with NHSTA:

> VEHICLE   HESITATES   UNDER   ACCELERATION.
> SOMETIMES ALMOST STALLING. I FEEL THIS IS
> NOT SAFE FOR MY SON AT TIMES. MERGING
> ETC.[18]

74.     On April 22, 2015, the owner of a 2013 Honda Civic filed the following

complaint with NHTSA:

> WTHILE DRIVING AND SLOWING TO MAKE A
> LEFT TURN AT A FLASHING YELLOW LIGHT
> INTERSECTION AND BEING AN AUTOMATIC
> TRANSMISSION, I DRIVE TWO FOOTED, FOR
> QUICKER RESPONSE TIME. UPON STEPPING ON

---

[16] NHTSA ID No. 10892728.
[17] NHTSA ID No. 10854846.
[18] NHTSA ID No. 10891787.

> ACCELERATOR THE VEHICLE HESITATES FOR 3-
> 4 SECONDS BEFORE PICKING UP SPEED. WHEN
> TAKEN TO THE DEALER, I AM TOLD IT IS A 2
> FOOTED DRIVER ISSUE AND NOTHING THEY CAN
> BE DONE. I HAVE LEFT IT 24 HOURS AND BEEN
> TOLD, 'NO PROBLEM FOUND'.[19]

75.     On October 19, 2017, the owner of a 2014 Honda Civic filed the
following complaint with NHTSA:

> HESITATION WHEN PRESS ON ACCELERATOR.
> THEY IS VERY DANGEROUS WHEN GETTING OUT
> INTO TRAFFIC AND WHEN YOU PRESS ON
> ACCELERATOR THERE IS A LONG HESITATION. I
> HAVE REPORTED THIS TO HONDA SERVICE
> NUMEROUS TIMES AND THEY SAY THIS IS
> NORMAL AND CAN'T DUPLICATE THE ISSUE.[20]

76.     On November 28, 2014, the owner of a 2014 Honda CR-V filed the
following complaint with NHTSA:

> CAR HESITATES RANDOMLY FROM DEAD STOP.
> STARTS OFF AT ABOUT 2 MPH AND DOES NOT
> ACCELERATE UNTIL 5 TO 10 SECONDS EVEN
> THOUGH YOU ARE PRESSING ON GAS PEDAL.
> HONDA HAS NO EXPLANATION FOR THE
> RANDOM OCCURRENCE. THIS HAS HAPPENED TO
> ME AT LEAST 20 TIMES. DOES NOT SHOW UP ON
> COMPUTER DIAGNOSTICS. REPLACED 2014 CR-V
> AFTER 10 WEEKS WITH 2015 CR-V. 2015 MODEL
> HAS DIFFERENT ISSUES. NO MORE HONDAS!!!
> TOOK A BIG FINANCIAL HIT ON REPLACING A
> 2014 CR-V AFTER 10 WEEKS WITH A 2015 CR-V.
> CAR TOO DANGEROUS TO DRIVE. *TR[21]

---

[19] NHTSA ID No. 10758502.
[20] NHTSA ID No. 11034722.
[21] NHTSA ID No. 10661194.

77.    On October 5, 2016, the owner of a 2015 Honda CR-V filed the following complaint with NHTSA:

> VEHICLE WILL NOT RESPOND WHEN FOOT IS PLACED ON THE ACCELERATOR. WHEN ATTEMPTING TO MOVE THE CAR FORWARD FROM A STOP SIGN OR SIGNAL LIGHT THE VEHICLE WILL NOT RESPOND TO THE GAS PEDAL FOR UP TO 5 SECONDS. BASICALLY THERE IS A DELAY FROM WHEN THE GAS PEDAL IS PRESSED UNTIL THE VEHICLE RESPONDS. THIS HAS HAPPENED 5 TIMES IN PAST 6 TO 7 WEEKS. THIS ACTION HAS HAPPENED WHEN ATTEMPTING TO MOVE FROM A COMPLETE STOP OR WHEN THE VEHICLE IS MOVING AT A VERY SLOW SPEED. I ESCAPED A NEAR REAR END COLLISION WHEN I REMOVED MY FOOT FROM THE BRAKE, PRESSED ON THE GAS PEDAL AND THE CAR DID NOT RESPOND.[22]

78.    On September 5, 2018, the owner of a 2016 Honda CR-V filed the following complaint with NHTSA:

> HESITATION WHEN TRYING TO ACCELERATE. HAPPENS ANYTIME- STEP ON THE GAS AND IT TAKES A FEW SECONDS BEFORE THE ACCELERATION STARTS.[23]

79.    On January 17, 2017, the owner of a 2016 Honda CR-V filed the following complaint with NHTSA:

> TL* THE CONTACT OWNS A 2016 HONDA CR-V. WHILE DRIVING VARIOUS SPEEDS, THE

---

[22] NHTSA ID No. 10779918.
[23] NHTSA ID No. 11124554.

ACCELERATOR PEDAL WAS DEPRESSED. THE
VEHICLE FAILED TO RESPOND WITHOUT
WARNING. THE VEHICLE WAS NOT DIAGNOSED
OR REPAIRED. THE CONTACT STATED THAT THE
FAILURE RECURRED SEVERAL TIMES. THE
MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE
WAS 4,000. ...UPDATED 02/22/17 *BF[24]

80.    On October 15, 2018, the owner of a 2017 Honda CR-V filed the

following complaint with NHTSA:

I BOUGHT MY CR-V IN FEB 2017. SINCE 6TH OCT
2018 I HAVE BEGUN TO NOTICE HESITANCY
PROBLEMS WITH ACCELERATION AFTER
COMING TO A COMPLETE STOP AND IN SOME
CASES THE ENGINE HAS ALSO STALLED. CAR
WAS NOT IN ECON MODE, BEING DRIVEN ON 'D'
MODE ON A CITY STREET. FACED SIMILAR ISSUE
ON A HIGHWAY WHILE IN TRAFFIC. TODAY
(15TH OCT) IT HAPPENED THRICE BACK TO BACK
IN A 20 MINUTE DRIVE ON A CITY STREET.[25]

81.    On December 10, 2018, the owner of a 2018 Honda CR-V filed the

following complaint with NHTSA:

I WAS FIRST IN LINE IN THE LEFT LANE ON A
CROSS OVER TO A ONE WAY STREET THAT GOES
FROM RIGHT TO LEFT. I WAS AT A STOP WAITING
FOR A TIME I COULD TURN AND TRY TO GET
OVER 4 LANES OF TRAFFIC. THERE ARE 4 LANES
ON THE ONE WAY STREET WHICH IS M-59 ALSO
KNOW AS HALL ROAD AND I WAS GOING TO
HAVE TO GO FAST AS I WAS GOING TO HAVE TO
FIRST GET IN THE FAR LEFT LANE AND THEN

---

[24] NHTSA ID No. 10945745.
[25] NHTSA ID No. 11140320.

CROSS OVER THE OTHER 3 LANES TO THE RIGHT AND EXIT AT A DRIVE TO WHERE I WAS TRYING TO GET TO. I KNEW IT WAS GOING TO TAKE MAXIMUM ACCELERATION AND A DEFT TOUCH TO GET OVER THERE SAFELY. AS I TRIED TO DO THIS AND AS I MADE MY FIRST MOVE INTO THE LEFT LANE, MY CAR HESITATED AND DID NOT GIVE ME THE FULL ACCELERATION I WAS EXPECTING. THIS CAUSED ALL THE TIMING I NEEDED TO MAKE THIS MANEUVER SAFELY GO OUT THE WINDOW AND PUT ME IN A PRECARIOUS SITUATION. I HAD TO MAKE IN MY OPINION A VERY DANGEROUS MOVEMENT TO THE RIGHT TO AVOID A CAR THAT WAS CLOSING IN FAST FROM BEHIND BECAUSE I COULD NOT GET THE SPEED UP. THIS IS THE FIRST TIME THIS HAS HAPPENED ON THIS CAR. I WAS ABLE TO GET WHERE I WANTED TO GO BUT NOW HAVE NO CONFIDENCE IN THE RELIABILITY OF TRYING TO MAKE THIS MANEUVER AGAIN.[26]

82.     On March 27, 2017, the owner of a 2014 Acura MDX filed the following complaint with NHTSA:

VEHICLE HESITATES WITH ACCELERATION AND DOES NOT MAINTAIN CONSTANT SPEED. WITH ACCELERATION, THE VEHICLE HESITATES AND THEN LURCHES SUDDENLY. THE VEHICLE FAILS TO MAINTAIN A CONSTANT VELOCITY, ESPECIALLY GOING UP A SLIGHT GRADE, MOST NOTICEABLY AT 35MPH AND 45MPH.[27]

83.     On June 22, 2014, the owner of a 2014 Acura MDX filed the following complaint with NHTSA:

_____

[26] NHTSA ID No. 11160559.
[27] NHTSA ID No. 10968675.

WHILE TRYING TO ACCELERATE DURING A LEFT
TURN, THE ENGINE COMPLETELY LOST POWER
AND THE ACCELERATOR WOULD NOT WORK.
ALL ENGINE WARNING LIGHTS CAME ON. WE
NEARLY AVOIDED AN ACCIDENT BY COASTING
INTO THE CENTER LANE. I HAD TO TURN OFF
THE CAR AND RESTART IN ORDER TO GAIN THE
ABILITY TO ACCELERATE AGAIN, BUT ALL THE
WARNING LIGHTS REMAINED ON. DROVE IT TO
THE DEALER, BUT THEY HAVE YET TO BE ABLE
TO DETERMINE WHAT THE PROBLEM IS. THIS IS
THE 3RD TIME THIS HAS HAPPENED - ALL
DURING THE FIRST 5 MINUTES OF DRIVING
DURING THE MORNING. THE LAST INCIDENT
COULD HAVE RESULTED IN A SERIOUS CRASH.
*TR[28]

84.     On April 12, 2019, the owner of a 2017 Acura MDX filed the following

complaint with NHTSA:

DANGEROUS    LOSS    OF    POWER    WHILE
ACCELERATING ON THE HIGHWAY! THERE
HAVE BEEN THREE SEPARATE INCIDENCES
OVER THE LAST 2 YEARS. WHILE I WAS TRYING
TO ACCELERATE ON THE HIGHWAY, THE CAR
SEVERELY LOST POWER AND THE "CHECK
ENGINE" LIGHT STARTED FLASHING. THE CAR
SEEMED   TO   OPERATE   NORMALLY   AFTER
TURNING OFF AND ON THE ENGINE. THE
DEALERSHIP CLAIMED THAT THERE WAS NO
COMPUTER RECORDS OF PROBLEMS AFTER
EACH  INCIDENCE.  ACURA  JUST  ISSUED  A
RECALL OF THE FUEL PUMP ON THIS MODEL
YEAR MDX. HOWEVER, ACURA AND THE LOCAL
ACURA DEALERSHIP REFUSED THE REPAIR DUE

---

[28] NHTSA ID No. 10605016.

TO THE LACK OF COMPUTER RECORD OF FAILURE.[29]

85.    On April 10, 2015, the owner of a 2015 Acura TLX filed the following complaint with NHTSA:

> TL* THE CONTACT OWNS A 2015 ACURA TLX. THE CONTACT STATED THAT WHILE SLOWING TO SPEEDS BETWEEN 3-5 MPH, THE VEHICLE HESITATED TO ACCELERATE WHEN ENGAGING THE ACCELERATOR PEDAL. THE CONTACT INDICATED THAT THE FAILURE WAS INTERMITTENT AND OCCURRED ON SEVERAL OCCASIONS. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 200.[30]

86.    On November 7, 2019, the owner of a 2016 Acura TLX filed the following complaint with NHTSA:

> FROM A STOPPED POSITION, MOVING FORWARD MY VEHICLE HESITATED AND DECREASED IN POWER AND THE GAS PEDAL DID NOT HELP MOVING THE VEHICLE FORWARD. THIS HAPPENED IN THE MIDDLE OF THE INTERSECTION FOR SEVERAL SECONDS 10-15 BEFORE THE VEHICLE STARTED MOVING FORWARD AGAIN.[31]

87.    On August 6, 2019, the owner of a 2016 Acura TLX filed the following complaint with NHTSA:

---

[29] NHTSA ID No. 11195860.
[30] NHTSA ID No. 10704864.
[31] NHTSA ID No. 11278642.

TL* THE CONTACT OWNS A 2016 ACURA TLX. THE CONTACT STATED THAT THE VEHICLE SUDDENLY STALLED AND VARIOUS UNKNOWN INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO FRESNO ACURA (7250 N PALM AVE, FRESNO, CA 93711, (559) 431-3400) WHERE IT WAS DIAGNOSED THAT THE FUEL PUMP FAILED. THE VEHICLE WAS NOT REPAIRED AND THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 86,000.[32]

88.     The above complaints are mere examples of the ones lodged with NHTSA regarding the Fuel Pump Defect.  All the complaints above experienced symptoms associated with the Fuel Pump Defect.[33]

89.     Honda knew that the Fuel Pump Defect was present in all Class Vehicles equipped with the defective Denso Fuel Pump, as demonstrated above, but it failed to include them in the Recall.  Honda's unconscionable act deprives those Class members not included in the Recall a free and adequate repair, if one is devised and implemented.

90.     As demonstrated, the Fuel Pump Defect affects all Class Vehicles, and not just the vehicles that were part of Honda's January 2019 Fuel Pump recall. Additionally, the Fuel Pump Defect creates an unreasonable risk of injury or death to Plaintiff, Class members, and others.

---

[32] NHTSA ID No. 11242131.
[33] *See* Exhibit A.

Case 5:20-cv-00666-MHH   Document 1   Filed 05/11/20   Page 31 of 80

91.    The Fuel Pump Defect causes Class Vehicles to become dangerous and

inoperable while on the road and therefore they are not fit for their ordinary purpose.

## IV.    DEFENDANTS KNEW, SHOULD HAVE KNOWN, OR WERE RECKLESS IN NOT KNOWING ABOUT THE FUEL PUMP DEFECT, BUT CONTINUED TO MANUFACTURE, MARKET, AND SELL CLASS VEHICLES

92.    Defendants knew, should have known, or were reckless in not knowing

about the Fuel Pump Defect, but concealed or failed to disclose the defect and

continued to manufacture, market, and sell Honda's popular Class Vehicles

equipped with the dangerously defective Denso Fuel Pump.    Specifically,

Defendants knew, should have known, or were reckless in not knowing the defective

Fuel Pumps in the Class Vehicles exposed Class members to extreme danger and, in

order to render them safe, the Class Vehicles needed new or enhanced Fuel Pumps

that functioned safely and as intended. Nonetheless, Defendants failed to take

corrective action.

93.    In fact, Defendants knew, should have known, or were reckless in not

knowing about the Fuel Pump Defect since the pre-release process of designing,

manufacturing, engineering, and testing the Class Vehicles.  During these phases,

Defendants gained comprehensive and exclusive knowledge about the Fuel Pumps,

particularly the basic engineering principles behind the construction and function of

the Fuel Pumps such as their impellers' susceptibility to fuel absorption and

deformation.  However, Defendants failed to act on that knowledge and instead

installed the defective Fuel Pumps in the Class Vehicles, and Honda subsequently marketed and sold the vehicles to unsuspecting consumers without disclosing the safety risk or warning Class members.

94.    Moreover, Honda, specifically, knew about the Fuel Pump Defect based on the number of claims for Fuel Pump Defect repair and replacement that it admits to receiving.[34]

95.    Further, federal law requires automakers like Honda to be in close contact with NHTSA regarding potential defects.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).  Accordingly, Honda should (and does) monitor NHTSA databases for consumer complaints regarding their automobiles as part of their obligation to identify potential defects in their vehicles, such as the Fuel Pump Defect.

96.    From its monitoring of the NHTSA databases, Honda knew or should have known of the many Fuel Pump Defect complaints lodged, such as those quoted in Section III above.  However, Honda failed to act on that knowledge by warning Class members.

97.    Finally, Honda, knew its fuel pumps were defective, as indicated by its January 29, 2019 recall of approximately 437,032 Honda manufactured vehicles for a defect in the Denso made low-pressure fuel which can cause mechanical resistance

---

[34] Exhibit B.

that results in hesitated acceleration or stalling events, as discussed in more detail below.[35]

98.     The Defendants, at all material times, regularly met and collaborated, and continue to meet and collaborate, regarding product quality and trends.  Through these regular discussions, each Defendant knew, should have known, or were reckless in not knowing what the other knew about the Fuel Pump Defect or the Fuel Pump in general.

99.     Despite Defendants' extensive knowledge, they failed to act on that knowledge by warning Class members.  Sacrificing consumer safety for profits, Defendants instead chose to enrich themselves by using false and misleading marketing to sell the Fuel Pumps and Class Vehicles as safe and durable at inflated prices.

## V.   HONDA CONTINUOUSLY TOUTED CLASS VEHICLES AS SAFE AND DEPENDABLE, CONCEALING THE FUEL PUMP DEFECT

100.   Honda's overarching marketing message for the Class Vehicles was and is that the vehicles are safe and dependable and that their engines can be relied on to perform well.  This marketing message is false and misleading given the propensity of the Fuel Pumps in the Class Vehicles to fail, causing the vehicles'

---

[35] *Id.*

engines to run rough, stall and become inoperable which, as Honda admits, creates

an unreasonable risk of a crash.

101.   For example, Honda dedicates a page on its website entitled "safety,"

where Honda touts the safety its vehicles, as the screenshots below indicate:[36]





102.   Honda's long term, uniform, and pervasive marketing message goes back as far as 2010, when Honda similarly dedicated a portion of its website touting the safety of its vehicles, as the screenshot below indicates:[37]



---

[37] http://web.archive.org/web/20100910233536/http://corporate.honda.com/safety/ (last visited May 10, 2020).

103.   Honda made similar representations on its website throughout the class

period, as the screenshots below indicate:[38]



[38] **2013:** http://web.archive.org/web/20130518073455/http://corporate.honda.com/safety/ (last visited May 10, 2020); **2015:** http://web.archive.org/web/20150322031420/http://corporate.honda.com/safety/ (last visited May 10, 2020); **2019:** http://web.archive.org/web/20191231113751/https://www.honda.com/safety (last visited May 10, 2020).





104.   In addition to its general marketing message of safety, Honda made similar representations about the quality of the Class Vehicles.  For example, below is a screen shot from a 2013 Honda Accord sales brochure:[39]



105.   Below is a screenshot of a 2013 Honda CR-V:[40]

---

[39] https://cdn.dealereprocess.org/cdn/brochures/honda/ca/2013-accord.pdf (last visited May 10, 2020).

[40] https://cdn.dealereprocess.org/cdn/brochures/honda/2013-crv.pdf (last visited May 10, 2020).



SAFETY COMES ALONG FOR
EVERY ADVENTURE

**HOLD THE COURSE**

In the event of an oversteer or understeer, Vehicle Stability Assist™ can automatically brake individual wheels and/or reduce engine power. It also features a traction control function to help prevent wheelspin during acceleration.

**INNER STRENGTH**

The Advanced Compatibility Engineering™ (ACE™) body structure is a Honda-exclusive body design, and it utilizes a network of connected structural elements to help distribute frontal crash energy more evenly throughout the front of the vehicle.

**A BREAKTHROUGH IN BRAKING**

Brake Assist, a component of the anti-lock braking system (ABS), helps apply full braking force in some emergency situations. Electronic Brake Distribution (EBD) helps balance braking forces depending upon dynamic loading.

106.   Below is a screenshot of a 2013 Acura MDX:[41]

---

[41] https://cdn.dealereprocess.org/cdn/brochures/acura/ca/2013-mdx.pdf (last visited May 10, 2020).



107.   Honda made similar representations throughout the class period.  For example, below is a screenshot from a 2015 Honda Accord:[42]



---

[42] https://cdn.dealereprocess.net/cdn/brochures/honda/2015-accord.pdf (last visited May 10, 2020).

108.   Below is a screenshot from a 2015 Honda Civic sales brochure:[43]



109.   Below is a screenshot from a 2015 Acura MDX sales brochure:[44]

---



110.   Below is a screenshot of a 2018 Honda Accord sales brochure:[45]

[45] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2018/Accord-Sedan/brochure/MY18-Accord-Brochure-Model-Site.pdf (last visited May 10, 2020).



111.   Below is a screenshot of a 2018 Acura MDX sales brochure:[46]



112.   As demonstrated, Honda employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability.

113.   Despite Honda's knowledge and uniform and pervasive marketing message of safety and dependability, nowhere does Honda disclose the Fuel Pump Defect or the unreasonable risk to safety it poses, as admitted in the Recall Report.

114.   A car with a defective fuel pump that can cause the engine to studder or stall while the vehicle is in motion, as do the Class Vehicles, and thereby exposes occupants to an unreasonable risk of injury or death *is not a safe car*.  Thus, Honda's marketing of the Class Vehicles as safe and dependable is false and misleading and omits facts that would be material to consumers such as Class members who purchased or leased Class Vehicles because they consistently marketed as having the utmost safety on the road.

115.   Honda marketed the Class Vehicles as safe and dependable, but failed to disclose the existence, impact, and danger of the Fuel Pump Defect, despite its knowledge.  Specifically, Honda:

　　a. Failed to disclose, at and after the time of purchase, lease, service, or thereafter, any and all known material defects of the Class Vehicles, including the Fuel Pump Defect, despite its knowledge;

b. Failed to disclose, at and after the time of purchase, lease, service, or thereafter, that the Class Vehicles' Fuel Pumps were defective and not fit for their ordinary purpose, despite its knowledge; and

c. Failed to disclose and actively concealed the existence and pervasiveness of the Fuel Pump Defect, despite its knowledge.

116.   Honda's deceptive marketing and willful and knowing failure to disclose the Fuel Pump Defect damaged, and continues to damage, Plaintiff and Class members.  If Plaintiff and Class members had known of the Fuel Pump Defect and/or that the Class Vehicles were not safe and durable, they would not have purchased or leased the Class Vehicles or certainly would have paid less to do so.

## VI.   HONDA ADMITTED THE FUEL PUMP DEFECT WAS DANGEROUSLY DEFECTIVE, BUT ISSUED AN INADEQUATE RECALL

117.   Honda unquestionably knew the Denso fuel pumps in its vehicles were defective, because, on January 29, 2019, Honda itself recalled approximately 437,032 of it vehicles for a defect in the Denso-made low-pressure fuel pump that can cause mechanical resistance, which can result in hesitated acceleration or stalling events.[47]  Specifically, Honda admitted knowing of the Fuel Pump Defect as early as 2016.  Although Honda knew the Denso fuel pumps in its vehicles were defective, it misdiagnosed the condition and failed to provide an adequate repair. Specifically,

---

[47] Exhibit B.

rather than replacing all of the Denso defective fuel pumps with an a properly functioning or improved fuel pump, Honda issued a software upgrade as a temporary remedy for the Fuel Pump Defect if and when the fuel pump failed.  As a result, Class members whose vehicles were included in Honda's January 2019 recall did not receive a fix that actually remedied the dangerous Fuel Pump Defect in those vehicles.

118.   The Honda Recall was inadequate because (1) it failed to accurately diagnose and remedy the Fuel Pump Defect, (2) it failed to include all Honda manufactured vehicles equipped with the Denso made low-pressure fuel pump, and (3) it failed to recommend that consumers quit driving their vehicle until it is repaired.

119.   As a result of Honda's actions and inactions, owners and lessees of the Class Vehicles have been and still are unknowingly driving on roads and highways in potentially ticking time bombs while Honda knowingly exposes its customers, from whom it made millions of dollars from the sale of the Class Vehicles, to the risk of grave physical harm or even death.

120.   Evidencing the overall inadequacy of the Honda Recall are consumer complaints lodged with NHTSA stating their vehicle suffers the Fuel Pump Defect but (1) was not included in the Honda Recall, or (2) the repair failed to remedy the

issue.  For example, on June 24, 2019, the owner of a 2016 Honda Accord filed the

following complaint with NHTSA:

> I NEEDED TO CHANGE FUEL PUMP AND MY FUEL
> SYSTEM CLEANED BECAUSE MY CAR WAS
> STALLING AND NOT RESPONDING TO
> ACCELERATION ON THE ROAD BUT RESPOND
> WHEN I DIDN'T EVEN ACCELERATE WHICH WAS
> VERY DANGEROUS. I DID SEE HONDA RECALLED
> V6 MODELS BUT THEY SHOULD RECALL V4
> MODELS TOO AS IT CAN CAUSE SERIOUS
> ACCIDENTS.[48]

121.  On July 26, 2019, the owner of a 2015 Honda Accord filed the

following complaint with NHTSA:

> THERE HAS BEEN AN ISSUE RECALLED FOR 2015
> HONDA ACCORDS AND THEIR FUEL PUMP. I WAS
> ALMOST IN A CAR ACCIDENT WHILE IN A MAJOR
> HIGHWAY. WHY CAN'T THINS ISSUE BE FIXED,
> OR WHY ISN'T THERE A RECALL AVAILABLE
> FOR MY VIN? WHEN THERE IS AN
> ACTUAL RECALL ON THIS ISSUE.[49]

122.  On January 23, 2019, the owner of a 2015 Honda Accord filed the

following complaint with NHTSA:

> MY 2015 HONDA ACCORD HAD FUEL PRESSURE
> PROBLEM 2 MONTHS AGO. I HAD IT FIXED AT AN
> AUTO REPAIR. REPLACED FUEL PUMP, FUEL
> LINE, THROTTLE GASKETS FOLLOWING BY
> HONDA BULLETIN . IT COSTED ME $1200 FOR
> THIS REPAIR. TODAY, MARCH 20TH, 2019, I
> FOUND OUT HONDA PUBLICED A RECALL ON

---

[48] NHTSA UD No. 11222192.
[49] NHTSA ID No. 11241825.

THIS FUEL PUMP ISSUES BUT MY VEHICLE WAS
NOT ON THE LIST OF RECALL. TODAY MY
VEHICLE HAD SAME ISSUES. CANNOT START.[50]

123.   On October 18, 2019, the owner of a 2016 Acura MDX filed the

following complaint with NHTSA:

MY 2016 MDX HAS A FUEL PUMP FAILURE WHICH
HAS CAUSED MY MDX TO STALL AND LED TO
PROBLEMS WITH MY FUEL INJECTORS. THERE IS
A RECALL BUT MY ACURA DEALER REFUSES TO
HONOR IT. ON 10/18 MY WIFE WAS DRIVING THE
CAR ON THE FREE WAY AND IT SLOWED TO A
STALL. THIS IS A KNOWN ISSUE. I HAVE PASTED
A URL TO THE RECALL BELOW. THE DEALER
REFUSED TO FIX MY FUEL INJECTORS OR
REPLACE MY FUEL PUMP. THE ARE OFFERING A
FREE FUEL PUMP SOFTWARE UPGRADED BUT
THEY WANT ME TO PAY TO REPLACE THE FUEL
PUMP AND              FUEL              INJECTORS.

HTTPS://WWW.CONSUMERREPORTS.ORG/CAR-
RECALLS-DEFECTS/HONDA-ACURA-RECALL-
POTENTIAL-STALLING-ISSUE-ACCORD-MDX-
TLX/[51]

124.   On February 18, 2019, the owner of a 2016 Acura MDX filed the

following complaint with NHTSA:

2016-2018:   NOTICED   CAR   OCCASIONALLY
HESITANT LIKE NOT "GETTING" INTO GEAR BUT
NO STALLING. WIFE DRIVING CAR AND STALLS
WHILE STOPPED AT A LIGHT. SIMPLY RESTARTS
CAR              WITH              NO              ISSUE.

---

[50] NHTSA ID No. 11190330.
[51] NHTSA ID No. 11271772.

FEBRUARY 2019: WIFE DRIVING CAR AND STALLS BUT WHEN RESTARTED, ALL LIGHTS IN DASH ARE ON AND CAR WILL ONLY MOVE FORWARD AT IDLE SPEED AND THROTTLE COMPLETELY NOT RESPONSIVE (E.G., CAN PRESS GAS PEDAL TO FLOOR WITH NO ACCELERATION).

REGAL ACURA (2615 LAKELAND HILLS BLVD BLDG 2, LAKELAND, FL 33805, (863) 262-4238)) VISIT 1 (MARCH 2019): MATTHEW IN SERVICE. REGAL SERVICE DOES FULL CHECK AND REPORTS "NOTHING WRONG."

MARCH 2019: VEHICLE CONTINUES WITH HESITANCY AND STALLS.

REGAL ACURA VISIT 2 (MARCH 2019): BRING BACK TO MATTHEW AND THEY REPEAT CHECK AND FINDING NOTHING WRONG. I INSIST ON FUEL LINE FLUSH WHICH I PAY FOR.

APRIL 2019: VEHICLE CONTINUES WITH HESITANCY AND STALLS. I CALL MATTHEW IN REGAL ACURA SERVICE AND LET HIM KNOW THAT THERE IS A RECALL (P3W MDX) ON THIS ISSUE. REGAL ACURA PERFORMS SOFTWARE UPDATE. VEHICLE CONTINUES TO EXHIBIT HESITANCY WHILE DRIVING.

APRIL 2019: I RECEIVE LETTER FROM ACURA AUTOMOBILE DIVISION OUTLINING THE RECALL:

1. SAFETY CONSEQUENCE PER RECALL: "REDUCED FUEL FLOW TO THE ENGINE COMBINED WITH VEHICLE OPERATION IN HIGH TEMPERATURE CONDITIONS CAN RESTRICT VEHICLE ACCELERATION AND/OR CAUSE AN ENGINE STALL, WHICH INCREASES RISK OF

CRASH."

2. WHAT WILL ACURA DO? "THE DEALER WILL UPDATE THE SOFTWARE FOR THE ENGINE CONTROL UNIT.... IF THE DIAGNOSTIC SCAN CONFIRMS A PREVIOUS OCCURRENCE OF ENGINE STALLING, THE FUEL PUMP WILL BE REPLACED FOR FREE."

I HAVE HAD MULTIPLE CALLS WITH REGAL ACURA AND ACURA NATIONAL AND THEY WILL NOT REPLACE FUEL PUMP NOR WILL THEY LET ME PURCHASE A NEW FUEL PUMP BECAUSE THERE ARE NONE AVAILABLE DUE TO THE RECALL!!! I FEEL THIS CAR IS UNSAFE TO DRIVE WITH CURRENT FUEL PUMP AS OUTLINED IN THE ATTACHED RECALL LETTER. [52]

125.   On June 29, 2018, the owner of a 2017 Acura MDX filed the following

complaint with NHTSA:

DANGEROUS LOSS OF POWER WHILE ACCELERATING ON THE HIGHWAY! THERE HAVE BEEN THREE SEPARATE INCIDENCES OVER THE LAST 2 YEARS. WHILE I WAS TRYING TO ACCELERATE ON THE HIGHWAY, THE CAR SEVERELY LOST POWER AND THE "CHECK ENGINE" LIGHT STARTED FLASHING. THE CAR SEEMED TO OPERATE NORMALLY AFTER TURNING OFF AND ON THE ENGINE. THE DEALERSHIP CLAIMED THAT THERE WAS NO COMPUTER RECORDS OF PROBLEMS AFTER EACH INCIDENCE. ACURA JUST ISSUED A RECALL OF THE FUEL PUMP ON THIS MODEL YEAR MDX. HOWEVER, ACURA AND THE LOCAL ACURA DEALERSHIP REFUSED THE REPAIR DUE

---

[52] NHTSA ID No. 11206946.

TO THE LACK OF COMPUTER RECORD OF FAILURE.[53]

126.   On February 27, 2019, the owner of a 2015 Acura TLX filed the

following complaint with NHTSA:

> THE CAR NEARLY STALLS, ROLLED BACK 3-4 FEET PRIOR TO RESTARTING AFTER THE IDLE STOP HAD IN- GAUGED. THE TRANSMISSION SHIFTS FROM 1-4 LIKE SOMEONE WHO NEVER DROVE WITH A CLUTCH, EVEN THOUGH IT IS AN AUTOMATIC. IT HESITATES AND NEARLY STALLS WHEN DOING SLOW MANEUVERING IN AND AROUND PARKING LOTS AND SLOW TRAFFIC. I HAVE NEARLY HAD ACCIDENTS DUE TO THE HESITATION IN TRAFFIC.
>
> WHEN USING CRUISE CONTROL OUT ON THE EXPRESSWAY, THE CAR WILL NOT MAINTAIN ITS SET SPEED ON A DOWNHILL GRADE, IT GETS JERKY AND INCREASES SPEED AS MUCH AS 10-12 MPH UNLESS I RIDE THE BRAKE.
>
> I HAVE HAD IT BACK TO THE DEALER TWICE NOW, THE FIRST TIME THEY DID ALL THE UPDATES ON THE COMPUTER AND FUEL PUMP...ITS JUST AS BAD IF NOT WORSE.
>
> THE CAR IS NOT SAFE AND SHOULD HAVE A COMPLETE RECALL!!!
>
> THE NEXT QUESTIONS ASK FOR A SPECIFIC TIME AND DATE...THIS IS ONGOING AND HAS BEEN HAPPENING SINCE I PURCHASED THE CAR IN JANUARY.[54]

---

[53] NHTSA ID No. 11195860.
[54] NHTSA ID No. 11197366.

127.   Therefore, Honda's Recall was inadequate and unconscionable.   It failed to accurately diagnose and repair the Fuel Pump Defect, which inevitably will lead to more Fuel Pump failures, and possibly injury or death. The Honda Recall was also inadequate in scope, omitting other models equipped with the same defective Fuel Pump.   Finally, Honda has not recommended or advised that consumers stop driving their Class Vehicles until the Fuel Pump Defect can be repaired or replaced.  These actions are deceitful, unconscionable, and expose Class members to injury and death.

128.   In addition to these dangers, Honda's actions have deprived purchasers and lessees of the Class Vehicles of the benefit of their bargain.

## VII.   APPLICABLE WARRANTIES

129.   Honda sold and leased the Class Vehicles with written express warranties.

130.   For the Honda branded Class Vehicles, Honda offered a written express basic warranty covering Honda brand vehicles for 36 months or 36,000 miles covering all components (except normal wear and tear).  Honda also offered a five year or 60,000 mile powertrain warranty.

131.   Honda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

132.   Class members complain to dealers about the Fuel Pump Defect but do not receive an adequate repair, breaching the express and implied warranties provided by Honda.

## VIII. FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

133.   Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals with Defendants responsible for making false and misleading statements regarding the Class Vehicles. Defendants necessarily are in possession of all of this information. Plaintiff's claims arise out of Defendants' fraudulent omission/concealment of the Fuel Pump Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

134.   Plaintiff alleges that at all relevant times, including specifically at the time they and Class members purchased their Class Vehicle, Defendants knew, or were reckless in not knowing, of the Fuel Pump Defect; Defendants had a duty to disclose the Fuel Pump Defect based upon their exclusive knowledge; and Defendants never disclosed the Fuel Pump Defect to Plaintiff or the public at any time or place in any manner other than a halfhearted, inadequate recall of a subset of the Class Vehicles.

135.   Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants:

a.   **Who**: Defendants actively concealed and omitted the Fuel Pump Defect from Plaintiff and Class members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Defendants responsible for such decisions.

b.   **What**: Defendants knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Fuel Pump Defect, as alleged herein. Defendants concealed and omitted the Fuel Pump Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

c.   **When**: Defendants concealed and omitted material information regarding the Fuel Pump Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Defendants still have not disclosed the truth about the full scope of the Fuel Pump Defect in the Class Vehicles to anyone outside of their respective entities. Defendants have never taken any action to inform consumers about the true nature of the Fuel Pump

Defect in Class Vehicles. And when consumers brought their vehicles to Defendants complaining of the Fuel Pump failures, Defendants denied any knowledge of or repair for the Fuel Pump Defect.

d.      **Where**:  Defendants concealed and omitted material information regarding the true nature of the Fuel Pump Defect in every communication they had with Plaintiff and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Fuel Pump Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites.  There are channels through which Defendants could have disclosed the Fuel Pump Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class members through means such as state vehicle registry lists.

e.      **How**:  Defendants concealed and omitted the Fuel Pump Defect from Plaintiff and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendants actively concealed and omitted the truth about the existence, scope, and nature of the

Fuel Pump Defect from Plaintiff and Class members at all times, even though it knew about the Fuel Pump Defect and knew that information about the Fuel Pump Defect would be important to a reasonable consumer, and Defendants promised in its marketing materials that Class Vehicles have qualities that they do not have.

       f.   **Why**:  Defendants actively concealed and omitted material information about the Fuel Pump Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Defendants disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## IX.   TOLLING OF THE STATUE OF LIMITATIONS

### A. Continuing Act Tolling

136.  Beginning in 2013, Honda continuously marketed and sold Class Vehicles to unsuspecting customers.  It continuously represented the Class Vehicles as safe and dependable despite their propensity to lose fuel pressure, hesitate under

acceleration and/or experience engine shutdown. By making these false representations, and failing to disclose the existence of the Fuel Pump Defect in the Class Vehicles and thereby exposing occupants to risk of injury and death, Honda engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Honda might seek to apply.

137.   Pursuant to the TREAD Act, 49 U.S.C. § 30118, manufacturers are required to report information regarding customer complaints and warranty claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects. Honda owed a continuing duty to Plaintiff and Class members to disclose to any risks to life and limb that its products pose.  It continually breached that duty.

138.   Honda breached its duties to consumers by knowingly selling Class Vehicles with the defective Fuel Pumps on an ongoing basis.

139.   Honda's knowledge of the Fuel Pump Defect is evidenced by numerous NHTSA complaints by consumers, many of whom reported contacting Honda directly about the Defective Fuel Pump.  Other NHTSA complainants reported taking their vehicles to Honda's dealers, who are agents of Honda and, on information and belief, report consumer complaints back to Honda.

140.   Thus, Honda had continuing knowledge of the Fuel Pump Defect and the dangers it posed, yet continued to market, sell and lease the Class Vehicles. Plaintiff's and other Class members' claims are not time barred.

**B.   Fraudulent Concealment Tolling**

141.   Honda had a duty to disclose to Plaintiff and the Class members the true quality and nature of the Class Vehicles, that the Class Vehicles had uniform defect; and that the Fuel Pump Defect requires repairs, poses a safety risk, and reduces the intrinsic and resale value of the affected vehicles.

142.   This duty arose, inter alia, under the TREAD Act, 49 U.S.C. § 30118.

143.   Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Fuel Pump Defect, as alleged herein. Honda concealed and omitted the Fuel Pump Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

144.   Despite its knowledge of the Fuel Pump Defect, Honda failed to disclose and concealed this material information from Plaintiff and other Class members, and instead continued to market the Class Vehicles as safe and durable.

145.   The purpose of Honda's concealment of the Defective Fuel Pump was to prevent Plaintiff and other Class members from seeking redress.

146.   Plaintiff and the other Class members justifiably relied on Honda to disclose the existence of dangerous defects, including the Fuel Pump Defect, in the

Class Vehicles that they purchased or leased, because that defect was not discoverable by Plaintiff and the other Class members through reasonable efforts.

147.   Any applicable statute of limitations has been tolled by Honda's knowledge, active concealment, and denial of the facts alleged herein, which behavior was ongoing.

### C.   Discovery Rule Tolling

148.   Even through the exercise of reasonable diligence, Plaintiff and other Class members could not have discovered that Defendants were concealing and misrepresenting the existence of a dangerous defect, the Fuel Pump Defect, in the Class Vehicles and the risks it posed.

149.   Plaintiff and the other Class members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Defendants failed to disclose material information within its knowledge about a dangerous defect to consumers worldwide.

## X.   CLASS ACTION ALLEGATIONS

150.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

151.   Plaintiff seeks to represent an Alabama statewide class (the "Alabama Class") defined as follows:

All current and forms owners and lessees of a Class Vehicle (as

defined herein) that was purchased or leased in the State of Alabama.

152.   Plaintiff also seeks to represent a class ("Nationwide Class") defined

as:

> All current and former owners or lessees of a Class
> Vehicle (as defined herein) that was purchased or leased
> in the fifty States, the District of Columbia, Puerto Rico,
> and all other United States territories and/or possessions.

153.   Excluded from the Alabama Class ("Statewide Class") and Nationwide

Class (together, "Classes") are Defendants and any of their members, affiliates,

parents, subsidiaries, officers, directors, employees, successors, or assigns; the

judicial officers, and their immediate family members; and Court staff assigned to

this case.  Plaintiff reserves the right to modify or amend definitions of the Classes,

and to add additional classes and sub-classes, as appropriate, during the course of

this litigation.

154.   This action has been brought and may properly be maintained on behalf

of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of

Civil Procedure.

155.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**   The

members of the Classes are so numerous and geographically dispersed that

individual joinder of all class members is impracticable.  While Plaintiff is informed

and believes that there are not less than at least approximately 200,000 members of

the Classes, the precise number of Class Vehicles is unknown to Plaintiff, but may be ascertained from Honda's books and records.  Nationwide and Statewide Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

156.   **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

g.     whether Defendants engaged in the conduct alleged herein;

h.     whether Defendants' alleged conduct violates applicable law;

i.     whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

j.     whether Defendants made false or misleading statements about the quality and safety of the Class Vehicles;

k.     whether the Class Vehicles contain the Fuel Pump Defect;

l.     whether Defendants had actual or implied knowledge about the alleged defect but failed to disclose it to Plaintiff and the other members of the Classes;

m.      whether Defendants' omissions and concealment regarding the quality of the Class Vehicles were likely to deceive the Statewide Class members in violation of the state consumer protection statutes alleged herein;

n.      whether Honda breached its express warranties with respect to the Class Vehicles;

o.      whether Honda breached its implied warranties with respect to the Class Vehicles;

p.      whether the members of the Classes overpaid for their Class Vehicles as a result of the defect alleged herein;

q.      whether the members of the Classes are entitled to damages, restitution, disgorgement, statutory damages, exemplary damages, equitable relief, and/or other relief; and

r.      the amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

157.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiff and the members of the Classes purchased or leased Class Vehicles that contain defective Fuel Pumps, as described herein.  Neither Plaintiff nor the other members of the Classes would have purchased the Class Vehicles, or would have as much as they did for the Class Vehicles, had they known of the Fuel Pump Defect.  Plaintiff

and the other members of the Classes suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other members of the Classes.

158.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes that they seek to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, including automotive litigation, and Plaintiff intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and their counsel.

159. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

160. **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered

by Plaintiff and the others members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the other members of the Classes to individually seek redress for Defendants' wrongful conduct.  Even if these Class members could afford individual litigation, the court system could not.  Individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device, as intended by Congress, presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## XI.    CLAIMS FOR RELIEF

**COUNT 1**
**VIOLATIONS OF ALABAMA'S DECEPTIVE TRAE PRACTICES ACT**
**ALA. CODE §§ 8-19-1 ET SEQ.**
(Individually and on behalf of the Statewide Class)
(As to all Defendants)

161.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

162.   Plaintiff brings this claim individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

163.   The Alabama Deceptive Trade Practices Act, Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

164.   By the conduct described in detail above and incorporated herein, Defendants engaged in deceptive trade practices.

165.   Defendants' omissions regarding the Fuel Pump Defect, described above, which causes the Fuel Pump to prematurely fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

166.   Defendants intended for Plaintiff and the other Class members to rely on the omissions regarding the Fuel Pump Defect.

167.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Defendants' omissions of fact concerning the above-described Fuel Pump Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

168.   Had Defendants disclosed all material information regarding the Fuel Pump Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

169.   Defendants' omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

170.   Honda was provided notice of the Fuel Pump Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

171.   Further, Honda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile.  Customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repairs.

172.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Fuel Pump Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ala. Code. §§ 8-19-1, et seq.

**COUNT 2**
**Strict Product Liability: Design Defect**

(Individually and on behalf of the Alabama Class)
(As to all Defendants)

173.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

174.   Plaintiff brings this claim individually and on behalf of other members of the Alabama Class (the "Class," for purposes of this Count).

175.   Defendants are strictly liable for designing, engineering, testing, validating, manufacturing, and placing in the stream of commerce an unreasonably dangerous Fuel Pump.

176.   Defendants designed, engineered, tested, validated, manufactured, and placed in the stream of commerce the unreasonable dangerous Fuel Pump.

177.   The Class Vehicles and Fuel Pumps are being used in an intended and/or foreseeable manner.  Plaintiff and Class members have not misused or materially altered the Class Vehicles or Fuel Pumps.  The Class Vehicles and Fuel Pumps are in the same or substantially similar condition as they were at the time of purchase/lease.

178.   The Class Vehicles and Fuel Pumps are unreasonably dangerous and defective because they were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce with the Fuel Pump Defect that can cause Class Vehicles to suddenly and unexpectedly stall or lose engine power.

179.   The Fuel Pump Defect causes an unreasonably dangerous condition when Class Vehicles are used for their intended and foreseeable purpose of providing safe and reliable transportation and places Plaintiff, Class members, and others on the road at an unreasonable and substantial risk for injury or death.

180.   Defendants were aware of feasible alternative designs which would minimize or eliminate the Fuel Pump Defect and the risk it poses.  Such alternative designs were known and available when the Class Vehicles and Fuel Pumps were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce.

181.   Defendants failed to design, test, validate, manufacture, and place in the stream of commerce a Class Vehicle and Fuel Pump that is free from the Fuel Pump Defect and the unreasonable safety risks it poses.

182.   The Fuel Pump Defect causes damage to property other than the product, as explained in more detail above.

183.   As a direct and proximate result of Defendants' actions as described herein, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**ALA. CODE §§ 7-2-313 AND 7-2A-210**
(Individually and on behalf of the Statewide Class)
(As to Honda)

184.    Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

185.    Plaintiff brings this claim individually and on behalf of the other members of the Alabama Class (the "Class" for purposes of this Count).

186.    Honda is a merchant with respect to the Class Vehicles.

187.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

188.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

189.    Honda breached its express warranty to repair defective parts in the Class Vehicles. Honda admittedly has not repaired the Class Vehicles' Fuel Pump Defect.

190.    Honda was provided notice of the Fuel Pump Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

191.    Further, Honda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice

requirement futile.  Customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repairs.

192.   The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

193.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

194.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Honda Vehicles under false pretenses.

195.   As a direct and proximate result of Honda's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 4**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**ALA. CODE §§ 7-2-314 AND 7-2A-314**
(Individually and on behalf of the Statewide Class)
(As to Honda)

196.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

197.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

198.   Honda is a merchant with respect to motor vehicles under Ala. Code § § 7-2-104 and 7-2A-103.

199.   Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

200.   The Class Vehicles do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Fuel Pump Defect which causes the Class Vehicles' Fuel Pump to prematurely fail.

201.   Honda was provided notice of the Fuel Pump Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

202.   Further, Honda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice

requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Fuel Pump failure have been denied adequate repair.

203.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Honda's breach of the warranty of merchantability.

204.   As a direct and proximate result of Honda's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 5**
**Negligent Recall/Undertaking**
(Individually and on behalf of the Statewide Class)
(As to Honda)

205.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

206.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

207.   Prior to the events made the basis of this action, Honda designed, engineered, manufactured, marketed, and placed the Class Vehicles in the stream of commerce.

208.   On January 29, 2019 Honda initiated a voluntary recall of the recalled vehicles.  Honda's recall was voluntary and not initiated by NHTSA.

209.   Honda owed a duty to use reasonable care to Plaintiff and Class members based on its undertaking of the Recall.

210.   As described above, among other things, Honda breached its duty by conducting the Recall negligently and/or wantonly by, among other things, failing to adequately diagnose and remedy the Fuel Pump Defect and notify Plaintiff and the Class to stop driving their Class Vehicles.  Honda's failure to do so continues to expose Plaintiff and the Class to the risk of injury and death.

211.   For the reasons set for the above, Honda knew, or should have known through the exercise of ordinary care, the Recall was not being performed in a reasonable manner.

212.   The Fuel Pump Defect damages property other than the Fuel Pump.

213.   As a direct and proximate result, Plaintiff and the other Class members have been and continue to be damaged in an amount to be determine at trial.

### COUNT 6
### FRAUDULENT OMISSION
(Individually and on behalf of the Statewide Class)
(As to all Defendants)

214.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

215.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

216.   Defendants were aware of the Fuel Pump Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

217.   Having been aware of the Fuel Pump Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Fuel Pump Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

218.   Defendants did not disclose the Fuel Pump Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

219.   For the reasons set forth above, the Fuel Pump Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

220.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

221.   Had Plaintiff and the other members of the Class known of the Fuel Pump Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

222.   Through its omissions regarding the Fuel Pump Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

223.   As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Fuel Pump Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 7
## ENJUST ENRICHMENT
(Individually and on behalf of the Statewide Class)
(As to all Defendants)

224.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

225.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

226.   Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the Fuel Pump Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

227.   Defendants have received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

228.   It is inequitable and unconscionable for Defendants to retain these benefits.

229.   Because Defendants concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

230.   Defendants knowingly accepted the unjust benefits of its wrongful conduct.

231.   As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## COUNT 8
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301 *et seq.*
(Individually and on behalf of the Nationwide Class)
(As to Honda)

232.   Plaintiff Oliver ("Plaintiff" for purposes of this Count) incorporate by reference each allegation as if fully set forth herein.

233.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

234.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

235.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

236.   Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

237.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

238.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

239.   In its express written warranties, Honda expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

240.   Honda's warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C.  § 2301(7).

241.   With respect to Class members' purchases or leases of the Class Vehicles, the terms of Honda's written warranties and implied warranty became part of the basis of the bargain between Honda and Plaintiff and other Class members.

242.   Honda breached the implied warranty of merchantability.   Without limitation, the Class Vehicles have Fuel Pumps that prematurely fail, as described above, which renders the Class Vehicles unmerchantable.

243.   Honda breached its express warranties by not offering a functioning repair for the defective Fuel Pump in the Class Vehicles as evidenced by Honda's own admission in the Recall Report that it has not identified a remedy.

244.   Further, Honda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect, thus rendering the satisfaction of any notice requirement futile.   As stated above, Class members report Fuel Pump failure to their dealer, but Honda has failed to repair the defect.

245.   At the time of sale or lease of each Class Vehicle, Honda knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Fuel Pump Defect.

246.   The amount in controversy of Plaintiff' individual claims exceed the sum of $25.  The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

247. Plaintiff, individually and on behalf of the Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## XII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

1.      Certifying the proposed Nationwide and Statewide Classes;

2.      Appointing Plaintiff as the Class representatives and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. as Class counsel;

3.      Ordering Defendants to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other Class members, as allowable by law;

4.      Enjoining Defendants from continuing the unfair business practices alleged in this Complaint;

5.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

6.      Ordering Defendants to pay attorneys' fees and costs of suit;

7.      Awarding injunctive relief requiring Honda promptly and fully inform Class members of the Fuel Pump Defect and its associated dangers and instructing such Class members to cease driving their vehicles, and ordering Honda provide

free loaner vehicles of comparable make, model, or value to the Class Vehicle each

Class member owns or leases until a remedy for the Fuel Pump Defect is installed

in the Class Vehicles; and

8.     Granting such additional relief as the Court deems just and proper.


## **<u>JURY TRIAL DEMANDED</u>**

Plaintiff demand a jury trial on all issues so triable.


Dated:         May 11, 2020

/s/ W. Daniel "Dee" Miles, III
W. Daniel "Dee" Miles, III (ASB-
    7656-M75W)
Demet Basar (*pro hac vice*
    *forthcoming*)
H. Clay Barnett, III (*pro hac vice*
    *forthcoming*)
J. Mitch Williams (*pro hac vice*
    *forthcoming*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES,
    P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Demet.basar@beasleyallen.com
Clay.Barnett@BeasleyAllen.com

*Counsel for Plaintiff*