

2021 Jun-15  PM 06:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TUCKER OLIVER, SARAH ARIAUDO, MICHELLE WELCHER, LASHONDA WALTERS-KAYODE, SCOTT LUCAS, KENNETH KANSKY, DENESE COSPER, DONALD HACKMAN, JIM CUMMINGS, DAVID DINKEVICH, RICHARD STEIN, and CAROL BUTLER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 5:20-cv-00666-MHH |
| v. | ) ) | ORAL ARGUMENT REQUESTED |
| HONDA MOTOR COMPANY LIMITED, AMERICAN HONDA MOTOR CO., INC., DENSO CORPORATION, and DENSO INTERNATIONAL AMERICA, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

---

# DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

FACTUAL & PROCEDURAL HISTORY ........................................................ 2

LEGAL STANDARD......................................................................................... 7

ARGUMENT ...................................................................................................... 8

I.    Plaintiffs Oliver, Butler, Welcher, Stein, and Dinkevich Lack Standing to Assert Multi-State Claims (Counts 1–5) on Behalf of Consumers from States Other Than Their Own (Alabama, Illinois, New Jersey, and New York). ................................................. 8

II.    Plaintiffs' Magnuson-Moss Warranty Act Claim (Count 78) Fails Because the MMWA Requires 100 Named Plaintiffs in a Class Action. ................................................................................. 10

III.    All of Plaintiffs Oliver, Butler, Walters-Kayode, Hackman, and Kansky's Claims Fail. ...................................................................... 12

    A.    Plaintiffs Oliver, Butler, Cummings, Welcher, Ariaudo, and Lucas's Claims (Counts 1, 4–25, 32–37, and 69–74) Must Be Dismissed Because Plaintiffs Fail to Allege a Cognizable Injury................................................................. 12

    B.    Plaintiff Walters-Kayode's Claims (Counts 26–31) Are Preempted by the Louisiana Products Liability Act. ............. 14

    C.    Plaintiffs Kansky's (Counts 38, 40–43) and Hackman's (Counts 63-68) Claims Are Time Barred. ............................ 16

IV.    Numerous Other Causes of Action Fail as a Matter of Law............ 18

    A.    The Economic Loss Rule Bars Plaintiffs' Various Tort Claims (Counts 1, 4–7, 10, 13, 17–18, 20, 24–25, 29–31, 33, 36–37, 39, 42, 45, 48, 52, 55–58, 61, 64, 67, 70, 74, and 77)................................................................................. 18

    B.    Plaintiffs Kansky's and Cosper's Strict Products Liability Claims (Counts 39 and 58) Also Fail Because Massachusetts and North Carolina Do Not Recognize Such Claims. ......................................................................... 21

    C.    Plaintiffs' Negligent Undertaking Claims (Counts 5, 10, 17, 24, 30, 36, 42, 48, 55, 61, 67, and 73) Also Fail

Because the CACAC Lacks Plausible Allegations of
Increased Risk or Reliance.................................................... 22

D.    Plaintiffs' Claims for Breach of Express Warranty
(Counts 8, 14, 22, 27, 34, 40, 46, 53, 59, 65, 71, 75) Fail
for Two Additional Reasons. ................................................. 23

E.    Plaintiffs' Claims for Breach of Implied Warranty
(Counts 9, 23, 41, 47, 54, 60, 66, 72, and 76) Also Fail........ 27

F.    Plaintiffs Fail to State a Plausible Claim for Relief Under
State Consumer Protection Statutes or Common Law
Fraud (Counts 1–3, 6, 11–12, 15–16, 18–19, 21, 25, 32,
37–38, 43–44, 49–51, 56–57, 62–63, 68–69, 74, and 77)
and Do Not Plead Fraud with the Requisite Particularity
Under Rule 9(b). .................................................................... 32

      1.    Plaintiffs fail to identify a single affirmative
            misrepresentation and, in any event, fail to
            adequately plead reliance or causation. ....................... 33

      2.    Plaintiffs fail to plausibly allege Honda knew
            about the alleged fuel pump defect at the time of
            sale. ............................................................................. 38

            a.    Customer complaints to a third party about
                  unspecified defects do not create a plausible
                  inference that Honda had pre-sale
                  knowledge of the specific defect alleged
                  here. ................................................................ 41

            b.    Allegations regarding Honda's investigation
                  leading to the 2019 recall do not create a
                  plausible inference that Honda knew about
                  the defect at issue here. .................................... 45

            c.    Vague and speculative allegations of
                  warranty claims, complaints, testing,
                  meetings, and monitoring do not suffice........... 46

      3.    Plaintiffs Oliver, Butler, Ariaudo, Kansky, and
            Hackman do not plead compliance with Alabama,
            California, Massachusetts, or Ohio's pre-filing
            requirements. ............................................................... 48

4.    Plaintiff Stein fails to adequately allege Honda had
a duty to disclose the defect and fails to allege an
ascertainable loss under the NJCFA. ........................... 50

CONCLUSION ................................................................................. 52

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4C Foods Corp. v. Package Automation Co.*,
   2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014)...................................................30

*AAL High Yield Bond Fund v. Ruttenberg*,
   2001 WL 34372980 (N.D. Ala. Sept. 30, 2001)................................................37

*Abdallah v. Bain Cap. LLC*,
   880 F. Supp. 2d 190 (D. Mass. 2012)................................................................18

*Abraham v. Volkswagen of Am., Inc*.,
   795 F.2d 238 (2d Cir. 1986) ..............................................................................11

*In re Air Bag Prod. Liab. Litig.*,
   7 F. Supp. 2d 792 (E.D. La. 1998).....................................................................14

*Alban v. BMW of N. Am., LLC*,
   2010 WL 3636253 (D.N.J. Sept. 8, 2010) .......................................37, 39, 40, 52

*Alston v. Fleetwood Motor Homes of Indiana Inc*.,
   480 F.3d 695 (5th Cir. 2007) .............................................................................15

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .............................................................................24

*Am. Fed'n of State Cty. & Mun. Emps. v. Ortho-McNeil-Janssen*
   *Pharm., Inc.*,
   2010 WL 891150 (E.D. Pa. Mar. 11, 2010) ......................................................28

*American Suzuki Motor Corp. v. Superior Court*,
   44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995).........................................................14

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) .......................................................33, 34

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...............................................................49

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................7, 8, 26, 41

*Atlas Air, Inc. v. Gen. Elec. Co.*,
  791 N.Y.S.2d 620 (N.Y. App. Div. 2005).........................................................20

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017)...................................................34

*Baba v. Hewlett-Packard Co.*,
  2011 WL 317650 (N.D. Cal. Jan. 28, 2011)......................................................43

*Barbarin v. Gen. Motors Corp.*,
  1993 WL 765821 (D.D.C. Sept. 22, 1993).......................................................14

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) .........................................................45

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................8, 32

*Berenblat v. Apple, Inc.*,
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)...............................................41, 43

*Berkebile v. Brantly Helicopter Corp.*,
  337 A.2d 893 (Pa. 1975).............................................................................34

*Bosland v. Warnock Dodge, Inc.*,
  964 A.2d 741 (N.J. 2009) ...........................................................................51

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) ......................................................................14

*Brisson v. Ford Motor Co.*,
  2009 WL 10670586 (M.D. Fla. Jan. 20, 2009) .................................................11

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*,
  916 F. Supp. 2d 357 (W.D.N.Y. 2013)...........................................................30

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017)................................................................................9

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ........................................................................37

*Burns v. Winnebago Indus., Inc.*,
   2012 WL 171088 (M.D. Fla. Jan. 20, 2012) ......................................................12

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ...............................................................13

*Cadena v. Am. Honda Motor Co.*,
   2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ............................................12, 43

*Cadena v. Am. Honda Motor Co.*,
   2019 WL 3059931 (C.D. Cal. May 29, 2019).............................................11, 45

*Callaghan v. BMW of N. Am., LLC*,
   2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ....................................................42

*Camelio v. Int'l Bhd. of Teamsters*,
   32 F. Supp. 3d 427 (W.D.N.Y. 2014).................................................................40

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ..............................................................................33

*Chapman v. Tristar Prod., Inc.*,
   2017 WL 1433259 (N.D. Ohio Apr. 24, 2017) ..................................................19

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992)...........................................................................................26

*City of Santee v. Cty. of San Diego*,
   259 Cal. Rptr. 757 (Cal. Ct. App. 1989).............................................................22

*Clinical Perfusionists, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   650 A.2d 285 (Md. 1994) ...................................................................................20

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
   887 F.3d 803 (7th Cir. 2018) .............................................................................36

*Coba v. Ford Motor Co.*,
   2013 WL 244687 (D.N.J. Jan. 22, 2013).............................................................51

*Connick v. Suzuki Motor Co.*,
   675 N.E.2d 584 (Ill. 1996) ................................................................ 25

*Cooper v. Wyeth, Inc.*,
   2010 WL 2653321 (M.D. La. June 25, 2010) ............................... 14, 15

*Coudert v. GE Healthcare, Inc.*,
   2010 WL 11561533 (N.D. Ala. Mar. 29, 2010) ................................ 13

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) .............................................................. 9

*Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*,
   219 F. Supp. 3d 962 (N.D. Cal. 2016) ............................................. 19

*Cunningham v. Fleetwood Homes of Georgia, Inc.*,
   253 F.3d 611 (11th Cir. 2001) ......................................................... 11

*D'Agostino v. Maldonado*,
   78 A.3d 527 (N.J. 2013) .................................................................. 51

*Davies v. Broadcom Corp.*,
   130 F. Supp. 3d 1343 (C.D. Cal. 2015) ............................................ 37

*De Atley v. Victoria's Secret Catalogue, LLC*,
   876 So. 2d 112 (La. Ct. App. 2004) .................................................. 15

*Delgado v. Trax Bar & Grill*,
   113 P.3d 1159 (Cal. 2005) ................................................................ 22

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) ................................................... 36

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) .................................................. 39

*Dorley v. S. Fayette Twp. Sch. Dist.*,
   129 F. Supp. 3d 220 (W.D. Pa. 2015) ............................................... 41

*Duffy v. Samsung Elecs. Am., Inc.*,
   2007 WL 703197 (D.N.J. Mar. 2, 2007) ........................................... 52

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858 (1986) ................................................................................18, 19

*Evitts v. DaimlerChrysler Motors Corp.*,
    834 N.E.2d 942 (Ill. App. Ct. 2005) ...................................................47

*Filipovic v. Fairchild Chevrolet*,
    2001 WL 1141384 (Ohio Ct. App. Sept. 27, 2001) ............................30

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) .......................................................11, 12

*FMR Corp. v. Bos. Edison Co.*,
    613 N.E.2d 902 (Mass. 1993) .............................................................20

*Ford Motor Co. v. Rice*,
    726 So. 2d 626 (Ala. 1998) ..........................................................13, 31

*Fowler v. Goodman Mfg. Co. LP*,
    2014 WL 7048581 (N.D. Ala. Dec. 12, 2014) ...................................12

*Friedland v. Gales*,
    509 S.E.2d 793 (N.C. Ct. App. 1998) ................................................39

*Frye v. Medicare-Glaser Corp.*,
    605 N.E.2d 557 (Ill. 1992) ..................................................................22

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
    966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................14

*Givens v. Rent-A-Center, Inc.*,
    720 F. Supp. 160 (S.D. Ala. 1988) .....................................................48

*Glass v. BMW of N. Am., LLC*,
    2011 WL 6887721 (D.N.J. Dec. 29, 2011) ........................32, 34, 36, 52

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    2012 WL 1574301 (D.N.J. May 3, 2012) ...........................................42

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) .......................................................9, 10

*Groden v. Random House, Inc.*,
  1994 WL 455555 (S.D.N.Y. Aug. 23, 1994)........................................................34

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ..........................................38, 39, 46

*Gutierrez v. Carmax Auto Superstores Ca.*,
  248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018)......................................................32, 33

*Hackett v. BMW of N. Am., LLC*,
  2011 WL 2647991 (N.D. Ill. June 30, 2011)........................................................31

*Hammer v. Vital Pharms., Inc.*,
  2012 WL 1018842 (D.N.J. Mar. 26, 2012) .........................................................28

*Harris Moran Seed Co. v. Phillips*,
  949 So. 2d 916 (Ala. Civ. App. 2006) ................................................................20

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009) .................................................................40

*Hobbs v. Gen. Motors Corp.*,
  134 F. Supp. 2d 1277 (M.D. Ala. 2001) .............................................................24

*Hoffman v. A.B. Chance Co.*,
  339 F. Supp. 1385 (M.D. Pa. 1972)....................................................................34

*Hubbard v. Gen. Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. May 22, 1996) ........................................................34

*James River Ins. Co. v. Ground Down Eng'g, Inc.*,
  540 F.3d 1270 (11th Cir. 2008) ............................................................................8

*Jarmon v. United Indus. Corp.*,
  98 F. Supp. 2d 757 (S.D. Miss. 2000) ................................................................14

*Jewell v. Seaboard Indus., Inc.*,
  667 So. 2d 653 (Ala. 1995)..................................................................................28

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013) ................................................................20

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..............................................................35

*Kelly v. Georgia-Pac. LLC*,
  671 F. Supp. 2d 785 (E.D.N.C. 2009) ..........................................19, 29

*Kennedy v. Pfizer, Inc.*,
  2013 WL 4590331 (W.D. La. Aug. 28, 2013)...................................15

*Kury v. Abbott Labs., Inc.*,
  2012 WL 124026 (D.N.J. Jan. 17, 2012)...........................................24

*In re LandAmerica Fin. Grp., Inc.*,
  2014 WL 535783 (Bankr. E.D. Va. Feb. 7, 2014)............................20

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011)....................................................37

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ................................................................50

*Lloyd v. Gen. Motors Corp.*,
  916 A.2d 257 (Md. 2007) ...................................................................20

*Lloyd Wood Coal Co. v. Clark Equip. Co.*,
  543 So. 2d 671 (Ala. 1989)................................................................18

*Lowell Gas Co. v. Attorney Gen.*,
  385 N.E.2d 240 (Mass. 1979)............................................................36

*Maldonado v. Creative Woodworking Concepts, Inc.*,
  694 N.E.2d 1021 (Ill. App. Ct. 1998) ...............................................24

*Malone v. Tamko Roofing Prods. Inc.*,
  2013 WL 5561628 (W.D.N.C. Oct. 8, 2013) ....................................19

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  2019 WL 652867 (N.D. Cal. Feb. 15, 2019).........................39, 40, 47

*Manley v. Hain Celestial Grp., Inc.*,
  417 F. Supp. 3d 1114 (N.D. Ill. 2019)...............................................31

*Marrone v. Philip Morris USA, Inc.*,
  850 N.E.2d 31 (Ohio 2006) ...................................................50

*McCabe v. Daimler AG*,
  948 F. Supp. 2d 1347 (N.D. Ga. 2013)...................................12

*McCormick v. Medtronic, Inc.*,
  101 A.3d 467 (Md. Ct. Spec. App. 2014)...............................38

*McKenna v. Wells Fargo Bank, N.A.*,
  693 F.3d 207 (1st Cir. 2012)..................................................49

*McLaughlin v. GlaxoSmithKline, LLC*,
  2014 WL 669349 (W.D. La. Jan. 6, 2014) .......................14, 15

*McQueen v. BMW of N. Am., LLC*,
  2014 WL 656619 (D.N.J. Feb. 20, 2014) .........................41, 44

*Med. Mut. of Ohio v. k. Amalia Enterprises Inc.*,
  548 F.3d 383 (6th Cir. 2008) .................................................17

*Melnick v. TAMKO Bldg. Prod., Inc.*,
  469 F. Supp. 3d 1082 (D. Kan. 2020)....................................18

*Metric Constructors, Inc. v. Indus. Risk Insurers*,
  401 S.E.2d 126 (N.C. Ct. App. 1991).....................................30

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  952 F.3d 293 (D.C. Cir. 2020)..................................................9

*Mooradian v. FCA US, LLC*,
  2017 WL 4869060 (N.D. Ohio Oct. 27, 2017)...................29, 30

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443 (Ill. 1982)......................................................20

*Morris v. Osmose Wood Preserving*,
  667 A.2d 624 (Md. 1995) .................................................20, 21

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001) ...............................................34

*Mosqueda v. Am. Honda Motor Co., Inc.*,
    443 F. Supp. 3d 1115 (C.D. Cal. 2020) ............................................................20

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................27

*Nallan v. Helmsley-Spear, Inc.*,
    407 N.E.2d 451 (N.Y. 1980) ..............................................................................22

*New World Sols., Inc. v. NameMedia Inc.*,
    150 F. Supp. 3d 287 (S.D.N.Y. 2015) ................................................................35

*Nobile v. Ford Motor Co.*,
    2011 WL 900119 (D.N.J. Mar. 14, 2011) ..........................................................52

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ..............................................................................33

*Oliver v. Funai Corp., Inc.*,
    2015 WL 9304541 (D.N.J. Dec. 21, 2015)..........................................................43

*Outboard Marine Corp. v. Superior Court*,
    124 Cal. Rptr. 852 (Cal. Ct. App. 1975)............................................................49

*Pavlovich v. Nat'l City Bank*,
    435 F.3d 560 (6th Cir. 2006) ..............................................................................19

*Perona v. Volkswagen of Am., Inc.*,
    684 N.E.2d 859 (Ill. App. Ct. 1997) ...................................................................28

*Petrich v. MCY Music World, Inc.*,
    862 N.E.2d 1171 (Ill. App. Ct. 2007) ...........................................................37, 38

*Petrosyan v. Maserati N. Am., Inc.*,
    2020 WL 2104789 (D. Mass. May 1, 2020).........................................................37

*Pfizer v. Farsian*,
    682 So. 2d 405 (Ala. 1996)..................................................................................14

*Phillips v. Hobby Lobby Stores, Inc.*,
    2016 WL 11272150 (N.D. Ala. Oct. 21, 2016)...................................................10

*Pielage v. McConnell*,
   516 F.3d 1282 (11th Cir. 2008) ............................................................7

*Piro v. Exergen Corp.*,
   2016 WL 1255630 (D. Mass. Mar. 29, 2016) ...................................24

*Porter v. Cub Cadet LLC*,
   2020 WL 4727002 (Ill. App. Ct. Aug. 14, 2020) .............................22

*Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*,
   573 F. Supp. 2d 372 (D. Mass. 2008) ........................................16, 21

*Raymo v. FCA US LLC*,
   475 F. Supp. 3d 680 (E.D. Mich. 2020) ....................................39, 47

*Resnick v. Hyundai Motor Am., Inc.*,
   2017 WL 6549931 (C.D. Cal. Aug. 21, 2017) ...........................44, 47

*Robins v. Glob. Fitness Holdings, LLC*,
   838 F. Supp. 2d 631 (N.D. Ohio 2012) ..............................................50

*Robinson v. Allstate Ins. Co.*,
   399 So. 2d 288 (Ala. 1981) .................................................................31

*Rockford Mem'l Hosp. v. Havrilesko*,
   858 N.E.2d 56 (Ill. App. Ct. 2006) ....................................................39

*Rodio v. Smith*,
   587 A.2d 621 (N.J. 1991) ...................................................................34

*Rothe v. Maloney Cadillac, Inc.*,
   518 N.E.2d 1028 (Ill. 1988) ...............................................................29

*Sabric v. Lockheed Martin*,
   532 F. App'x 286 (3d Cir. 2013) ........................................................22

*Sacramona v. Bridgestone/Firestone, Inc.*,
   106 F.3d 444 (1st Cir. 1997) ..............................................................28

*Santos v. SANYO Mfg. Corp.*,
   2013 WL 1868268 (D. Mass. May 3, 2013) ......................................40

*Schechter v. Hyundai Motor Am.*,
 2019 WL 3416902 (D.N.J. July 29, 2019) .................................................50, 51

*Schiesser v. Ford Motor Co.*,
 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) .......................................................27

*Schmidt v. Ford Motor Co.*,
 972 F. Supp. 2d 712 (E.D. Pa. 2013)...........................................................24, 25

*Selby v. Goodman Mfg. Co.*,
 2014 WL 2740317 (N.D. Ala. June 17, 2014) ..................................................29

*Siriano v. Goodman Mfg. Co.*,
 2015 WL 12748033 (S.D. Ohio Aug. 18, 2015) ...............................................17

*Smith v. Apple, Inc.*,
 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) ....................................................25

*Smith v. Fiber Controls Corp.*,
 268 S.E.2d 504 (N.C. 1980)..............................................................................21

*Smith v. Robertshaw Controls Co.*,
 2003 WL 23142189 (D. Mass. Dec. 31, 2003)..................................................25

*Sonneveldt v. Mazda Motor of Am., Inc.*,
 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ....................................................19, 43

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997) ..........................................................................34

*Stark v. Advanced Magnetics, Inc.*,
 736 N.E.2d 434 (Mass. App. Ct. 2000) .............................................................16

*State Farm Mut. Auto. Ins. Co.* v. *Physicians Injury Care Ctr., Inc.*,
 427 Fed. App'x 714 (11th Cir. 2011) ................................................................38

*Stearns v. Select Comfort Retail Corp.*,
 2009 WL 1635931 (N.D. Cal. June 5, 2009)......................................................27

*Steffy v. Home Depot, Inc.*,
 2009 WL 1444276 (M.D. Pa. May 21, 2009).....................................................19

*Strickland v. Kafko Mfg., Inc.*,
   512 So. 2d 714 (Ala. 1987) .................................................................39

*Swartz v. Gen. Motors Corp.*,
   378 N.E.2d 61 (Mass. 1978) ...............................................................21

*In re: Takata Airbag Prod. Liab. Litig.*,
   2016 WL 1266609 (S.D. Fla. Mar. 11, 2016) .......................................9

*Thiedemann v. Mercedes-Benz USA, LLC*,
   872 A.2d 783 (N.J. 2005) ..............................................................1, 52

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .............................24, 25, 28, 29

*Touro Infirmary v. Sizeler Architects*,
   947 So. 2d 740 (La. Ct. App. 2006) ....................................................15

*Toy v. Metro. Life Ins. Co.*,
   863 A.2d 1 (Pa. Super. Ct. 2004) .......................................................36

*Trans Hudson Express, Inc. v. Nova Bus Co.*,
   2007 WL 1101444 (D.N.J. Apr. 11, 2007) .........................................19

*Traxler v. PPG Indus., Inc.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016) ..............................................30

*Trevino v. City of Pleasanton*,
   2019 WL 1793360 (W.D. Tex. Apr. 23, 2019) ...................................41

*Tucker v. Boulevard at Piper Glen LLC*,
   564 S.E.2d 248 (N.C. Ct. App. 2002) ................................................35

*Viguers v. Philip Morris USA, Inc.*,
   837 A.2d 534 (Pa. Super. Ct. 2003) ...................................................39

*In re Vioxx Prod. Liab. Litig.*,
   2010 WL 11570867 (E.D. La. Mar. 31, 2010) ....................................15

*Vitt v. Apple Comput., Inc.*,
   469 Fed. App'x 605 (9th Cir. 2012) ...................................................34

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) ...............................................................28

*Vuyancih v. Jones & Assocs. Law Grp., L.L.C.*,
  95 N.E.3d 458 (Ohio Ct. App. 2018) ............................................49, 50

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ...........................................................14

*Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour*,
  577 So. 2d 414 (Ala. 1990) ..........................................................28, 29

*Westchester Cty. v. Gen. Motors Corp.*,
  555 F. Supp. 290 (S.D.N.Y. 1983) ......................................................29

*Wheatley v. Marietta College*,
  48 N.E.3d 587 (Ohio Ct. App. 2016) ...................................................22

*Wilding v. DNC Servs. Corp.*,
  941 F.3d 1116 (11th Cir. 2019) ...........................................................37

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ....................................................*passim*

*Woods v. Maytag Co.*,
  2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ..................................39, 40

*Wozniak v. Ford Motor Co.*,
  2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ........................................27

*Yelverton v. Yelverton Farms, Ltd.*,
  2015 WL 847393 (E.D.N.C. Feb. 26, 2015) ........................................31

*Yost v. Gen. Motors Corp.*,
  651 F. Supp. 656 (D.N.J. 1986) ....................................................14, 32

*Zaccagnino v. Nissan N. Am., Inc.*,
  2015 WL 3929620 (S.D.N.Y. June 17, 2015) ......................................35

*Ziegelmann v. DaimlerChrysler Corp.*,
  649 N.W.2d 556 (N.D. 2002) ..............................................................14

*Zwiercan v. Gen. Motors Corp.*,
   2002 WL 1472335 (Pa. Com. Pl. May 22, 2002)................................................32

**Statutes**

15 U.S.C. § 2310 ............................................................................11, 12

Ala. Code § 7-2-607 ....................................................................24

Ala. Code § 8-19-10..................................................................36, 50

Cal. Civ. Code § 1782 ................................................................49

Ill. Comp. Stat. Ann. 5/2-607....................................................24

La. Stat. Ann. § 9:2800.51 ........................................................14

La. Stat. Ann. § 9:2800.53 ........................................................14

La. Stat. Ann. § 51:1409 ...........................................................36

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 ..................10, 11, 13

Mass. Gen. Laws Ann. ch. 93A, § 9 .........................................49

Mass. Gen. Laws Ann. ch. 106, § 2-607....................................24

Mass. Gen. Laws Ann. ch. 106, § 2-725....................................16

Mass. Gen. Laws Ann. ch. 260, § 5A ........................................16

Md. Code Ann., Com. Law § 13-408 ........................................36

N.C. Gen. Stat. Ann. § 99B-1.1 ................................................21

Ohio Rev. Code Ann. § 1345.10................................................17

U.C.C. article II........................................................................10, 29

U.C.C. G.L. c. 106 ....................................................................21

U.C.C. § 2–607 .........................................................................23

**Other Authorities**

Restatement (Second) of Torts § 323 (1965)..........................................................23

Pursuant to Rules 8, 9(b), 12(b)(1)–(2), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant American Honda Motor Co., Inc. ("Honda") moves to dismiss[1] Plaintiffs' Consolidated Amended Class Action Complaint ("CACAC") with prejudice.  In further support of this motion, Honda states as follows:

## INTRODUCTION

Anyone who has owned a car can appreciate the truism that "[d]efects can, and do, arise with complex instrumentalities such as automobiles." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J. 2005).  Honda discovered one such defect last year: Some Honda vehicles contain fuel pumps susceptible to cracking and deformation under certain conditions.  There have been no reports of collisions or injuries, but Honda recalled the affected vehicles and is replacing the fuel pumps free of charge.

Despite the recall, or perhaps because of it, Plaintiffs assert consumer fraud, negligence, strict liability, and warranty claims on behalf of a putative nationwide class of consumers, four multi-state classes, and eleven state subclasses.  Although they can have their fuel pumps replaced for free, Plaintiffs cast themselves as victims of a fraudulent scheme by Honda to dupe them into buying defective automobiles.  Plaintiffs' narrative finds scarce factual support in their CACAC, which fails to identify a single actionable misrepresentation.  Nor does the CACAC plausibly allege Honda knew about the fuel pump issue *before* Plaintiffs purchased or leased their vehicles.  That a tiny fraction of Honda's millions of customers reported various power-related issues over the years is not nearly enough to satisfactorily plead Honda had pre-sale knowledge of the specific defect alleged here.

---

[1]   Pursuant to Section III of the Court's Initial Order, the parties' counsel met and conferred by telephone multiple times, most recently on June 14, 2021.

The vast majority of Plaintiffs' seventy-eight causes of action fail because Plaintiffs have not stated cognizable claims for relief under applicable state and federal law.  The CACAC does not meet the plausibility standard of Rule 8(a), let alone the heightened standard of Rule 9(b).  For these reasons, Honda requests that the Court dismiss the Consolidated Amended Class Action Complaint in its entirety.[2]

## FACTUAL & PROCEDURAL HISTORY

On May 28, 2020, Honda submitted a voluntary Part 573 Safety Recall Report to the National Highway Traffic Safety Association ("NHTSA").  CACAC Ex. D.  The report, which Honda most recently amended on July 13, 2020, recalled 135,995 Honda and Acura vehicles equipped with low-pressure fuel pumps manufactured by Denso Corporation.  CACAC Ex. G.  It described the following defect:

> Affected vehicles may be equipped with a fuel pump module manufactured with low density impellers.  If the surface of the lower density impeller is exposed to production solvent drying for longer periods of time, higher levels of surface cracking may occur.  These cracks may lead to excessive fuel absorption, resulting in impeller deformation.  Over time, if an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative, which may cause illumination of the Malfunction Indicator Lamp in the instrument panel.

*Id.* at 6.  On March 25, 2021, Honda submitted another voluntary Part 573 Safety Recall Report to NHTSA.  CACAC Ex. L.  The 2021 recall, as recently amended, covers an additional 624,552 vehicles.  *Id.* at 1.  Pursuant to the recalls, Honda is

---

[2]   Honda incorporates by reference arguments made by co-defendant Denso International America, Inc.

replacing the defective fuel pump assemblies free of charge.  *Id.* at 17; CACAC Ex. G, at 9.

On May 11, 2020, Plaintiff Tucker Oliver filed a putative class action complaint against Honda Motor Company Limited, Honda, Denso Corporation, and Denso International America, Inc. (the Denso entities together, "Denso") regarding an allegedly defective fuel pump designed by Denso (the "Fuel Pump"). Mr. Oliver has since amended his complaint three times to add additional plaintiffs, causes of action, and factual allegations.

On September 21, 2020, Plaintiffs Jim Cummings, David Dinkevich, and Richard Stein filed a putative class action complaint against Honda Motor Company Limited and Honda in the District of New Jersey (the "Cummings Action").  On December 2, 2020, Honda filed a Motion to Stay in Favor of First-Filed Action or, Alternatively, Dismiss the Complaint Under Rules 9(b) and 12(b)(6).  A week later, Plaintiffs filed an amended complaint, adding Wendy Morgan as a fourth plaintiff and a ninth cause of action.

 On December 22, 2020, at the request of the parties, the Honorable Brian Martinotti transferred the Cummings Action to this Court.

On March 1, 2021, Mr. Oliver, along with Plaintiffs Sarah Ariaudo, Michelle Welcher, Lashonda Walters-Kayode, Scott Lucas, Kenneth Kansky, Denese Cosper, Donald Hackman, Jim Cummings, David Dinkevich, Richard Stein, and Wendy Morgan filed their Consolidated Class Action Complaint.

On May 3, 2021, Plaintiffs filed their CACAC, which replaced plaintiff Wendy Morgan with plaintiff Carol Butler and added new allegations regarding Honda's 2021 recall.  CACAC ¶¶ 16, 362–65.  The CACAC asserts 78 counts in connection with Plaintiffs' allegation that certain Honda vehicles contain defective fuel pumps which can prematurely fail, resulting in reduced engine power, stalling,

or engine shutdown. *Id.* ¶¶ 218, 236. More specifically, Plaintiffs allege the following:

**Tucker Oliver**, who resides in Alabama, alleges he purchased a used 2016 Honda Accord equipped with the Fuel Pump from the Jerry Damson Honda dealership in Huntsville, Alabama, in approximately October 2018. CACAC ¶¶ 66–67. *Oliver does not allege his own vehicle experienced a stalling event, engine shut down, crash, or any other mechanical issue related to the Fuel Pump.* Nor does he allege he sold or attempted to sell his vehicle at a financial loss. Instead, he alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id.* ¶¶ 39, 72.

**Carol Butler**, who resides in Alabama, alleges she purchased a new 2019 Honda HRV equipped with the Fuel Pump from the Tameron Honda dealership in Birmingham, Alabama, in approximately January 2019. CACAC ¶¶ 75–76. *Butler does not allege her own vehicle experienced a stalling event, engine shut down, crash, or any other mechanical issue related to the Fuel Pump.* Nor does she allege she sold or attempted to sell her vehicle at a financial loss. Instead, she alleges the Fuel Pump defect has diminished the intrinsic and resale value of her vehicle. *Id.* ¶¶ 39, 81.

**Sarah Ariaudo**, who resides in California, alleges she leased a new 2019 Acura RDX equipped with the Fuel Pump from Acura of Escondido in Escondido, California, on September 23, 2018. CACAC ¶¶ 84–85. Ariaudo alleges her vehicle experienced symptoms associated with the alleged Fuel Pump defect— namely lag, hesitated acceleration, and engine stall. *Id.* ¶ 89. She further alleges she reported the issue to Acura of Escondido, and her fuel pump was replaced on June 5, 2020. *Id.* ¶¶ 89, 91. She alleges the Fuel Pump defect has diminished the intrinsic and resale value of her vehicle. *Id.* ¶ 92.

**Michelle Welcher**, who resides in Illinois, alleges she purchased a new 2017 Honda Accord equipped with the Fuel Pump from Mapleton Honda in Chicago, Illinois, on August 22, 2017.  CACAC ¶¶ 95–96.  *Welcher does not allege her own vehicle experienced a stalling event, engine shut down, crash, or any other mechanical issue related to the Fuel Pump.*  Nor does she allege she sold or attempted to sell her vehicle at a financial loss.  Instead, she alleges the Fuel Pump defect has diminished the intrinsic and resale value of her vehicle.  *Id.* ¶ 102.

**Lashonda Walters-Kayode**, who resides in Louisiana, alleges she purchased a new 2019 Honda CR-V equipped with the Fuel Pump from Holmes Honda in Shreveport, Louisiana, on September 19, 2019.  CACAC ¶¶ 106–07.  Walters-Kayode alleges her vehicle experienced symptoms associated with the alleged Fuel Pump defect—namely hesitated acceleration and difficulty starting her vehicle.  *Id.* ¶ 111.  Walters-Kayode never reported these issues to her Honda dealer, and no repairs have been made.  *Id.*  She alleges the Fuel Pump defect has diminished the intrinsic and resale value of her vehicle.  *Id.* ¶ 114.

**Scott Lucas**, who resides in Maryland, alleges he purchased a used 2015 Acura TLX equipped with the Fuel Pump from Heritage Volkswagen and Subaru in Maryland in February 2018.  CACAC ¶¶ 118–19.  Lucas alleges his vehicle experienced symptoms associated with the alleged Fuel Pump defect—namely hesitated acceleration and engine stall.  *Id.* ¶ 123.  He further alleges he reported the issue to Frankel Acura of Hunt Valley, which replaced his fuel pump.  *Id.*  He alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle.  *Id.* ¶ 126.

**Kenneth Kansky**, who resides in Massachusetts, alleges he purchased a new 2015 Honda Accord equipped with the Fuel Pump from Colonial Honda in Dartmouth, Massachusetts, in May 2015.  CACAC ¶¶ 130–31.  Kansky alleges his vehicle experienced symptoms associated with the alleged Fuel Pump defect—

namely hesitated acceleration and difficulty starting his vehicle. *Id.* ¶ 135. Kansky did not report these issues to his Honda dealer, and no repairs have been made. *Id.* He alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id.* ¶ 138.

**Richard Stein**, who resides in New Jersey, alleges he leased a 2019 Honda Accord Hybrid equipped with the Fuel Pump from DCH Kay Honda in Eatontown, New Jersey, in March 2019. CACAC ¶¶ 142–43. *Stein does not allege his own vehicle experienced a stalling event, engine shut down, crash, or any other mechanical issue related to the Fuel Pump.* Nor does he allege he sold or attempted to sell his vehicle at a financial loss. Instead, he alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id.* ¶¶ 39, 149.

**David Dinkevich**, who resides in New Jersey, alleges he leased a 2019 Honda HRV equipped with the Fuel Pump from Honda at Staten Island in Staten Island, New York, in January 2019. CACAC ¶¶ 152–53. Dinkevich alleges his vehicle experienced symptoms associated with the alleged Fuel Pump defect— namely lag and engine stall. *Id.* ¶ 156. He alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id.* ¶ 159.

**Denese Cosper**, who resides in North Carolina, alleges she purchased a new 2016 Honda Fit EXL equipped with the Fuel Pump from Leith Honda in Raleigh, North Carolina, in 2016. CACAC ¶¶ 162–63. Cosper alleges her vehicle stalled on one occasion as a result of the alleged Fuel Pump defect. *Id.* ¶ 167. She further alleges she reported the issue to Leith Honda and AutoPark Honda in Cary, North Carolina, but neither had the part on hand to fix her car immediately. *Id.* Cosper instead had a AAA mechanic replace her fuel pump with an aftermarket part on July 8, 2020. *Id.* ¶ 170. She alleges the Fuel Pump defect has diminished the intrinsic and resale value of her vehicle. *Id.* ¶ 171.

**Donald Hackman**, who resides in Ohio, alleges he purchased a used 2016 Acura TLX equipped with the Fuel Pump from Serra Acura d/b/a Park Acura in Akron, Ohio, in March or April 2016. CACAC ¶¶ 174–75. Hackman alleges his vehicle experienced hesitated acceleration as a result of the alleged Fuel Pump defect. *Id*. ¶ 179. He further alleges he reported the issue to the Acura dealership, which failed to diagnose or repair the issue. *Id*. He alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id*. ¶ 182.

**Jim Cummings**, who resides in New Jersey, alleges he leased a 2018 Honda Accord equipped with the Fuel Pump from Piazza Springfield in Springfield, Pennsylvania, in December 2019. CACAC ¶¶ 185–86. *Cummings does not allege his own vehicle experienced a stalling event, engine shut down, crash, or any other mechanical issue related to the Fuel Pump.* Nor does he allege he sold or attempted to sell his vehicle at a financial loss. Instead, he alleges the Fuel Pump defect has diminished the intrinsic and resale value of his vehicle. *Id.* ¶¶ 39, 191.

Honda now files this motion to dismiss the CACAC in its entirety.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion, the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id*. at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (noting *Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard") (citation omitted). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 233–34 (3d ed. 2004)).

## ARGUMENT

**I.    Plaintiffs Oliver, Butler, Welcher, Stein, and Dinkevich Lack Standing to Assert Multi-State Claims (Counts 1–5) on Behalf of Consumers from States Other Than Their Own (Alabama, Illinois, New Jersey, and New York).**

In Counts 1 through 5, Plaintiffs Oliver, Butler, Welcher, Stein, and Dinkevich assert multi-state claims on behalf of consumers from several states

outside of their home states of Alabama, Illinois, New Jersey, and New York, respectively.  All counts but those brought under Alabama, Illinois, New Jersey, and New York law fail on standing grounds.[3]

In discussing "elementary principles of standing" in the context of class actions, the Eleventh Circuit has proclaimed:

> [I]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, *each claim* must be analyzed separately, and a claim cannot be asserted on behalf of a class *unless at least one named plaintiff has suffered the injury that gives rise to that claim*.

*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (emphasis added).  Thus, "[a] named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."  *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016).

Here, Plaintiffs Oliver and Butler are Alabama residents whose claims arise under Alabama law; Plaintiff Welcher is an Illinois resident whose claims arise under Illinois law; Plaintiff Stein is a New Jersey resident whose claims arise under New Jersey law; and Plaintiff Dinkevich is a New Jersey resident whose claims arise under New York law.  CACAC ¶¶ 66–67, 75–76, 95–96, 142–43, 152–53. None of these plaintiffs has "experienced an injury that may be redressed via the laws of any state other than" the state in which they reside, purchased, or leased

---

[3]  The Court also lacks personal jurisdiction over the claims of putative class members outside of Alabama under *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017).  However, because two Courts of Appeals recently held that district courts should wait until class certification to decide whether jurisdiction exists over the claims of non-resident putative class members, Honda reserves this argument for its briefing on class certification, should this case proceed that far.  *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 296-98 (D.C. Cir. 2020).

their vehicle.[4]  *Phillips v. Hobby Lobby Stores, Inc.*, 2016 WL 11272150, at *4 (N.D. Ala. Oct. 21, 2016).  Thus, Counts 1 through 5 should be dismissed because Plaintiffs Oliver, Butler, Welcher, Stein, and Dinkevich lack standing to assert multi-state claims on behalf of consumers from states other than their own.  *See id.* (dismissing claims under forty states' deceptive trade practices statutes due to "plaintiffs' inability to demonstrate the requisite standing to assert claims premised on the law of other states").[5]

## II.   Plaintiffs' Magnuson-Moss Warranty Act Claim (Count 78) Fails Because the MMWA Requires 100 Named Plaintiffs in a Class Action.

Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, fails for three reasons.  ***First***, Plaintiffs' MMWA claim cannot stand because the plain text of the statute requires a minimum of one hundred named plaintiffs in a federal class action: "No claim shall be cognizable in a suit brought [in federal district court] … if the action is brought as a class action, and the number of *named* plaintiffs is less than one hundred."   15 U.S.C. § 2310(d)(3)(C) (emphasis added); *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 618 n.7 (11th Cir. 2001) (noting "there must be 100 named plaintiffs for Magnuson-Moss class actions").

Plaintiffs assert their MMWA claim in a class action in a federal district court, yet the number of named plaintiffs here is just twelve.  This suit thus falls

---

[4]   Plaintiff Dinkevich is the only named plaintiff who resides in a state (NJ) different from the state where he leased his vehicle (NY).

[5]   Any argument that the issue of standing should be delayed until class certification has been foreclosed by the Eleventh Circuit in *Griffin*, 823 F.2d at 1482 ("[T]he threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues.  Only *after* the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.") (emphasis added) (citation omitted); *see also Phillips*, 2016 WL 11272150, at *3 ("'The issue of Article III standing must be resolved for each named plaintiff *before* issues of class certification and representation are contemplated.'") (emphasis added) (citation omitted).

eighty-eight plaintiffs short of the threshold for stating a cognizable MMWA claim in a class action. Accordingly, under the plain text of the statute, Plaintiffs cannot pursue any MMWA claim here—not on behalf of themselves nor on behalf of the putative class. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (affirming dismissal of MMWA claim on account of "Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs" and rejecting argument that Class Action Fairness Act provided alternative basis for jurisdiction); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 246 n.6 (2d Cir. 1986) ("Fewer than 100 named plaintiffs may not initiate [a MMWA claim as] a class action simply by promising to add more named plaintiffs at a later date."); *Brisson v. Ford Motor Co.*, 2009 WL 10670586, at *1 (M.D. Fla. Jan. 20, 2009) ("The Court agrees with Defendant's argument that federal jurisdiction in this case cannot be derived from the MMWA in light of the fact that there are only three named plaintiffs.").[6]

**Second**, because Plaintiffs' MMWA claim merely restates their breach of warranty claims (Counts 8, 9, 22, 23, 27, 28, 34, 40, 41, 46, 47, 53, 54, 59, 60, 65, 66, 71, 72, 75, 76), it fails for the same reasons their state law warranty claims fail. *See Fowler v. Goodman Mfg. Co. LP*, 2014 WL 7048581, at *6 (N.D. Ala. Dec. 12, 2014) (explaining that a claim under the MMWA "is not independent of a state law breach of warranty claim"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347,

---

[6] Though Plaintiffs no doubt will emphasize that some courts have allowed MMWA claims to proceed despite fewer than one hundred plaintiffs where CAFA jurisdiction was present, the "weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA." *Cadena v. Am. Honda Motor Co.*, 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019) (collecting cases). As explained in the Ninth Circuit's recent decision in *Floyd*: "Construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA." 966 F.3d at 1035. But CAFA reveals no such "intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements." *Id.*

1364 (N.D. Ga. 2013) ("'The [MMWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law.'") (citation omitted); Sections IV.D & V.E, *infra* (explaining why Plaintiffs fail to state a claim for breach of express warranty or breach of the implied warranty of merchantability).

    ***Finally***, the MMWA claims of eight plaintiffs—Oliver, Butler, Welcher, Walters-Kayode, Kansky, Stein, Dinkevich, and Cummings—fail for the additional reason that these plaintiffs do not allege they provided Honda with "a reasonable opportunity to cure" its alleged breach as required by the statute. 15 U.S.C. § 2310(e). Not only did these plaintiffs not bother to seek a repair under the warranty; they did not even notify Honda of the purported defect. Their failure to provide Honda with a reasonable opportunity to cure is grounds for dismissing the MMWA claim with prejudice. *Burns v. Winnebago Indus., Inc.*, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012) (granting summary judgment on MMWA claim because it was "undisputed that Plaintiffs never directly notified Defendant of the defects"), *aff'd*, 492 F. App'x 44 (11th Cir. 2012); *Cadena v. Am. Honda Motor Co.*, 2018 WL 8130613, at *10 (C.D. Cal. Nov. 14, 2018) ("Plaintiffs' claims under the Magnuson-Moss Warranty Act are barred because Plaintiffs failed to provide Honda with 'a reasonable opportunity to cure' any alleged failure to repair their vehicles as required under the Act.").

## III. All of Plaintiffs Oliver, Butler, Cummings, Welcher, Ariaudo, Lucas, Walters-Kayode, Hackman, and Kansky's Claims Fail.

### A. Plaintiffs Oliver, Butler, Cummings, Welcher, Ariaudo, and Lucas's Claims (Counts 1, 4–25, 32–37, and 69–74) Must Be Dismissed Because Plaintiffs Fail to Allege a Cognizable Injury.

    Neither Oliver, Butler, Cummings, or Welcher alleges a personal injury. Nor do they allege their respective vehicles experienced a stalling event,

diminished acceleration, an engine shutdown, a crash, or any other mechanical issue related to the alleged fuel pump defect.  Nor do they allege they sold or attempted to sell their respective vehicles at a financial loss.  Instead, these plaintiffs simply allege they did not receive the benefit of their bargain because the alleged defect has purportedly decreased their vehicles' intrinsic and resale value.  CACAC ¶¶ 39, 72–73, 81–82, 102, 191.  The law makes clear this is insufficient to assert a cause of action under any theory these plaintiffs allege in the CACAC.  *See Coudert v. GE Healthcare, Inc.*, 2010 WL 11561533, at *1–2 (N.D. Ala. Mar. 29, 2010) (granting motion to dismiss class action where "plaintiff seeks relief not for a present injury but rather for an injury that has not yet occurred and may never occur"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 630 (M.D.N.C. 2006) ("[Under] the law of the overwhelming majority of jurisdictions, prospective class members whose ball joints have not manifested any defects and who merely allege that they have suffered diminished value or loss of resale value of their [vehicles], will not sufficiently allege actual injury."); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 628–31 (Ala. 1998) (denying fraudulent suppression claim under Alabama law where alleged rollover defect did not manifest in plaintiffs' vehicles and citing with approval cases from other jurisdictions applying this "unmanifested injury rule" to bar claims for breach of implied and express warranty, fraud, negligence, strict liability, and violations of consumer protection statutes); *Pfizer v. Farsian*, 682 So. 2d 405, 407–08 (Ala. 1996) (holding plaintiff could not maintain benefit-of-the-bargain fraud claim against manufacturer of artificial heart valve where—despite known defects—plaintiff's own device had never manifested any such defect).[7]  Likewise, Ariaudo and Lucas have no cognizable injury because

---

[7]   *See also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627–29 (8th Cir. 1999); *Jarmon v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768–69 (S.D. Miss. 2000); *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp. 2d 792, 804–06 (E.D. La. 1998); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99–100 (S.D.N.Y. 1997)*; In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab.*

their fuel pumps have already been repaired. *See, e.g.*, CACAC ¶¶ 89, 123; *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) (affirming dismissal of auto defect claims where the "the repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based").

Because Oliver, Butler, Cummings, Welcher, Ariaudo, and Lucas have not alleged a cognizable injury, each of their claims (Counts 1, 4–25, 32–37, and 69–74) must be dismissed.

### B.    Plaintiff Walters-Kayode's Claims (Counts 26–31) Are Preempted by the Louisiana Products Liability Act.

Plaintiff Walters-Kayode's claims are barred by the Louisiana Products Liability Act ("LPLA"). *See* La. Stat. Ann. § 9:2800.51 *et seq*. The LPLA "'establishes the exclusive theories of liability for manufacturers for damage caused by their products.'" *McLaughlin v. GlaxoSmithKline, LLC*, 2014 WL 669349, at *2 (W.D. La. Jan. 6, 2014) (quoting La. Stat. Ann. § 9:2800.52); *accord Cooper v. Wyeth, Inc.*, 2010 WL 2653321, at *1–2 (M.D. La. June 25, 2010). "Damage" under the LPLA includes "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [Louisiana's redhibition law] does not allow recovery for such damage or economic loss." La. Stat. Ann. § 9:2800.53(5). Accordingly, "the LPLA subsumes all possible causes of action [against a manufacturer], with the exception of a claim in redhibition." *Touro Infirmary v. Sizeler Architects*, 947 So. 2d 740,

---

*Litig.*, 966 F. Supp. 1525, 1529–30 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *Barbarin v. Gen. Motors Corp.*, 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657–58 (D.N.J. 1986); *American Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 530-31 (Cal. Ct. App. 1995), *as modified on denial of reh'g* (Sept. 21, 1995); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 559–65 (N.D. 2002).

744 (La. Ct. App. 2006); *see also De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. Ct. App. 2004).

Walters-Kayode seeks damages arising from the use of her Honda automobile.  Because recovery for such damages falls within the ambit of the LPLA, Walters-Kayode's claims sounding in unfair and deceptive practices (Count 26), express warranty (Count 27), implied warranty based on articles 2524 and 2475 (Count 28), fraudulent omission (Count 29), negligence (Count 30), and strict liability (Count 31) must be dismissed.[8]  *See McLaughlin*, 2014 WL 669349, at *3 (dismissing negligence, fraud, negligence per se, negligent misrepresentation, punitive damages, and unjust enrichment claims because such claims were "beyond the scope of [plaintiff's] exclusive remedy under the LPLA"); *Kennedy v. Pfizer, Inc.*, 2013 WL 4590331, at *2 (W.D. La. Aug. 28, 2013) (dismissing claims falling outside of the LPLA "[b]ecause the LPLA provides the exclusive theories for recovery" and "these claims are statutorily impermissible"); *Cooper*, 2010 WL 2653321, at *2 (dismissing "claims based upon Louisiana Unfair Trade Practices and Consumer Protection Law, fraud, negligence, negligent misrepresentation, misrepresentation, and breach of implied warranty because such claims are outside the permissible scope of the LPLA"); *In re Vioxx Prod. Liab. Litig.*, 2010 WL 11570867, at *12 (E.D. La. Mar. 31, 2010) (finding LPLA precluded plaintiff's LUTPA claims "based on knowing and intentional misrepresentation in the marketing of a drug").

---

[8]  While Walters-Kayode's claim for redhibition, which falls under her Breach of Implied Warranty claim, is not preempted by the LPLA, it fails because Walters-Kayode did not report the alleged defect to Honda.  CACAC ¶ 111; *Alston v. Fleetwood Motor Homes of Indiana Inc.*, 480 F.3d 695, 699 (5th Cir. 2007) (noting a claim for redhibition under Louisiana law requires plaintiff to demonstrate seller was given opportunity to repair defect).

### C.   Plaintiffs Kansky's (Counts 38,[9] 40–43) and Hackman's (Counts 63-68) Claims Are Time Barred.

Plaintiff Kansky's claims for violation of Chapter 93A (Massachusetts' consumer protection statute), breach of express and implied warranty, negligent undertaking, and fraudulent omission under Massachusetts law are all barred by the applicable statutes of limitations.[10]   *See* Mass. Gen. Laws Ann. ch. 260, § 5A (West) (four years for consumer protection actions); *id.* ch. 106, § 2-725(1) (four years for breach of contract actions); *id.* ch. 260, § 2A (three years for tort actions). "In tort actions and actions for violation of G.L. c. 93A, the cause of action accrues at the time the plaintiff is injured." *Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d 434, 441 (Mass. App. Ct. 2000).   Thus, because Kansky's claims for violation of Chapter 93A, negligent undertaking, and fraudulent omission accrued when he claims to have first "experienced symptoms" of the alleged defect in December 2015, the longest of the applicable statute of limitations expired in December 2019. CACAC ¶ 135.   Additionally, Kansky's claims for breach of express and implied warranty accrued "when tender of delivery [was] made" in May 2015.   Mass. Gen. Laws Ann. ch. 106, § 2-725(2); CACAC ¶ 131.   The four-year statute of limitations for these claims thus expired in May 2019.   Mass. Gen. Laws Ann. ch. 106, § 2-725(1).   Because the original Complaint was filed on May 11, 2020, Kansky's claims are untimely and should be dismissed.

Similarly, Plaintiff Hackman's six claims for violation of the Ohio Consumer Sales Practices Act ("OCSPA"), strict products liability, breach of express and implied warranty, negligent undertaking, and fraudulent omission

---

[9]   Plaintiff Kansky's only other claim, Count 39 (strict liability), should be dismissed for other reasons, as addressed in Sections IV.A & IV.B.

[10]   Plaintiff Kansky's claim for strict products liability fails as a matter of law.   *See Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 380–81 (D. Mass. 2008) ("There is no 'strict liability in tort' action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code . . . .")*.*

under Ohio law are all barred by the applicable statutes of limitations.  *See* Ohio Rev. Code Ann. § 1345.10(C) (West) (two years for OCSPA violation claims); *id.* § 2305.10(A) (two years for products liability claims); *id.* § 1302.98(A) (four years for breach of contract); *id.* § 2305.09(D) (four years for torts not arising on contract); *id.* § 2305.09(C) (four years for fraud-based torts).  Because Hackman purchased his vehicle in March or April 2016 and also allegedly first "experienced symptoms" in March or April 2016, all of his claims accrued in March or April 2016, regardless of whether the discovery rule applies.[11]  CACAC ¶¶ 175, 179.  Thus, even under the longest of the applicable limitations periods—four years—the statute of limitations for Hackman's claims would have expired in either March or April 2020.  The Complaint was not filed until at least a month later, on May 11, 2020.  Thus, all of Hackman's claims are time barred and should be dismissed.

Nor can Plaintiffs Kansky and Hackman salvage their time-barred claims by arguing the relevant statutes of limitations were subject to continuing act tolling, fraudulent concealment tolling, or equitable tolling.[12]  *See* CACAC ¶¶ 379–95.  First, continuing-act tolling does not apply because a "'continuing violation is occasioned by continual unlawful acts,'" but the CACAC is devoid of factual allegations that Honda engaged in any unlawful acts following Hackman's or Kansky's vehicle purchases.  *Med. Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 394 (6th Cir. 2008) (citation omitted).  Tolling based on fraudulent concealment does not apply either because the CACAC does not allege Honda took any affirmative acts to prevent discovery of Hackman's or Kansky's causes of

---

[11]  For a plaintiff seeking damages and not rescission as a remedy, the two-year limitations period for an OCSPA claim is "'absolute, and the discovery rule does not apply.'"  *Siriano v. Goodman Mfg. Co.*, 2015 WL 12748033, at *16 (S.D. Ohio Aug. 18, 2015) (citation omitted).

[12]  Plaintiffs' allegations labeled as "Discovery Rule Tolling" are in fact an attempt to invoke equitable tolling.  *See* CACAC ¶¶ 394-95.

action.  *See, e.g.*, *Melnick v. TAMKO Bldg. Prod., Inc*., 469 F. Supp. 3d 1082, 1120 (D. Kan. 2020) (noting the Ohio Supreme Court "[has] made clear that fraudulent concealment sufficient to toll a limitation period requires a showing of specific affirmative acts subsequent to the underlying offense that prevent the plaintiff from timely filing suit"); *Abdallah v. Bain Cap. LLC*, 880 F. Supp. 2d 190, 196 (D. Mass. 2012) ("When no fiduciary duty exists between the parties, 'active fraud is ordinarily required to prove fraudulent concealment.'") (citation omitted).  Finally, the CACAC's conclusory allegations of equitable tolling "fall[] well short of providing *facts* to demonstrate that a diligent inquiry would not have produced the information" revealed by Denso's April 2020 Recall and Honda's 2020 and 2021 Recalls.  *Abdallah*, 880 F. Supp. 2d at 198 (emphasis added).  Accordingly, Plaintiffs Kansky and Hackman's claims should be dismissed as time barred.

## IV. Numerous Other Causes of Action Fail as a Matter of Law.

### A. The Economic Loss Rule Bars Plaintiffs' Various Tort Claims (Counts 1, 4–7, 10, 13, 17–18, 20, 24–25, 29–31, 33, 36–37, 39, 42, 45, 48, 52, 55–58, 61, 64, 67, 70, 74, and 77).

Plaintiffs' various claims sounding in tort are barred by the economic loss rule.  Under that rule, when a product defect results in damage ***only to the product itself***, there is no cause of action in tort, whether for negligence or for strict liability.  *Lloyd Wood Coal Co. v. Clark Equip. Co*., 543 So. 2d 671, 672 (Ala. 1989).  This is because "[w]hen a product injures only itself[,] the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."  *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986).  "The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified."  *Id*. at 872.

Plaintiffs here allege no personal injuries, nor do they allege any damage to property other than to the vehicles themselves.  Rather, they allege some of their vehicles have manifested a defect.  And they allege economic injuries stemming from the defect (namely, diminution in the vehicles' intrinsic and resale value).[13] *See, e.g.*, CACAC ¶¶ 72, 81, 92, 102, 114, 126, 138, 149, 159, 171, 182, 191. Accordingly, Plaintiffs' tort claims—for violation of the Alabama Deceptive Trade Practices Act (Counts 1, 6), violation of North Carolina's Unfair and Deceptive Trade Practices Act (Count 57), strict products liability (Counts 4, 7, 13, 20, 31, 33, 39, 45, 52, 58, 64, 70), and negligent undertaking (Counts 5, 10, 17, 24, 30, 36, 42, 48, 55, 61, 67)—must all be dismissed.  *See, e.g.*, *Malone v. Tamko Roofing Prods. Inc.*, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013) (dismissing "plaintiff's tort claims for negligence, fraudulent concealment, and unfair or deceptive trade practices . . . under the 'economic loss rule'").[14]  For the same

---

[13]  Plaintiffs allege "[t]he Fuel Pump Defect causes damage to property other than the product, including damage to other components of the Class Vehicles including the high-pressure fuel pump, the fuel injectors, and the engine mounts."  CACAC ¶ 476.  But "[i]n the context of defective vehicles, courts have consistently found that the economic loss rule applies where the sole damage alleged is to the vehicle itself."  *Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 62502, at *9 (C.D. Cal. Jan. 4, 2021) (citation omitted); *see also id.* (rejecting plaintiffs' argument that "economic loss rule [did] not apply because 'the defective part, the water pump, ha[d] caused damage to other parts of the Class Vehicles (e.g., the engine),' which constitute[d] damage to 'other property' sufficient to avoid the application of the economic loss rule"); *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 793 (E.D.N.C. 2009) ("Under North Carolina law, when a defective component of a larger system causes damage to the rest of the system, only economic loss has occurred, and the economic loss rule still applies.").

[14]  *See also Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006); *Chapman v. Tristar Prod., Inc.*, 2017 WL 1433259, at *11 (N.D. Ohio Apr. 24, 2017); *Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 968 (N.D. Cal. 2016) ("[I]f a plaintiff alleges a strict products liability claim seeking only economic damages, i.e., damage to the allegedly defective product itself, then the claim is generally barred by the economic loss rule."); *Steffy v. Home Depot, Inc.*, 2009 WL 1444276, at *3 (M.D. Pa. May 21, 2009); *Trans Hudson Express, Inc. v. Nova Bus Co.*, 2007 WL 1101444, at *5 (D.N.J. Apr. 11, 2007); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 265 (Md. 2007); *Clinical Perfusionists, Inc. v. St. Paul Fire & Marine Ins. Co.*, 650 A.2d 285, 293–94 (Md. 1994); *FMR Corp. v. Bos. Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993); *Atlas Air, Inc. v. Gen. Elec. Co.*, 791 N.Y.S.2d 620, 621 (N.Y. App. Div. 2005).

reasons, the economic loss rule bars Plaintiffs' claims for fraudulent omission (Counts 18, 25, 29, 37, 56, 74, 77). *See, e.g.*, *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020) ("Because Plaintiffs concede that they seek only economic damages and premise their fraud claim on alleged omissions, the Court agrees with Honda that Plaintiffs' fraudulent omission claim is barred by the economic loss rule.").[15]

Moreover, with respect to those states recognizing limited exceptions to the economic loss rule, Plaintiffs have failed to identify any applicable exceptions, let alone provide factual allegations sufficient to support their application here. CACAC ¶¶ 400, 401. As just one example, Plaintiffs' allegations fall short of "meet[ing] the required legal threshold of pleading the existence of a clear and extreme danger of death or *serious* personal injury" necessary to invoke the exception to the economic loss rule under Maryland law. *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 633 (Md. 1995); *see also Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270 (Md. 2007) (applying exception to economic loss rule where, unlike here, plaintiffs had sufficiently alleged the nature of the injury included "paraplegia, quadriplegia, and/or death" from rear impact collisions in vehicles with the allegedly defective seatback and a probability of serious injury/death through allegations that "thousands of individuals [had] been injured or killed as a result" of the defective seatback in rear-end collisions).[16] While Plaintiffs allege millions of vehicles are defective, they do not identify a single collision or physical

---

[15]   *See also, e.g.*, *In re LandAmerica Fin. Grp., Inc.*, 2014 WL 535783, at *6 (Bankr. E.D. Va. Feb. 7, 2014) (applying Maryland law); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416–17 (S.D.N.Y. 2013) (applying New York law); *Harris Moran Seed Co. v. Phillips*, 949 So. 2d 916, 931–33 (Ala. Civ. App. 2006).

[16]   *See Morris*, 667 A.2d at 633 (affirming dismissal of tort claims because "alleged [roof] defects [did] not present a substantial risk of death or serious physical injury" and "mere possibilities [were] legally insufficient to allege the existence of a clear danger of death or *serious* personal injury).

injury caused by the defect.  *See* CACAC Ex. L, at 17 ("As of March 19, 2021, Honda has received . . . no reports of injuries or crashes related to this issue.").

 **B.** **Plaintiffs Kansky's and Cosper's Strict Products Liability Claims (Counts 39 and 58) Also Fail Because Massachusetts and North Carolina Do Not Recognize Such Claims.**

 Plaintiffs allege in Counts 39 and 58 that "Defendants are strictly liable for designing, engineering, testing, validating, manufacturing, and placing in the stream of commerce an unreasonably dangerous Fuel Pump."  CACAC ¶¶ 893, 1108.  Because neither Massachusetts nor North Carolina recognizes strict liability in products liability actions, these causes of action should be dismissed.

 Under Massachusetts law, "there is no 'strict liability in tort' apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, ss 2-314 [and] 2-318."  *Swartz v. Gen. Motors Corp.*, 378 N.E.2d 61, 62 (Mass. 1978); *see also Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 380–81 (D. Mass. 2008) ("There is no 'strict liability in tort' action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code.") (citation omitted).  Similarly, North Carolina does not recognize the doctrine of strict liability in products liability cases.  *See Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 510 (N.C. 1980) (refusing "to consider adoption of the rule of strict liability in products liability cases").  Moreover, North Carolina's Products Liability Act explicitly provides: "There shall be no strict liability in tort in product liability actions."  N.C. Gen. Stat. Ann. § 99B-1.1.  Therefore, Counts 39 and 58 for strict products liability under Massachusetts and North Carolina law, respectively, fail as a matter of law.

C.   **Plaintiffs' Negligent Undertaking Claims (Counts 5, 10, 17, 24, 30, 36, 42, 48, 55, 61, 67, and 73) Also Fail Because the CACAC Lacks Plausible Allegations of Increased Risk or Reliance.**

Plaintiffs allege Honda's undertaking of the 2020 and 2021 recalls was negligent, yet they fail to allege the elements of a negligent undertaking claim.  To state such a claim, plaintiffs must allege either that the undertaking increased the plaintiffs' risk of harm or that plaintiffs were harmed as a result of their reliance on the undertaking.  Restatement (Second) of Torts § 323 (1965); *Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1175 (Cal. 2005); *Frye v. Medicare-Glaser Corp.*, 605 N.E.2d 557, 560–61 (Ill. 1992); *Wheatley v. Marietta College*, 48 N.E.3d 587, 617–18 (Ohio Ct. App. 2016).  The "increased risk" element is not satisfied where the defendant merely fails to eliminate a preexisting risk.  *City of Santee v. Cty. of San Diego*, 259 Cal. Rptr. 757, 761–62 (Cal. Ct. App. 1989), *modified* (June 21, 1989).  Rather, a plaintiff must allege the "'negligent performance [] somehow put [her] in a *worse* situation" than she would have been in absent the undertaking. *Sabric v. Lockheed Martin,* 532 F. App'x 286, 293 (3d Cir. 2013) (emphasis added) (citation omitted); *Porter v. Cub Cadet LLC*, 2020 WL 4727002, at *5 (Ill. App. Ct. Aug. 14, 2020); *Nallan v. Helmsley-Spear, Inc.*, 407 N.E.2d 451, 460 (N.Y. 1980); *Wheatley*, 48 N.E.3d at 617–18.

Here, Plaintiffs do not allege they were *harmed* in any way as a result of the *recalls*.  Thus, to sustain their claim, they must allege Honda's undertaking of the recalls somehow *increased their risk of injury*.  Plaintiffs attempt to do so by alleging the remedy implemented through the recalls—replacement of the fuel pump motor, rather than the entire fuel pump module—"can result in gas leaking out of the fuel tank, creating hazardous conditions."  CACAC ¶ 29; *see also id.* ¶¶ 314–32, 334, 336–40.  But Plaintiffs fail to plausibly allege that this remedy placed *themselves* at a greater risk of injury because ***not one of the Plaintiffs***

22

*alleges he or she received the allegedly inadequate remedy*.  Ten of the twelve plaintiffs never obtained fuel pump repairs of any kind by Honda and thus could not possibly have been placed at any greater risk due to the allegedly negligent repair protocol.  *See, e.g.*, *id.* ¶ 179 ("The vehicle was not repaired.").  The other two plaintiffs, Ariaudo and Lucas, allege their *entire* fuel pumps—not the fuel pump motors—were replaced.  *Id.* ¶¶ 91, 123.  Plaintiffs do *not* allege that replacing the entire fuel pump creates any additional risk of injury.  In fact, they refer to that remedy as the "industry standard" to which the entire recall should have conformed.  *Id.* ¶ 29.  Because Plaintiffs could not have been placed at risk by a repair protocol they were never exposed to, their negligent undertaking claims must be dismissed.

### D.  Plaintiffs' Claims for Breach of Express Warranty (Counts 8, 14, 22, 27, 34, 40, 46, 53, 59, 65, 71, 75) Fail for Two Additional Reasons.

Plaintiffs fail to state valid claims for breach of express warranty for at least two additional reasons.

*First*, the express warranty claims of seven plaintiffs—Plaintiffs Oliver (Alabama), Butler (Alabama), Welcher (Illinois), Kansky (Massachusetts), Stein (NJ), Dinkevich (NY), and Cummings (PA)—fail to comply with U.C.C. pre-suit notice requirements.  U.C.C. § 2–607(3)(a) provides: "[w]here a tender has been accepted, . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[17]  Such notice is a precondition for stating a breach of warranty claim in the relevant states.  *See Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283–86 (M.D. Ala. 2001) (holding Alabama law requires notice to the manufacturer as

---

[17] *See also, e.g.*, Ala. Code § 7-2-607(3)(a); 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a) (West); Mass. Gen. Laws Ann. ch. 106, § 2-607(3)(a) (West).

"a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint"); *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998) (recognizing "notice is an essential element" of breach of warranty claims under Illinois law); *Piro v. Exergen Corp.*, 2016 WL 1255630, at *10 (D. Mass. Mar. 29, 2016) ("Under Massachusetts law, 'a plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations.'") (citation omitted); *Kury v. Abbott Labs., Inc.,* 2012 WL 124026, at *7 (D.N.J. Jan. 17, 2012) ("[B]ecause Plaintiff has failed to allege that the condition precedent has been met—sending a pre-litigation notice—Plaintiff's express warranty claim necessarily fails.") (citation omitted); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) ("[T]he plaintiff's breach of warranty claims are dismissed for failure to provide notice of the alleged breaches to the defendants within a reasonable time."); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013) (dismissing claims for breach of implied and express warranties where plaintiffs "failed to allege that they provided pre-suit notice to Defendant of any alleged defect").

Courts take these notice requirements seriously. "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). The filing of a lawsuit or general allegations a defendant knew of the alleged breach do not suffice. *See Smith v. Apple, Inc.*, 2009 WL 3958096, at *2 (N.D. Ala. Nov. 4, 2009) (finding "a general awareness on Apple's part of alleged defects in its iPhone does not extinguish the purposes of the notice requirement"); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (holding "even if a manufacturer is aware of problems with a particular

product line, the notice requirement of section 2–607 is satisfied [under Illinois law] only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"); *Tomasino*, 44 F. Supp. 3d at 261 (finding "allegation that '[a]ll conditions precedent to Defendants' liability under [the] contract have been performed by Plaintiff and the other members of the Class and NY Subclass'" was insufficient to satisfy notice requirement); *Schmidt*, 972 F. Supp. 2d at 717, 719 (rejecting plaintiffs' argument that "they met the pre-suit notice requirement because Defendant received a plethora of consumer complaints directly and through the NHTSA about the exact same malfunctions described in the complaint"); *cf. Smith v. Robertshaw Controls Co.*, 2003 WL 23142189, at *4–5 (D. Mass. Dec. 31, 2003) (granting summary judgment on warranty claim where plaintiff did not provide notice "until the filing of the complaint, almost three years after the accident" and defendant "was prejudiced by the delay"). The breach of express warranty claims of Plaintiffs Oliver, Butler, Welcher, Kansky, Stein, Dinkevich, and Cummings must therefore be dismissed for failure to provide pre-suit notice.

*Second*, the express warranty claims of twelve plaintiffs (brought under Alabama, California, Illinois, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, and Pennsylvania law) fail because they do not allege facts establishing a breach. "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). Plaintiffs allege, "[i]n its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period." CACAC ¶¶ 514, 833, 905, 977, 1048, 1120, 1189, 1251, 1295. Plaintiffs do not (and could not) allege the warranty promises vehicles will *never* develop

defects; they allege only that defects would be repaired for free during the warranty period—a term the allegations do not establish was breached.

Eight plaintiffs (those from Alabama, Illinois, Louisiana, Massachusetts, New Jersey, New York, North Carolina, and Pennsylvania) never asked Honda to repair their vehicles and therefore have no basis to allege Honda breached its obligation to them.  Plaintiff Cosper (North Carolina) merely alleges she contacted two Honda dealers to *inquire about* a fuel pump replacement, CACAC ¶ 167, but does not allege she was *denied* repairs.  The allegations regarding the other three plaintiffs are likewise insufficient.  Plaintiffs Ariaudo (California) and Lucas (Maryland) allege their dealers complied with the warranty by replacing their fuel pumps.[18]  *Id.* ¶¶ 91, 123.  They do not allege they experienced further problems with the fuel pump after the repairs.  Plaintiff Hackman (Ohio) contends the Acura dealer "failed to diagnose the Fuel Pump Defect" but makes no further allegations as to whether he sought and was denied repairs.[19]  *Id.* ¶ 179.

Nor can Plaintiffs base their breach of express warranty theory on a claim the warranty failed of its essential purpose.  Under that theory, "[a] limited remedy fails of its essential purpose when the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *5 (N.D. Cal. June 5, 2009).  "For a repair-or-replace

---

[18]   Plaintiff Ariaudo alleges the Acura dealer initially twice "failed to offer a repair" but concedes she ultimately had the fuel pump replaced in June 2020.  CACAC ¶¶ 89, 91.

[19]   Although Plaintiffs allege "Honda has refused to provide an adequate and timely warranty repair for the Fuel Pump Defect," CACAC ¶¶ 518, 837, 908, 981, 1052, 1123, 1255, 1299, conclusory allegations that merely recite an element of the claim are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  This is especially true here, where the more general conclusory allegations are inconsistent with Plaintiffs' specific allegations.

remedy to fail its essential purpose, however, the consumer must give the manufacturer an opportunity to repair or replace the alleged defect during the warranty period." *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *2 (E.D. Mich. Jan. 4, 2019). As discussed above, because Plaintiffs have not alleged Honda refused to repair or replace any allegedly malfunctioning component, there is no failure of the warranty's essential purpose. *See id.* at *2 n.3, 3 (dismissing express warranty claims in states including Massachusetts, New Jersey, New York, North Carolina, and Pennsylvania because plaintiffs did not plead they sought repair in the warranty period or the remedy was ineffective); *Schiesser v. Ford Motor Co.*, 2017 WL 1283499, at *4 (N.D. Ill. Apr. 6, 2017) (dismissing Illinois express warranty claim because plaintiff did not seek repairs within time period or mileage limitation stated in warranty); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970–71 (N.D. Cal. 2014) (dismissing Alabama and Ohio express warranty claims because plaintiffs failed to present vehicles for repair).

### E.  Plaintiffs' Claims for Breach of Implied Warranty (Counts 9, 23, 35, 41, 47, 54, 60, 66, 72, and 76) Also Fail.

Plaintiffs' implied warranty claim fails for at least three reasons.

*First*, the implied warranty claims under Alabama, Illinois, Massachusetts, New Jersey, New York, and Pennsylvania law fail because Plaintiffs do not adequately plead they provided the requisite pre-suit notice of Honda's alleged breaches. *See* Section IV.D (describing Plaintiffs' failure to allege notice); *Jewell v. Seaboard Indus., Inc.*, 667 So. 2d 653, 661 (Ala. 1995) (affirming dismissal of implied warranty claim under Alabama law for lack of notice); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997) ("Because plaintiffs' complaint does not specifically allege that Audi had actual knowledge of the alleged breach of the particular automobiles purchased by the named plaintiffs in this lawsuit, it does not sufficiently allege notice [under Illinois law].");

*Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 448–49 (1st Cir. 1997) (noting "a plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant" to maintain a claim under Massachusetts law); *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *11 (D.N.J. Mar. 26, 2012) ("[B]ecause Plaintiff has failed to allege that the condition precedent has been met—sending a pre-litigation notice—Plaintiff's express and implied warranty claims necessarily fail."); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260–61 (E.D.N.Y. 2014) (dismissing implied warranty claim asserted against manufacturer under New York law because plaintiff failed to provide pre-suit notice of alleged breach); *Am. Fed'n of State Cty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharm., Inc.*, 2010 WL 891150, at *7 (E.D. Pa. Mar. 11, 2010) (dismissing implied warranty claim under Pennsylvania law because "Plaintiffs failed to allege that they provided Defendants with notification" of breach).

   *Second*, the implied warranty claims under Alabama, Illinois, New York, and North Carolina law fail because Plaintiffs lack privity with Honda.  These states require Plaintiffs to establish strict vertical privity with the direct "sellers." *See Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) ("There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract."); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty."); *Westchester Cty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983) ("[A]bsent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty."); *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009) ("[W]hen a plaintiff asserts an implied warranty claim seeking

only the recovery of economic loss, North Carolina still requires privity of contract.").

Plaintiffs cannot satisfy the privity requirement because they purchased or leased their vehicles from third party dealerships, not from Honda. CACAC ¶¶ 67, 76, 96, 153, 163. As Honda was not the "immediate seller," Plaintiffs' implied warranty claims must be dismissed. *See Tomasino*, 44 F. Supp. 3d at 262 (dismissing implied warranty claim for lack of privity where plaintiff alleged she had purchased defendant manufacturer's product from a department store rather than from defendant manufacturer); *Selby v. Goodman Mfg. Co.*, 2014 WL 2740317, at *3 (N.D. Ala. June 17, 2014) (noting "implied warranties apply only to 'sellers' and not to manufacturers") (citation omitted); *Wellcraft Marine*, 577 So. 2d at 419 (affirming dismissal of implied warranty claims against manufacturer defendant because defendant was not the seller); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988) ("[W]ith respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller.").[20]

---

[20] As to Plaintiff Hackman's claim under Ohio law, the CACAC does not explicitly state whether he asserts a theory of implied warranty in contract, tort, or both. "A claim for breach of implied warranty in contract needs privity between the parties, while a breach of implied warranty in tort does not." *Mooradian v. FCA US, LLC*, 2017 WL 4869060, at *6 (N.D. Ohio Oct. 27, 2017) (footnote omitted). To the extent his implied warranty claim sounds in contract, Plaintiff's claim under Ohio law fails because he purchased his car from a third-party dealer rather than from Honda. CACAC ¶ 175. To the extent the claim sounds in tort, it must also fail. "In the consumer vehicle context, . . . Plaintiffs must adequately allege that their vehicles are 'not fit for safe driving and reliable transportation.'" *Mooradian*, 2017 WL 4869060, at *7 (citation omitted). Plaintiff alleges he experienced "hesitated acceleration" five years ago, CACAC ¶ 179, but has not alleged he has experienced hesitated acceleration since then or that the purported defect interfered with his ability to drive his car. On these allegations, Plaintiff makes no sufficient merchantability or fitness claim. *Filipovic v. Fairchild Chevrolet*, 2001 WL 1141384, at *5 (Ohio Ct. App. Sept. 27, 2001) ("A reasonable trier of fact could only find that the stalling problem, while certainly an annoyance, did not interfere with her ability to drive the car.").

Plaintiffs Dinkevich and Cosper[21] attempt to plead around New York and North Carolina's privity requirement by alleging they "and the Class members are intended third-party beneficiaries of contracts between Honda and their . . . authorized dealers." CACAC ¶¶ 1068, 1139.  But merely alleging the existence of a "third-party beneficiary" relationship is not enough under either New York or North Carolina law.  *See, e.g.*, *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 363 (W.D.N.Y. 2013) (dismissing implied warranty claim for lack of privity even though plaintiff had alleged he was a third-party beneficiary); *Metric Constructors, Inc. v. Indus. Risk Insurers*, 401 S.E.2d 126, 128 (N.C. Ct. App. 1991) (noting claim must be dismissed where plaintiff fails "to allege sufficient facts to support at least one of the required elements of a third-party beneficiary claim in its complaint"), *aff'd*, 410 S.E.2d 392 (1991).  A plaintiff must allege facts showing "(1) the existence of a contract between two other persons; (2) the contract was valid and enforceable; and (3) the contract was entered into for his direct, and not incidental, benefit."  *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 625 (N.D. Ohio 2016); *cf. 4C Foods Corp. v. Package Automation Co.,* 2014 WL 6602535, at *4 (S.D.N.Y. Nov. 18, 2014) (dismissing claim because facts pleaded in complaint did not plausibly support inference that plaintiff was a third-party beneficiary).  Neither Dinkevich nor Cosper have pled such facts and instead attempt to rely on conclusory allegations insufficient to support a plausible claim.

Nor can Plaintiffs circumvent the privity requirement by alleging "Honda's dealers" are "agents of Honda."  CACAC ¶ 382.  Even if the states recognize an agency exception to the privity requirement,[22] Plaintiffs' conclusory allegations are

---

[22]  As to Plaintiff Welcher's claim, the Illinois Supreme Court has not recognized an agency exception to the privity requirement for implied warranty claims, and this Court should decline to create one.  *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1123 (N.D. Ill. 2019) ("This Court is not alone in doubting the Illinois Supreme Court would recognize any exceptions to the requirement of privity for implied warranty claims.").

devoid of facts tending to show an agency relationship between the dealers and Honda. While Plaintiffs' claim of agency is not subject to a heightened pleading requirement, Plaintiffs must still allege sufficient facts to support a plausible claim of agency. Plaintiffs fail to do so. *See Yelverton v. Yelverton Farms, Ltd*., 2015 WL 847393, at *13 (E.D.N.C. Feb. 26, 2015) ("[T]he bare assertion defendant [] was plaintiff's agent is insufficient to show [] an agency relationship existed . . . ."); *Hackett v. BMW of N. Am., LLC*, 2011 WL 2647991, at *2 (N.D. Ill. June 30, 2011) (dismissing implied warranty claim because "a plaintiff must allege more than the dealer was an authorized dealer"); *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288, 290 (Ala. 1981) (holding allegations were insufficient to plead agency where complaint did not allege facts showing agency relationship or that work was done within line and scope of agent's authority).

*Third*, five plaintiffs—Oliver (Alabama), Butler (Alabama), Welcher (IL), Stein (New Jersey), and Cummings (PA)—fail to plausibly allege *their* vehicles, which have not malfunctioned, are unmerchantable. The absence of a manifested defect dooms their claims. *See, e.g.*, *Ford Motor Co. v. Rice*, 726 So. 2d 626, 628 (Ala. 1998) ("[I]t is well established that purchasers of an allegedly defective product have *no legally recognizable* claim where the alleged defect has not manifested itself in the product they own.") (emphasis added) (cleaned up); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657–58 (D.N.J. 1986) (dismissing warranty claim because allegation of design defect that was likely to cause damage and create safety hazard but had not yet manifested did not state cause of action); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 1472335, at *4 (Pa. Com. Pl. May 22, 2002) ("[T]he fact that no defect in the Plaintiff's Vehicle has manifested itself precludes the Plaintiff from proceeding on her breach of warranty claim."); *cf. Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *14–15 (D.N.J. Dec. 29,

2011) (dismissing implied warranty claim because defect did not manifest until after warranty period) (collecting cases).

Moreover, the CACAC's conclusory assertions that "[t]he Class Vehicles were . . . not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used" cannot sustain their claims.  CACAC ¶¶ 527, 992, 1266.  The law is clear that simply reciting the elements of a cause of action does not suffice.  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."); *see also Gutierrez v. Carmax Auto Superstores Ca.*, 248 Cal. Rptr. 3d 61, 75 (Cal. Ct. App. 2018) ("[G]eneral assertions . . . that [a vehicle] 'was not fit for its intended use' and 'was virtually useless due to safety defects' are not allegations of fact sufficient to state a breach of the implied warranty of merchantability."), *as modified on denial of reh'g* (Feb. 22, 2018).[23]

Nor does the allegation that Oliver's vehicle is included in Honda's 2020 recall render his vehicle unmerchantable.  "It is not enough to allege that a product *line* contains a defect or that a product is *at risk* for manifesting this defect; rather, the plaintiffs must allege that *their product* actually exhibited the alleged defect." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (emphasis added); *see also Gutierrez*, 248 Cal. Rptr. 3d at 75 ("[T]he allegation of the existence of a safety recall . . . by itself, is insufficient to state facts showing that the vehicle was unfit for ordinary purposes.").

> **F.    Plaintiffs Fail to State a Plausible Claim for Relief Under State Consumer Protection Statutes or Common Law Fraud (Counts 1–3, 6, 11–12, 15–16, 18–19, 21, 25, 32, 37–38, 43–44, 49–51, 56–57, 62–63, 68–69, 74, and 77) and Do Not**

---

[23]  Notably, none of the Plaintiffs allege they stopped using their vehicles due to the purported defect.  In fact, Plaintiffs do not allege the purported defect has caused a single collision anywhere, much less one involving their own vehicles.

**Plead Fraud with the Requisite Particularity Under Rule 9(b).**

Plaintiffs allege Honda violated various consumer protection statutes and committed fraud by (a) making representations about its commitment to safety and dependability and (b) not disclosing the alleged fuel-pump defect to consumers. *See, e.g.*, CACAC ¶¶ 384, 439, 545, 557, 618, 642, 743, 779.  But Plaintiffs have not stated a cognizable claim for relief under either theory.

### 1. Plaintiffs fail to identify a single affirmative misrepresentation and, in any event, fail to adequately plead reliance or causation.

The CACAC fails to identify a single actionable misrepresentation, much less one Plaintiffs relied upon in purchasing their vehicles.  In fact, the few representations identified in the CACAC all consist of advertisements speaking only to the general concept of safety.  *See, e.g.*, CACAC ¶ 284 ("Safe and Sound"), ¶ 290 ("Always thinking about safety.").  It is well settled such "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); *see also, e.g.*, *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) ("Puffery [or broad, vague, and commendatory language] is distinguishable from misdescriptions or false representations of specific characteristics of a product. As such, it is not actionable."); *Groden v. Random House, Inc.*, 1994 WL 455555, at *5 (S.D.N.Y. Aug. 23, 1994) (dismissing false advertising claim, holding an allegedly misleading statement was mere "puffing"); *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (holding NJCFA distinguishes between actionable misrepresentations of fact and "puffery").

Indeed, courts have routinely dismissed deceptive advertising claims based on similar statements about reliability and safety.  *See Vitt v. Apple Comput., Inc.*,

469 Fed. App'x 605, 607 (9th Cir. 2012) (affirming dismissal because descriptors such as "durable," "reliable, and "high performance" were not actionable); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (finding representation that passengers on cruises "would be safely and adequately served" to be "devoid of any meaningful specificity, amounting at most to . . . mere puffing"); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (dismissing UCL and CLRA claims premised on non-actionable representation that product operated "safely"); *Anunziato*, 402 F. Supp. 2d at 1140 ("The Court finds that the word 'reliability' is non-actionable puffery.").[24]  This is because a statement must be specific, measurable, and capable of being proven true or false to be actionable.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997*)*.   There is nothing specific or measurable about the words "reliable" and "safe."  *Zaccagnino v. Nissan N. Am., Inc*., 2015 WL 3929620, at *4 (S.D.N.Y. June 17, 2015) ("[P]romoting a car as generally safe and reliable is too general a representation to be proven true or false."), *abrog. on other grounds recognized by New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287 (S.D.N.Y. 2015).

Even if Honda's generalized representations about safety could somehow be construed as making specific and empirically verifiable claims (they can't), the CACAC fails to explain how any of the statements are false or misleading.  The

---

[24] *See also Glass*, 2011 WL 6887721, at *7 (dismissing NJCFA claim in part because advertisements about safety of vehicles were "non-actionable puffery"); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996) (finding advertisements that vehicles were "dependable" to be nonactionable puffery); *Hoffman v. A.B. Chance Co.*, 339 F. Supp. 1385, 1388 (M.D. Pa. 1972) ("The general representation that a product 'offered unprecedented safety' is a statement of opinion and is in the nature of seller's 'puffing.'"); *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (holding statements in brochure that consumer was "assured of a safe, dependable helicopter" were non-actionable puffing), *abrogated on other grounds by Reott v. Asia Trend, Inc.*, 55 A.3d 1088 (Pa. 2012).

alleged fuel pump defect does not, for example, render false Honda's statement that "[c]reating a world where collisions no longer happen is one of [Honda's] most monumental dreams yet."  CACAC ¶ 284.  Nor does it render false Honda's statement that it has "developed safety technology that not only helps protect occupants but takes into consideration pedestrians as well."  *Id*.  The existence of such technology is no less true if, as Plaintiffs allege, some vehicles contain defective fuel pumps.

Moreover, even if these generic statements about safety were false (they're not), Plaintiffs' affirmative misrepresentation theory fails for the additional reason that Plaintiffs do not identify a single misrepresentation which they personally viewed before buying their vehicles.  A consumer cannot rely on a representation she has never seen.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of CLRA and UCL claims because plaintiff failed to allege with any specificity what advertisements he saw, which he found material, which he relied on, and why they were false); *Tucker v. Boulevard at Piper Glen LLC*, 564 S.E.2d 248, 251 (N.C. Ct. App. 2002) ("Where an unfair or deceptive practice claim [under North Carolina's UDTPA] is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury . . . ."); *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. Ct. 2004) ("[E]very plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct."), *aff'd*, 928 A.2d 186 (2007).

Nor can a consumer adequately plead the element of causation where she does not allege she ever saw the purported misrepresentation.  *See Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) ("[P]laintiffs in a class action under the ICFA must prove that each and every consumer who seeks

redress actually saw and was deceived by the statements in question.") (cleaned up); *Glass*, 2011 WL 6887721, at *7, *12–13 (dismissing NJCFA claim because a "Plaintiff cannot simply reference a statement on a website without providing the date when the statement was made or at what point—if ever—Plaintiff was exposed to that statement"); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527 (D.N.J. 2008) (noting that without information as to when each plaintiff "was exposed to one or more of the statements," plaintiffs "ha[d] not properly plead a 'causal nexus' with the particularity required by Rule 9(b)"); *Lowell Gas Co. v. Attorney Gen.*, 385 N.E.2d 240, 249 (Mass. 1979) (noting Massachusetts Consumer Protection Act requires causation).[25]

Finally, Plaintiffs' claims are not saved by their vague allegations they viewed unspecified "promotional materials" and were generally aware of Honda's "marketing message that its vehicles are safe and dependable." *See, e.g.*, CACAC ¶¶ 68–69. Because the common law fraud claims and the claims under state consumer protection laws "sound in fraud" and thus fall within the ambit of Rule 9(b), the CACAC must "state with particularity the circumstances constituting fraud or mistake." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019) (citing Fed. R. Civ. P. 9(b)), *cert. denied*, 140 S. Ct. 2828 (2020); *see also AAL High Yield Bond Fund v. Ruttenberg,* 2001 WL 34372980, at *6 (N.D. Ala. Sept. 30, 2001) ("[C]ourts have consistently held that Rule [] 9(b) applies to all claims that 'sound in fraud.'").[26]  This requires Plaintiffs to identify: "(1) precisely

---

[25]   *See also* Ala. Code § 8-19-10(a) (requiring causation); Md. Code Ann., Com. Law § 13-408(a) (West) (requiring causation); La. Stat. Ann. § 51:1409(A) (requiring causation).

[26]   *See also, e.g., Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).") (citation omitted); *Petrich v. MCY Music World, Inc.*, 862 N.E.2d 1171, 1181 (Ill. App. Ct. 2007) (noting complaint under Illinois Consumer Fraud Act "'must state with particularity and specificity the deceptive manner of defendant's acts or practices'") (citation omitted).

what statements were made in what documents or oral representations *or what omissions were made*, and (2) the time and place of each such statement and the person responsible for making (*or, in the case of omissions, not making*) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (emphasis added).

Plaintiffs' vague allegations regarding Honda's "marketing message" thus fall short. *See, e.g.*, *Petrosyan v. Maserati N. Am., Inc.*, 2020 WL 2104789, at *8 (D. Mass. May 1, 2020) (dismissing claims under Massachusetts' consumer protection laws because "none of the alleged misrepresentations [were] pled with particularity"); *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1351 (C.D. Cal. 2015) (dismissing fraud claim under California law where plaintiff only "vaguely identifie[d] . . . the alleged misrepresentations" and thus did not adequately plead "the time, place, and specific content of the false representations"); *Alban*, 2010 WL 3636253, at *11 (dismissing NJCFA claim for failure to comply with Rule 9(b) where complaint did not explain "when, before the time he purchased his vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers"); *Petrich*, 862 N.E.2d at 1181–82 (dismissing Illinois Consumer Fraud Act claim where "Plaintiff's allegations fail[ed] to state with the required specificity what misrepresentations were made, by whom and to whom, when or how they were made," and "Plaintiff attache[d] no exact time to the purported 'fraudulent representations' made by defendants"); *McCormick v. Medtronic, Inc.*, 101 A.3d 467, 493 (Md. Ct. Spec. App. 2014) (applying Rule 9(b) to fraud claim under Maryland law).

### 2. Plaintiffs fail to plausibly allege Honda knew about the alleged fuel pump defect at the time of sale.

To the extent Plaintiffs' consumer fraud claims rest on a theory of omission—i.e., that Honda failed to disclose the alleged fuel pump defect—they also fail because Plaintiffs[27] have not plausibly alleged Honda knew about the specific defect *before* they purchased or leased their respective vehicles. To plead a cognizable claim based on an omission, Plaintiffs must plausibly allege Honda knew their vehicles were defective when they bought them. *State Farm Mut. Auto. Ins. Co.* v. *Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 720 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014); *see also Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (explaining that to state a CLRA claim "for failing to disclose a safety defect, Plaintiffs must allege . . . that Defendant knew of the defect at the time a sale was made") (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143–46 (9th Cir. 2012)); *Woods v. Maytag Co.*, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) (finding plaintiff failed to state a claim under GBL § 349 where plaintiff had "not provided enough factual information to plausibly suggest that the [] Defendants had knowledge of the defect"); *Alban v. BMW of N. Am., LLC*, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) ("[T]he plaintiff must set forth colorable factual allegations tending to show that the defendant [] knew of a defect . . . that created a certainty that part would fail before the rest of the product . . . ."); *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (requiring allegations of intentional concealment, which implies knowledge, for an omission to be actionable under

---

[27] As used in Section IV.F.2, the word "Plaintiffs" refers to all Plaintiffs except for Plaintiff Walters-Kayode, whose claim under the Louisiana Unfair Trade Practices and Consumer Protection Law is preempted by the Louisiana Products Liability Act and is not addressed in this section. *See* Section III.B, *supra*.

Pennsylvania law).[28]  This is not a low bar: "conclusory allegations of pre-purchase knowledge . . . are insufficient." *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019).  A plaintiff must plead specific facts to plausibly demonstrate the defendant had pre-sale knowledge of the alleged defect. *Wilson*, 668 F.3d at 1145–48; *Woods*, 2010 WL 4314313, at *16.  Thus, where a plaintiff has not set forth enough facts to plausibly show a defendant knew about a defect before selling the product, the claim must be dismissed. *See, e.g.*, *Mandani*, 2019 WL 652867, at *8 (dismissing omission-based claims where facts alleged in support of defendant's pre-sale knowledge of defect were insufficient to render such knowledge plausible); *Santos v. SANYO Mfg. Corp.*, 2013 WL 1868268, at *6 (D. Mass. May 3, 2013) (same); *Alban*, 2010 WL 3636253, at *11 (same).  Here, Plaintiffs fail to plausibly plead Honda's pre-sale knowledge of the defect for two independent reasons.

---

[28]  Honda's pre-sale knowledge of the defect is an essential element of all the fraudulent omission claims, as well as Plaintiffs' claims under the consumer protection statutes of Alabama, California, Illinois, Massachusetts, New Jersey, and Ohio.  *See, e.g.*, *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 708 (E.D. Mich. 2020) ("[T]o adequately plead fraudulent omission [under the laws of Alabama, California, New Jersey, North Carolina, Ohio, and other states,] Plaintiffs must allege that Defendants knew at the time they sold the trucks that the washcoat defect and flash defect caused the [problem] . . . ."); *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill. App. Ct. 2006) ("[F]or a material omission to be actionable [under Illinois law], the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment."); *Friedland v. Gales,* 509 S.E.2d 793, 797 (N.C. Ct. App. 1998) ("To assert a claim for fraudulent concealment [under North Carolina law], there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose."); *Strickland v. Kafko Mfg., Inc.*, 512 So. 2d 714, 718 (Ala. 1987) (affirming judgment for manufacturer because it had not knowingly violated Alabama's Deceptive Trade Practices Act); *Grodzitsky*, 2013 WL 690822, at *6 (dismissing consumer fraud claims under California law because plaintiff failed to plausibly allege "that Defendant knew of the defect at the time a sale was made"); *Alban*, 2010 WL 3636253, at *10 ("[U]nless a defendant manufacturer knows with certainty that a product *will* fail, it does not violate the NJCFA by failing to inform its consumers of the *possibility* of failure.").  The Maryland Consumer Protection Act requires a showing that the manufacturer knew or had "reason to know of the defect."  *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 548 (D. Md. 2011).

*First*, the CACAC alleges the opposite is true; i.e., "Honda and Class members *did not know* of the Fuel Pump Defect, and they couldn't have discovered it through reasonable diligence." CACAC ¶ 279 (emphasis added). Likewise, Plaintiffs allege throughout the CACAC that "Honda knew, should have known, or was reckless in *not knowing*" about the alleged defect. *Id.* ¶ 270 (emphasis added). Needless to say, it is not possible, let alone plausible, that Honda both knew and did not know about the defect.[29] Such "contradictory allegations simply cannot usher [a] plaintiff's [claim] across the threshold of plausibility." *Camelio v. Int'l Bhd. of Teamsters*, 32 F. Supp. 3d 427, 433 (W.D.N.Y. 2014); *see also, e.g.*, *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) (dismissing complaint where "plaintiff's allegations appeared internally inconsistent" and plaintiff thus failed "to state a claim to relief that was plausible on its face") (cleaned up) (citation omitted), *aff'd,* 382 F. App'x 256 (4th Cir. 2010). While a plaintiff may plead *causes of action* in the alternative, inconsistent factual allegations will doom a complaint. *See, e.g.*, *Trevino v. City of Pleasanton*, 2019 WL 1793360, at *5 (W.D. Tex. Apr. 23, 2019) ("While pleading in the alternative may be appropriate . . . , internally inconsistent factual allegations . . . are insufficient to state a plausible claim for relief.") (citing *Iqbal*, 556 U.S. at 678). That is particularly true here, "where one factual assertion *negates* an essential element of a contrary assertion." *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 236 (W.D. Pa. 2015) (emphasis added) (citation omitted).

---

[29] While the Maryland Consumer Protection Act requires only that the manufacturer had reason to know about the defect, *see* n.28, *supra*, that claim fails for the same reason. It is not plausible, nor even possible, Honda had reason to know about the defect but also "couldn't have discovered it through reasonable diligence." CACAC ¶ 279.

*Second*, Plaintiffs offer three categories of allegations regarding Honda's purported knowledge, but none creates a plausible inference Honda knew about the specific fuel pump defect *before* Plaintiffs purchased their vehicles.

> a.   *Customer complaints to a third party about unspecified defects do not create a plausible inference that Honda had pre-sale knowledge of the specific defect alleged here.*

The first set of allegations—that NHTSA received complaints of Honda vehicles stalling or failing to accelerate—falls short.  Customer complaints "[b]y themselves [] are insufficient to show that [the manufacturer] had knowledge" of a defect.  *Wilson*, 668 F.3d at 1147 (quoting *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)); *see also McQueen v. BMW of N. Am., LLC*, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014) ("[W]hat consumers told the *NHSTA* [sic] about their . . . sedans tells the Court nothing about what [the *automaker*] knew about [the relevant] vehicles and when it knew it.") (emphasis added).  Indeed, courts have consistently rejected similar allegations for a host of reasons.

*First*, Plaintiffs fail to allege—and, more importantly, fail to plead facts establishing—that most of the complaints quoted in the CACAC concerned defective fuel pumps at all, let alone the specific defect alleged here.  Only nine of the thirty pre-sale complaints quoted in the CACAC reference a fuel pump at all.[30]  CACAC ¶¶ 261, 264, 310–16.   Many even explicitly state that the issue

---

[30]   With respect to Plaintiffs Welcher, Lucas, Kansky, Cosper, and Hackman, **none** of the NHTSA complaints in the CACAC referencing a fuel pump pre-date their purchases.  As to Plaintiffs Oliver and Ariaudo, only **one** of the complaints referencing a fuel pump pre-dates their purchase or lease.  CACAC ¶ 315.  As to Plaintiffs Butler and Dinkevich, at most two complaints referencing a fuel pump pre-date their purchase or lease, respectively.  *Id.* ¶¶ 312, 315.  Thus, with respect to nine of the eleven plaintiffs—Walters-Kayode's claim is not addressed in this section, *see* n.27, *supra*—at most *two* NHTSA complaints mentioning a fuel pump pre-date their purchases or leases.

complained of "was not diagnosed." *Id.* ¶¶ 254, 262; *see also id.* ¶ 245 ("[C]ould not determine the cause of the failure."), ¶ 246 ("[T]he cause of the failure was undetermined."), ¶ 249 ("[N]o problem found."). Furthermore, all Plaintiffs purchased or leased their vehicles before December 2019, so half of the complaints, which postdate Plaintiffs' purchases or leases, are irrelevant in any event. *See, e.g.*, *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 1574301, at *18 (D.N.J. May 3, 2012) (finding no "specific factual allegations pointing to . . . knowing omissions on the part of Defendants as to the [] headlamps" where "all the facts detailing complaints lodged beg[an] with complaints filed in 2007 with the NHTSA *after* Plaintiff purchased the Class Vehicle at issue") (emphasis added), *aff'd,* 525 F. App'x 94 (3d Cir. 2013).[31]

Plaintiffs fail to explain how generalized complaints about acceleration issues, only nine of which even referenced a fuel pump, put Honda on notice of the specific fuel pump defect alleged here. This failure dooms their claims. *See, e.g.*, *Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 62502, at *6 (C.D. Cal. Jan. 4, 2021) ("The Court concludes that Plaintiffs have not plausibly alleged that Mazda had knowledge of the alleged [water pump] defect. . . . Nor are the combined 21 NHTSA complaints (including three made about Ford's water pump) and the three internet-forum complaints sufficient to plausibly allege knowledge."); *Oliver v. Funai Corp., Inc.*, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) (finding consumer complaints failed to show defendants' knowledge of specific defect in part because "many of [them] . . . [did] not specifically reference a defect with the

---

[31] *Cf. Callaghan v. BMW of N. Am., LLC*, 2014 WL 6629254, at *3-4 (N.D. Cal. Nov. 21, 2014) (finding allegations of defendant's knowledge that transmissions were "prone to premature failure" lacking, where plaintiffs included 11 NHTSA complaints "[b]ut the vast majority of these post-date[d] the purchases of plaintiffs Pena and Caldwell, and more than half post-date[d] the purchases of plaintiffs Dose–Alderson and Callaghan).

PSB; rather, they allege[d] general problems with the televisions' functionality or quality").

*Second*, Plaintiffs fail to plead "any facts demonstrating that the number or substance of the consumer complaints, even if known by Honda, was sufficient to put Honda on notice that a defect was actually present." *Cadena*, 2018 WL 8130613, at *11. As courts have recognized, a defendant's "[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect." *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011). Instead, it "merely establish[es] the fact that some consumers were complaining." *Berenblat*, 2010 WL 1460297, at *9. This is particularly true here, where Plaintiffs allege Honda sells more than a million vehicles in the United States each year, CACAC ¶ 208, yet they identify just *thirty* pre-sale complaints, only *nine* of which reference a fuel pump. *See id.* ¶¶ 241–56, 259–64, 310–17. Plaintiffs fail to allege how thirty complaints of stalling or impaired acceleration over the course of *seven years*—when Honda had sold *millions* of vehicles—could have put Honda on notice of the specific fuel pump defect alleged here. *See, e.g.*, *Sonneveldt*, 2021 WL 62502, at *6 ("Plaintiffs have not alleged facts establishing that these [24] complaints were more than a 'blip on [Mazda's] complaints-and-repairs radar.'") (citation omitted). In any event, courts have determined plaintiffs could not do so even if given leave to amend. *See Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 6549931, at *13 (C.D. Cal. Aug. 21, 2017) (finding complaints did not plausibly establish automaker's knowledge of defect because each complaint "only establishes that this particular customer had issues with his or her vehicle, not that there was a widespread defect"); *Sloan*, 2017 WL 3283998, at *7 (finding eighty-one NHTSA complaints could not create a plausible inference of the automaker's knowledge absent allegations that eighty-one "was an unusually high number of complaints"); *McQueen*, 2014 WL 656619, at *4 n.7 (noting that thirty-two

43

rollaway reports were insufficient to identify a "'vehicle based safety defect trend'") (citation omitted).

*Third*, Plaintiffs fail to plausibly allege Honda even knew about twenty-four of the thirty pre-sale complaints quoted in the CACAC.  "Complaints on third-party websites"—such as NHTSA's—"do not, by themselves, commute knowledge to a manufacturer." *Resnick*, 2017 WL 6549931, at *13.  Only *six* of the pre-sale NHTSA complaints referenced in the CACAC indicate Honda was made aware of the issue.  CACAC ¶¶ 245–46, 254, 261, 314–15.  Plaintiffs do not allege any facts demonstrating Honda's knowledge of the twenty-four other complaints, some of which explicitly state "the manufacturer was not notified of the failure." *Id.* ¶ 262.  If eighty-one complaints are too few to confer knowledge of a defect, then surely *six* are inadequate.  *See Sloan*, 2007 WL 3283998, at *7 (holding eighty-one NHTSA complaints did not show automaker's knowledge of defect).

Nor does Plaintiffs' allegation that Honda monitors the websites of NHTSA and other regulatory agencies create a plausible inference of Honda's pre-sale knowledge of the specific defect alleged here.  *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) (dismissing CLRA claim for failure to adequately plead pre-sale knowledge despite allegation defendant "regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect . . . through these complaints").  Plaintiffs thus have not alleged facts from which Honda's pre-sale knowledge of the alleged defect can plausibly be inferred.  *See, e.g.*, *Cadena*, 2019 WL 3059931, at *12 ("[T]he SAC does not plead sufficient facts demonstrating that Honda knew of the existence of these complaints.").

> b. *Allegations regarding Honda's investigation leading to the 2019 recall do not create a plausible inference that Honda knew about the defect at issue here.*

Plaintiffs' second purported basis for Honda's pre-sale knowledge—that Honda "admitted to knowing of the Fuel Pump Defect in January 2016," CACAC ¶ 37—also misses the mark.  Plaintiffs allege Honda has been aware of the defect since it "'received the first report of an engine stall'" and opened the investigation that led to the 2019 recall.  *Id.*  But their factual allegations make clear the 2019 recall addressed a *different* problem: "electrical and mechanical resistance" appearing in vehicles with 3.5-liter V6 engines when sodium particulates adhered to the fuel pump in the presence of two conditions: (1) operation of the fuel pump in "10 V mode," and (2) fuel containing "greater than one part per million of sodium" (the "Sodium-Adhesion Issue").   CACAC ¶ 23, Ex. H, at 1, 6–7.  Accordingly, Honda limited the 2019 recall to vehicles with fuel pumps that operated in 10-volt mode and addressed the problem with a software update preventing fuel pumps from operating at 10 volts.  *See, e.g.*, *id.*, Ex. H, at 1, 7.  By contrast, the 2020 recall by Denso and the 2020 and 2021 recalls by Honda address an entirely different problem: low-density impellers can experience "surface cracking," which causes "excessive fuel absorption" and, ultimately, "impeller deformation" (the "Impeller-Absorption Issue").  CACAC ¶¶ 6, 13.

Plaintiffs make clear their claims are based on the Impeller-Absorption Issue, *not* the Sodium-Adhesion Issue.   They each allege their vehicles are defective because the impellers in their fuel pumps have absorbed fuel and become deformed.  *Id.* ¶¶ 70, 79, 88, 99, 110, 122, 134, 146, 156, 166, 178, 189; *see also, e.g.*, *id.* ¶ 221 ("[T]he subject Fuel Pumps contain an impeller that could deform due to excessive fuel absorption.").  Their expert agrees, allegedly finding the same "underlying cause: the impeller's lower density material is susceptible to fuel

absorption and deformation." *Id.* ¶ 226.  Plaintiffs do not allege their acceleration issues are caused by sodium build-up—the issue addressed by the 2019 recall.  Nor do they allege their fuel pumps operate in 10-volt mode.  In short, Plaintiffs do not plausibly allege their vehicles are defective because of the Sodium-Adhesion Issue. In fact, they allege Honda's discovery of the Sodium-Adhesion Issue was a misdiagnosis.  *Id.* ¶ 26.   Yet it was the Sodium-Adhesion Issue that Honda allegedly "admitted to knowing" about in January 2016.  *See id.* ¶¶ 23, 37; *id.* Ex. H, at 1, 6–7; *see also, e.g.*, *Grodzitsky*, 2013 WL 690822, at *7 (finding allegations Honda knew of earlier window defect did not plausibly establish Honda's pre-sale knowledge of defect in plaintiff's window where defects had different causes). While Honda eventually became aware of the Impeller-Absorption Issue that led to the 2020 and 2021 recalls, the CACAC contains no allegation from which it plausibly can be inferred Honda knew about *that* issue before Plaintiffs purchased their vehicles.

   c. *Vague and speculative allegations of warranty claims, complaints, testing, meetings, and monitoring do not suffice.*

   Finally, Plaintiffs vaguely allege Honda gained knowledge of the purported defect through unspecified warranty claims, repair records, engineering, testing, monitoring, meetings, and collaborations.  *See, e.g.*, CACAC ¶¶ 270, 272.  But "[c]ourts routinely reject generalized allegations about 'testing' and manufacturer 'analyses' made in support of finding knowledge of a defect."  *Raymo*, 475 F. Supp. 3d at 707–08 (collecting cases).  Here, the CACAC fails to provide even a modicum of factual support for any of these allegations.  It does not, for example, provide any specificity about the timing, quantity, or content of these purported sources of information.  Plaintiffs' allegations thus do not create a plausible inference Honda knew about the alleged defect before Plaintiffs purchased their

vehicles.  *See, e.g.*, *Wilson*, 668 F.3d at 1147 ("[T]he allegation that . . . the manufacturer[] had 'access to the aggregate information and data regarding the risk of overheating' [was] speculative and [did] not suggest how any tests or information could have alerted [the manufacturer] to the defect.") (citation omitted); *Mandani*, 2019 WL 652867, at *8 ("Plaintiffs' conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient.") (citation omitted); *Resnick*, 2017 WL 6549931, at *13 (finding complaint failed to sufficiently allege knowledge of defect where "Plaintiffs fail[ed] to allege the specifics surrounding the complaints . . . such as who made them" or "if these complaints were ever communicated to Hyundai"); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 949 (Ill. App. Ct. 2005) (rejecting allegation that "testing inevitably led to defendants' knowledge of the alleged defect [as] conclusory and [] not sufficient to impute that knowledge to defendants at the time of sale").

Indeed, if merely noting the obvious fact that an automaker engineers, tests, and conducts meetings about its vehicles—something all automakers do—were sufficient to plead pre-sale knowledge of a defect, then *every* automaker's successful attempt to identify and remedy a defect would give rise to a well-pled fraud claim.  This, of course, would provide automakers with scant incentive to identify and remedy defects.  Fortunately, it is not the law.

Because Plaintiffs have not alleged any facts to plausibly suggest Honda knew about the alleged defect before they bought their vehicles, they have failed to sufficiently allege any deceptive act by Honda.  *See, e.g.*, *Wilson*, 668 F.3d at 1148.  Their claims under state consumer protection statutes and common law fraud must therefore be dismissed.

### 3. Plaintiffs Oliver, Butler, Ariaudo, Kansky, and Hackman do not plead compliance with Alabama, California, Massachusetts, or Ohio's pre-filing requirements.

Five plaintiffs failed to comply with statutory notice provisions of their states' consumer protection laws. Plaintiffs Oliver and Butler were required to give notice under the Alabama Deceptive Trade Practices Act ("ADTPA") by serving "a written demand for relief" that "reasonably describ[es] the unfair or deceptive act or practice relied upon and the injury suffered" at "least 15 days prior to the filing of [the] action." Ala. Code § 8-19-10(e). Yet neither alleges he or she provided Honda with the requisite written demand before filing this action, which is fatal to their ADTPA claim. *See Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) (dismissing ADTPA claim under Rule 12(b)(6) where plaintiff failed to plead compliance with pre-suit demand requirement), *aff'd*, 885 F.2d 879 (11th Cir. 1989).

Plaintiff Ariaudo likewise failed to comply with the California Consumers Legal Remedies Act's ("CLRA") notice provision, which requires a prospective plaintiff to provide written notice at least thirty days before commencing an action for damages. Cal. Civ. Code § 1782(a) (West). Because Ariaudo failed to allege she provided such written notice here, the CLRA claim must be dismissed on this additional basis. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1318 (C.D. Cal. 2013); *Outboard Marine Corp. v. Superior Court*, 124 Cal. Rptr. 852, 859 (Cal. Ct. App. 1975) ("[C]lear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible . . . .").

Plaintiff Kansky also failed to comply with the stringent notice requirements of the Massachusetts Regulation of Business Practices for Consumers Protection Act ("MRBPCPA"). Under the express text of the statute, a prospective plaintiff must mail or deliver "a written demand for relief" to the prospective defendant "[a]t least thirty days prior to the filing of any [] action." Mass. Gen. Laws Ann.

ch. 93A, § 9(3) (West).  The pre-suit demand letter must identify the plaintiff and describe the allegedly unfair act, as well as the plaintiff's injury.  *Id.*  Because this prerequisite was not satisfied here, the MRBPCPA claim must be dismissed on this additional basis.  *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 217–18 (1st Cir. 2012) (describing demand letter requirement as "a prerequisite to suit" and "not merely a procedural nicety") (cleaned up) (citation omitted).

Finally, Plaintiff Hackman's claim under the Ohio Consumer Sales Practices Act ("OCSPA") also fails for lack of notice.  The OCSPA only permits class actions where the defendant "acted in the face of prior notice that its conduct was deceptive or unconscionable."  *Vuyancih v. Jones & Assocs. Law Grp., L.L.C.*, 95 N.E.3d 458, 460 (Ohio Ct. App. 2018).  Only two forms of notice will suffice: "(1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3)," *id.*, neither of which Hackman alleges he provided.  The OCSPA claim therefore must be dismissed.  *See, e.g.*, *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 648 (N.D. Ohio 2012) (dismissing OCSPA class claim due to failure to plead compliance with "statutory prior notice requirements").[32]

---

[32] While the CACAC purports to satisfy this requirement by citing eleven court decisions, CACAC ¶ 1171, none of the decisions provides adequate notice under the OCSPA.  For example, four of the decisions are "consent or default judgements [that] do not suffice as notice under R.C. 1345.09(B)."  *Vuyancih*, 95 N.E.3d at 462 (explaining that consent and default judgments "have no analysis of any kind that put a defendant on notice that its specific conduct was deceptive or unconscionable under the CSPA"); *see also* CACAC ¶ 1171(k) (consent judgment), ¶ 1171(l) (consent judgment), ¶ 1171(o) (consent judgment), ¶ 1171(q) (default judgment).  Likewise, four of the decisions have no connection to the automotive industry.  *See* CACAC ¶ 1171(m) (printer ink cartridges), ¶ 1171(n) (luxury boats), ¶ 1171(o) (mattresses), ¶ 1171(q) (HVAC).  As the "Ohio Supreme Court has held, 'Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA.'"  *Robins*, 838 F. Supp. 2d at 648 (quoting *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 36 (Ohio 2006)).

        **4.**    **Plaintiff Stein fails to adequately allege Honda had a duty to disclose the defect and fails to allege an ascertainable loss under the NJCFA.**

In addition to the numerous pleading deficiencies noted above, Plaintiff Stein's claim under the NJCFA fails for two additional reasons.

*First*, Stein fails to adequately allege Honda had a duty to disclose the fuel pump defect under New Jersey law. A consumer cannot prevail on an omission-based theory of liability where the defendant did not have a duty of disclosure. *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *9 (D.N.J. July 29, 2019), *reconsideration denied*, 2020 WL 1528038 (D.N.J. Mar. 31, 2020). But no duty to disclose exists under New Jersey law "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (citation omitted).

Neither condition is satisfied here. While the Complaint reproduces certain safety-related advertisements constituting non-actionable puffery, Stein does not "identify any specific ambiguous partial disclosures" obligating Honda to disclose the fuel pump defect. *Coba v. Ford Motor Co.*, 2013 WL 244687, at *12 (D.N.J. Jan. 22, 2013). Nor do any of Stein's allegations establish the existence of a special relationship between Stein and Honda. "New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers" within the context of omission-based fraud claims. *Id.*; *see also Schechter*, 2019 WL 3416902, at *9 (collecting cases). Stein has thus failed to plead the existence of a duty to disclose the defect, and his omission-based consumer fraud claims must be dismissed on this additional basis.

*Second*, Stein fails to allege he has suffered an ascertainable loss. To state a claim under the NJCFA, a plaintiff must plead facts showing she has incurred an ascertainable loss that is "quantifiable or measurable" and not "hypothetical or

illusory." *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013) (citation omitted); *see also Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (defining term "ascertainable loss" to mean "that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical"). Stein has not done so here, where he alleges only that he and the putative New Jersey class "would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them" and have "suffered diminished value of their vehicles." CACAC ¶ 962. Stein's conclusory allegations fail to show his alleged overpayment is readily quantifiable. Stein does not provide "any information with respect to the terms of his leased vehicle, including its price." *Schechter*, 2019 WL 3416902, at \*8. Nor does Stein "describe what a hypothetical lease for a vehicle with a defective [fuel pump] would be, in order for the Court to ascertain, or even reasonably estimate, the difference in value between Plaintiff's lease and the alleged lease which he would have executed." *Id*. To the extent Stein alleges his purported losses result from his vehicle's diminution in value, he does not explain why a diminution in the value of a vehicle he, as a lessee, does not own should be treated as his loss rather than a loss borne by the vehicle's owner. Indeed, this argument has been rejected by the New Jersey Supreme Court. *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 795–96 (N.J. 2005) ("At the end of the lease, the party who receives back the leased vehicle is the one that arguably receives a vehicle having some diminution in future value."). Because Stein's purported losses are speculative and not readily quantifiable, the NJCFA claim must be dismissed.

Additionally, Stein fails to plead an ascertainable loss because he does not allege the fuel pump defect manifested in his vehicle before the applicable warranty expired. The law is clear: "where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an

'ascertainable loss.'" *Nobile v. Ford Motor Co.*, 2011 WL 900119, at *6 (D.N.J. Mar. 14, 2011) (citation omitted). "A claim that a defect *may*, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA." *Alban*, 2010 WL 3636253, at *10 (citation omitted). Here, Stein not only fails to allege that a defect manifested in his vehicle during the warranty period; he fails to allege a defect has *ever* manifested in his vehicle. Accordingly, Stein does not meet the requirements for pleading an ascertainable loss. *See Glass*, 2011 WL 6887721, at *11 (holding that plaintiff failed to establish an ascertainable loss under the NJCFA where plaintiff failed to allege manifestation of defect during warranty period); *see also Nobile*, 2011 WL 900119, at *6 (same); *Noble*, 694 F. Supp. 2d at 337–39 (same); *Duffy v. Samsung Elecs. Am., Inc.*, 2007 WL 703197 (D.N.J. Mar. 2, 2007) (same).

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Honda requests this Court dismiss the Consolidated Amended Class Action Complaint with prejudice for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Dated:  June 15, 2021

 */s/ C. Meade Hartfield*
C. Meade Hartfield
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
E-mail: mhartfield@bradley.com

William A. Delgado SBN 222666
(Admitted *Pro Hac Vice*)
Megan O'Neill SBN 220147
(Admitted *Pro Hac Vice*)
Justin Goodwin SBN 278721
(Admitted *Pro Hac Vice*)
Lauren Hudecki SBN 276938
(Admitted *Pro Hac Vice*)
DTO LAW
601 South Figueroa Street, Suite 2130
Los Angeles, CA  90017
Tel.    (213) 335-6999
Fax    (213) 335-7802
E-mail: wdelgado@dtolaw.com
*Attorneys for Defendants Honda Motor*
*Company Limited and American Honda*
*Motor Co., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2021, I served a copy of the foregoing via the Court's electronic filing system, which will send notification of such filing to the following:

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Demet Basar (pro hac vice)
Lydia Keaney Reynolds (pro hac vice)
J. Mitch Williams
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Email: dee.miles@beasleyallen.com
          clay.barnett@beasleyallen.com
          mitch.williams@beasleyallen.com
          demet.basar @beasleyallen.com
          Lydia.Reynolds@BeasleyAllen.com
          Mitch.williams@Beasleyallen.com

Adam J. Levitt (pro hac vice)
John E. Tangren*
Daniel R. Ferri*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email:  alevitt@dicellolevitt.com
          jtangren@dicellolevitt.com
          dferri@dicellolevitt.com

*Counsel for Plaintiffs and*
*Interim Class Counsel*

Timothy G. Blood (pro hac vice)

**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, California 92101
Telephone: 619-338-1100
tblood@bholaw.com

Christopher A. Seeger *
Christopher L. Ayers *
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com
cayers@seegerweiss.com

Scott A. George *
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: 215-564-2300
sgeorge@seegerweiss.com

James E. Cecchi*
Lindsey H. Taylor*
Caroline F. Bartlett*
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRIDY & ANGELO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: 973-994-1700
jcecchi@carellabyrne.com

*Additional Counsel for Plaintiffs*

*pro hac vice forthcoming

_/s/ C. Meade Hartfield_____
C. Meade Hartfield

Bradley Arant Boult Cummings LLP