FILED

2023 Sep-27  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TUCKER OLIVER, SARAH ARIAUDO, MICHELLE WELCHER, LASHONDA WALTERS-KAYODE, SCOTT LUCAS, KENNETH KANSKY, DENESE COSPER, DONALD HACKMAN, JIM CUMMINGS, DAVID DINKEVICH, RICHARD STEIN, and CAROL BUTLER, individually and on behalf of all others similarly situated, | Case No.: 5:20-cv-00666-MHH |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. | |
| AMERICAN HONDA MOTOR CO. INC. and DENSO INTERNATIONAL AMERICA, INC., | |
| Defendants. | |

# AMERICAN HONDA MOTOR CO., INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 1

A.    The Court Can and Should Consider Honda's Motion in Full .................... 1

B.    Lucas Cannot Resuscitate His Express Warranty Claim (Count 34). .......... 4

C.    Walters-Kayode's LPLA Claims Fail (Counts 26, 27, 29, 30, and 31). ...... 6

D.    Plaintiffs Still Fail to Plausibly Allege Consumer Fraud Claims ................. 8

    1.    Plaintiffs' omission-based claims fail. ................................................. 8

    2.    Kansky and Hackman cannot resuscitate their time-barred
        claims (Counts 38, 43, 63, and 68) .................................................... 16

    3.    Kansky and Hackman's attempts to side-step pre-suit notice
        requirements also fail (Counts 38 and 65). ...................................... 17

E.    The Multistate Class Claims Still Fail (Counts 2 and 3). ......................... 19

CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albers v. Comm'rs of Jefferson Cty.*,
    771 F.3d 697 (10th Cir. 2014) .......................................................................2, 3

*Albright v. Sherwin-Williams Co.*,
    2019 WL 5307068 (N.D. Ohio Jan. 29, 2019) ............................................18, 19

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
    2021 WL 5937742 (D.N.J. Dec. 16, 2021).........................................................13

*In re Apple iPhone Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017) ..........................................................................2, 3

*In re Apple iPhone Antitrust Litig.*,
    846 F.3d at 318–19 ..............................................................................................4

*Arcand v. Brother Int'l Corp.*,
    673 F. Supp. 2d 282 (D.N.J. 2009).....................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................4, 5, 11

*Azumi LLC v. Lott & Fischer, PL*,
    2022 WL 17977188 (S.D. Fla. Dec. 27, 2022).....................................................2

*Baney Corp. v. Agilysis NV, LLC*,
    773 F. Supp. 2d 593 (D. Md. 2011).....................................................................5

*Bean v. Bank of N.Y. Mellon*,
    2012 WL 4103913 (D. Mass. Sept. 18, 2012)....................................................17

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6

*Borror v. Marine Max of Ohio*,
    OPIF #10002388 ................................................................................................19

*Brady v. Medtronic, Inc.*,
  2014 WL 1377830 (S.D. Fla. Apr. 8, 2014) ........................................................9

*Brooks v. Warden*,
  706 F. App'x 965 (11th Cir. 2017) ......................................................................2

*Brown v. Spears*,
  OPIF #10000403 ...............................................................................................19

*Catalano v. BMW of N. Am., LLC*,
  2016 WL 3406125 (S.D.N.Y. June 16, 2016) ...........................................12, 13

*Catalano v. BMW of North America, LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ..............................................................12

*Celino v. Biotronik, Inc.*,
  536 F. Supp. 3d 89 (E.D. La. 2021) ....................................................................6

*Champion v. Panel Era Mfg. Co.*,
  410 So. 2d 1230 (La. Ct. App.) ...........................................................................8

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) ..............................................................5

*Cohen v. Subaru of Am., Inc.*,
  2022 WL 714795 (D.N.J. Mar. 10, 2022) .........................................................13

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021) .................................................................12

*Cranford v. Joseph Airport Honda, Inc.*,
  OPIF #10001586 ...............................................................................................19

*D'Agostino v. Maldonado*,
  78 A.3d 527 (N.J. 2013) ....................................................................................14

*De Atley v. Victoria's Secret Catalogue, LLC*,
  876 So.2d 112 (La. Ct. App. 2004) .....................................................................7

*Degen v. United States*,
  517 U.S. 820 (1996) ..........................................................................................20

iii

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (2020) ................................................................................11

*Ennenga v. Starns*,
   677 F.3d 766 (7th Cir. 2012) .............................................................................2

*Fernau v. Enchante Beauty Prods., Inc.*,
   847 F. App'x 612 (11th Cir. 2021) .............................................................2, 3, 4

*In re Ford Fusion*,
   2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)....................................................12

*Ford v. Lehman Cap.*,
   2012 WL 1343977 (D. Mass. Apr. 17, 2012)....................................................16

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*,
   360 Md. 76 (2000) .............................................................................................10

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ..................................................11

*Gascho v. Global Fitness*,
   863 F. Supp. 2d 677 (S.D. Ohio 2012) ............................................................18

*Glass v. BMW of N. Am., LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011)........................................................13

*Harman v. Taurus Int'l Mfg., Inc.*,
   586 F. Supp. 3d 1155 (M.D. Ala. 2022)............................................................15

*State ex rel. Jim Petro v. Craftmatic Org., Inc.*,
   OPIF #10002347................................................................................................19

*Judge v. Blackfin Yacht Corp.*,
   815 A.2d 537 (N.J. Super. Ct. App. Div. 2003) ................................................13

*Keiber v. Spicer Const. Co.*,
   1999 WL 335140 (Ohio Ct. App. May 28, 1999) .............................................17

*Kuhn v. Thompson*,
   304 F. Supp. 2d 1313 (M.D. Ala. 2004)..............................................................5

iv

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ...............................................................................11

*Leyse v. Bank of Am. Nat. Ass'n*,
804 F.3d 316 (3d Cir. 2015) ..................................................................................2

*Liberty Mutual Fire Ins. Co. v. Bernhard MCC, LLC*,
2019 WL 1558078 (E.D. La. Apr. 10, 2019)........................................................6

*Lincoln v. Ford Motor Co.*,
2020 WL 5820985 (D. Md. Sept. 29, 2020)........................................................5

*Mason v. Mercedes Benz USA, LLC*,
OPIF #10002382 ................................................................................................19

*Med. Mut. of Ohio v. Amalia Enters. Inc.*,
548 F.3d 383 (6th Cir. 2008) .............................................................................16

*Monteferrante v. Williams-Sonoma, Inc.*,
241 F. Supp. 3d 264 (D. Mass. 2017)................................................................17

*State ex rel. Montgomery v. Bridgestone/Firestone, Inc.*,
OPIF #10002025 ................................................................................................19

*State ex rel. Montgomery v. Ford Motor Co.*,
OPIF #10002123 ....................................................................................15, 16, 19

*Patterson v. Ga. Pac., LLC*,
38 F.4th 1336 (11th Cir. 2022) ..........................................................................20

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012)........................................................18, 19

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem.*,
917 F.3d 1249 (11th Cir. 2019) ............................................................................9

*Rasof v. Lyubovny*,
2022 WL 18464860 (S.D. Fla. Nov. 1, 2022) ......................................................8

*Richards v. Arteva Specialties S.A.R.L.*,
850 N.E.2d 1068 (Mass. App. Ct. 2006) ...........................................................17

249748.13

*Roelle v. Orkin Exterminating Co.*,
  2000 WL 664865 (Ohio Ct. App. Nov. 7, 2000)................................................17

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liability Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016).....................................................18

*Ruth v. Unifund CCR Partners*,
  2009 WL 585847 (N.D. Ohio Mar. 6, 2009).......................................................17

*Scattaglia v. Mercedes-Benz USA, LLC*,
  2021 WL 5918475 (D.N.J. Dec. 15, 2021)........................................................13

*Schechter v. Hyundai Motor Am.*,
  2020 WL 1528038 (D.N.J. Mar. 31, 2020) .......................................................14

*Siriano v. Goodman Mfg. Co.*,
  2015 WL 12748033 (S.D. Ohio Aug. 18, 2015) .................................................16

*Skrtich v. Thornton*,
  280 F.3d 1295 (11th Cir. 2002) ...............................................................2

*In re Subaru Battery Drain Prods. Liab. Litig.*,
  2021 WL 1207791 (D.N.J. Mar. 31, 2021) .......................................................13

*TruSouth Oil, LLC v. Burlington Ins. Co.*,
  2012 WL 4483465 (W.D. La. Sep. 28, 2012) ......................................................7

*United Jersey Bank v. Kensey*,
  306 N.J. Super. 540, 704 A.2d 38 (App. Div. 1997).........................................10

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017)..........................................................11

*Walls v. Harry Williams dba Butch's Auto Sales*,
  OPIF #10001524.................................................................................19

*Williams v. Student Loan Guarantee Found.*,
  2015 WL 241428 (N.D. Ala. Jan. 20, 2015) .....................................................2

*In re Zantac (Ranitidine) Products Liability Litigation*,
  2022 WL 16729170 (11th Cir. Nov. 1, 2022) ...............................................19, 20

vi

**Statutes**

42 U.S.C. § 2000e ..................................................................................................17

La. Rev. Stat. § 9:2800.53 .......................................................................................7

Mass. Gen. Laws ch. 93A § 2 ................................................................................18

Ohio Rev. Code § 1345 .....................................................................................16, 17

**Other Authorities**

Fed. R. Civ. P. 1 ......................................................................................................3

Fed. R. Civ. P. 8 ......................................................................................................6

Fed. R. Civ. P. 9 ....................................................................................................11

Fed. R. Civ. P. 9(b) ...............................................................................................11

Fed. R. Civ. P. 12 .............................................................................................1, 19

Fed. R. Civ. P. 12(b)(2) ...........................................................................................2

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 2, 3, 4

Fed. R. Civ. P. 12(g)(2) .......................................................................................1, 4

Fed. R. Civ. P. 12(h)(1) ...........................................................................................2

Fed. R. Civ. P. 12(h)(2) ...........................................................................................3

249748.13

# INTRODUCTION

Lacking strong arguments on the merits, Plaintiffs ask the Court to disregard Honda's motion altogether. But they provide no valid basis for doing so. For example, the Eleventh Circuit holds that a district court can, and often should, consider new Rule 12(b)(6) arguments in a successive, pre-answer motion. And there is good reason for doing so here, where Honda could not possibly have asserted every applicable argument in its first Rule 12 motion, which responded to 78 claims and 342 pages of allegations. For the reasons set forth in Honda's motion and below, the Court should dismiss with prejudice Counts 2, 3, 11, 25, 26, 29–31, 34, 37, 38, 43, 44, 49, 56, 57, 62, 63, and 68.

# ARGUMENT

## A.    The Court Can and Should Consider Honda's Motion in Full.

As a threshold matter, Rule 12(g)(2) addresses newly raised "*defenses*," not arguments. In its first Rule 12 motion, Honda *did* assert the defense of failure to state a claim with respect to every cause of action implicated by Plaintiffs' waiver argument. And while Plaintiffs focus on Honda's duty-related arguments (Doc. 117, pp. 15–16), Honda *did* raise duty-based arguments with respect to those claims in its first Rule 12 motion: Honda argued that it was not required to disclose the alleged defect because it had not yet been aware of a widespread defect when Plaintiffs bought their vehicles. (Doc. 114, pp. 20–24). Honda could not have

1

raised every applicable argument in its first motion, when it faced the logistical challenge of addressing 78 causes of action and 342 pages of allegations.

In any event, the law is clear that a defendant does not forfeit the defense of failure to state a claim by not raising it in an initial motion to dismiss: "Rule 12(h)(1) expressly exempts Rule 12(b)(6) motions from its waiver rule." *Albers v. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 701–04 (10th Cir. 2014). Indeed, none of Plaintiffs' cases address the defense of failure to state a claim. *See, e.g.*, *Williams v. Student Loan Guarantee Found.*, 2015 WL 241428, at *1 (N.D. Ala. Jan. 20, 2015) (addressing Rule 12(b)(2) defense for lack of personal jurisdiction).[1]

Moreover, the Eleventh Circuit—and every other circuit to consider the issue—has allowed defendants to assert a "failure to state a claim" defense for the first time in a second Rule 12(b)(6) motion. *See Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 620 (11th Cir. 2021).[2] In *Fernau*, the Eleventh Circuit adopted the same rule applied by the Third, Ninth, and Tenth Circuits: a court may consider such a defense in a second pre-answer motion if the court accepts as true

---

[1] *See also Brooks v. Warden*, 706 F. App'x 965, 968–70 (11th Cir. 2017) (addressing forfeiture of jurisdictional exhaustion defense—an affirmative defense for which plaintiff had no pleading burden); *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (addressing forfeiture of affirmative defense of qualified immunity); *Azumi LLC v. Lott & Fischer, PL*, 2022 WL 17977188, at *4 (S.D. Fla. Dec. 27, 2022) (finding defendant had *not* forfeited statute of limitations defense).

[2] *See also Ennenga v. Starns,* 677 F.3d 766, 772–73 (7th Cir. 2012); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321–22 (3d Cir. 2015); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 701–04 (10th Cir. 2014); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

2

the allegations in the complaint when considering the motion. *Fernau*, 847 F. App'x at 620. The Eleventh Circuit reasoned as follows:

> So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits.

*Fernau*, 847 F. App'x at 620 (quoting *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321–22 (3d Cir. 2015)); *see also Albers*, 771 F.3d at 703–04 (applying same rule); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (applying same rule), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

The Eleventh Circuit rule makes perfect sense when considered in conjunction with Rule 1, which provides that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As the Ninth Circuit recently explained, denying a successive Rule 12(b)(6) motion and "relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1":

> Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. If the Court were to evade the merits of Defendants' ... defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert [the same defenses] in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions

3

in several months. That is not the intended effect of Rule 12(g), and the result would be in contradiction of Rule 1's mandate[.]

*In re Apple iPhone Antitrust Litig.*, 846 F.3d at 318–19 (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011)). That is precisely what would happen here if the Court were to deny Honda's motion under Rule 12(g)(2). Because the Court will accept Plaintiffs' allegations as true in deciding Honda's motion, the Court can and should consider all Rule 12(b)(6) defenses asserted therein. *Fernau*, 847 F. App'x at 620.[3]

## B.    Lucas Cannot Resuscitate His Express Warranty Claim (Count 34).

Lucas does not dispute that he has asserted just one new allegation in support of his previously dismissed express warranty claim: his vehicle "continued to exhibit symptoms of the Fuel Pump Defect after the Recall Repair was performed." (Doc. 108, ¶ 123). But a complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)) (cleaned up).

---

[3] Plaintiffs also ask the Court to disregard Honda's motion because of its formatting. Honda's memorandum of law is not 1.5 spaced, as Plaintiffs contend. Rather, Honda used 24-point spacing, a form of double spacing that is customary in many district courts that require double-spaced briefs. Honda interpreted the Court's order in good faith to permit this form of spacing, which Honda has used in prior briefing in this case without complaint from Plaintiffs or correction by the Court. To the extent Honda's interpretation was incorrect, Honda will readily conform all future filings. But Honda respectfully submits that striking Honda's motion, as Plaintiffs request, is not warranted. Indeed, while Plaintiffs fault Honda for misinterpreting the Court's line-spacing requirements, Plaintiffs themselves have failed to comply with the Court's formatting rules, including the line-spacing requirements for footnotes. (*See, e.g.*, Doc. 117, p. 2 n.1, p. 4 n.3, p. 12 n.5–6, p. 17 n.10, p. 35, n.21, p. 40, n. 26 (failing to double space footnotes that do not exceed three lines in violation of the Court's Initial Order (Doc. 2, p. 15)).

Lucas's vague and conclusory reference to "continued symptoms" is not a "well-pleaded factual allegation" that merits an assumption of truth. *See id.* at 679. And even if it were, Lucas's claim would still fail because Lucas does not allege that Honda ever ***refused*** to repair or replace a defective part during the warranty period. (Doc. 114, p. 11–13). Unable to rebut this point, Plaintiffs' opposition resorts to misconstruing the record and relevant caselaw.

The TAC does ***not***, as Plaintiffs contend, allege "Honda *admitted* that it cannot repair the Defect[.]" (Doc. 117, p. 9). "It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004). And notwithstanding Lucas's characterization to the contrary, "a warranty fails of its essential purpose ***only after the vehicle has been presented for repair several times***." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1118 (C.D. Cal. 2021) (emphasis added). Even Lucas's own case, *Lincoln v. Ford Motor Co.*, 2020 WL 5820985 (D. Md. Sept. 29, 2020), emphasized that the plaintiff had given Ford "multiple opportunities" to repair the defect, including at least *five* occasions. *Id.* at *2, *8.[4] Lucas's allegations fall far short of those in *Lincoln*.

---

[4] *Baney Corp. v. Agilysis NV, LLC*, 773 F. Supp. 2d 593 (D. Md. 2011), is unhelpful. That case involved an express warranty to make a "good-faith effort" to fix errors. *Id.* at 604. Lucas does not allege that Honda failed to make a good-faith effort to repair his vehicle.

**C.    Walters-Kayode's LPLA Claims Fail (Counts 26, 27, 29, 30, and 31).**

Walters-Kayode does not challenge the dismissal of her claims for violation of LUTPA (Count 26), fraudulent omission (Count 29), or negligence (Count 30), which are all barred by the LPLA. Her attempts to salvage her express warranty and "unreasonably dangerous product" claims under the LPLA fall short.

Walters-Kayode does not dispute that she must allege "how [Honda's] express warranty induced [her] to use the product." *Liberty Mutual Fire Ins. Co. v. Bernhard MCC, LLC*, 2019 WL 1558078, at *3 (E.D. La. Apr. 10, 2019) (emphasis added). Moreover, it is well-established that "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Twombly*, 550 U.S. at 555. Yet Walters-Kayode simply doubles down on her conclusory allegations that "Honda's express warranty induced Plaintiff to use the Class Vehicles" and "Honda's written express warranties formed the basis of the bargain[.]" (Doc. 117, p. 13 (quoting Doc. 108, ¶¶ 581, 584)).[5] These allegations cannot survive dismissal. *See Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 110 (E.D. La. 2021) (dismissing claim where alleged acts of reliance said "nothing about what [plaintiffs] would have done if no warranty was offered").

Even if Walters-Kayode plausibly pleads reliance, she does not plead that

---

[5] Bizarrely, Walters-Kayode also notes that "Honda provides these warranties to buyers and lessees *after* the purchase/lease of the Class Vehicles is completed[.]" (Doc. 117, p. 13 (quoting Doc. 108, ¶ 377 (emphasis added))). Plainly, something not provided until *after* the purchase cannot have induced the purchase.

Honda breached its express warranty. Plaintiffs' opposition ignores the nature of the express warranty at issue. Honda did not expressly warrant a defect-free vehicle. Rather, "Honda expressly warranted that it would repair or replace the defective parts free of charge if the defects became apparent during the warranty period[.]" (Doc. 108, ¶ 580). How could Honda have breached this warranty if "Walters-Kayode did not report [her] experience to her Honda dealer" and never requested a repair? (Doc. 108, ¶ 111). In other words, contrary to Plaintiffs' insistence, the problem with Walters-Kayode's claim is not her failure to allege some freestanding element of "opportunity to cure," (Doc. 117, p.11), but rather her failure to plausibly allege that Honda breached the warranty in the first place.

Finally, the "unreasonably dangerous product" claim under the LPLA fails because "economic loss claims by buyers fall under redhibition, and personal injury claims fall under the LPLA." *TruSouth Oil, LLC v. Burlington Ins. Co.*, 2012 WL 4483465, at *5 (W.D. La. Sep. 28, 2012). The LPLA does not allow a claim for "economic loss arising from a deficiency in or loss of use of the product" unless the form of damages sought are not recoverable under Louisiana's redhibition statute. La. Rev. Stat. § 9:2800.53.[6] Walters-Kayode does not, and cannot, dispute that she seeks economic losses recoverable under redhibition. That

---

[6] *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So.2d 112 (La. Ct. App. 2004), is not to the contrary. There, the plaintiff alleged both economic **and** personal injuries. *See id.* at 115.

should be the end of the inquiry; her LPLA is barred.[7]

## D.    Plaintiffs Still Fail to Plausibly Allege Consumer Fraud Claims.

Honda argued in its motion that Plaintiffs do not allege a single affirmative misrepresentation by Honda. (Doc. 114, pp. 18–19). Plaintiffs do not argue otherwise in their opposition and thus concede the point. *See Rasof v. Lyubovny*, 2022 WL 18464860, at *2 (S.D. Fla. Nov. 1, 2022) ("Having failed to address any of these issues in his opposition, Plaintiff has conceded [the issue].").

### 1.    Plaintiffs' omission-based claims fail.

#### a.    Kansky, Cosper, and Hackman do not plausibly allege pre-sale knowledge (Counts 38, 43, 57, 62, 63, and 68).

Plaintiffs simply double down on the arguments this Court has already rejected concerning Honda's knowledge (or lack thereof). For instance, Plaintiffs point to a handful of complaints submitted to the NHTSA or Honda (Doc. 117, p. 25), yet the Court already determined that such complaints do not plausibly establish knowledge (Doc. 96, p. 54). Likewise, the Court cannot infer knowledge from the fact that "Honda received the ***first*** report of an engine stall" in January 2016. (Doc. 108, ¶ 37 (emphasis added)). If a handful of complaints cannot

---

[7] Nonetheless, Walters-Kayode now clarifies that her LPLA claim is pled in the alternative to redhibition. (Doc. 117, p. 13-14). Even so, Plaintiffs may not ultimately seek a double recovery for economic damages resulting from the alleged fuel pump defect. *See Champion v. Panel Era Mfg. Co.*, 410 So. 2d 1230, 1240-41 (La. Ct. App.), *writ denied*, 414 So. 2d 389 (La. 1982) (explaining the plaintiff is not entitled to a "double recovery" under alternative theories of compensation).

establish knowledge, plainly the first complaint cannot.[8]

Plaintiffs also repeat their argument that Honda must have known about the issue given ***Denso***'*s* 2016 patent application simply because the two companies worked "closely together." (Doc. 117, p. 26). The Court cannot plausibly impute Denso's knowledge to Honda, an arms-length business partner, based on such barebones conclusory allegations and without any factual allegations suggesting Denso actually shared information concerning the alleged defect in 2016 or at any other time. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem.*, 917 F.3d 1249, 1270 (11th Cir. 2019) (affirming dismissal where "the complaints make no factual allegations that the [defendants] … exchanged [the] information").

Finally, Plaintiffs' *conclusory* assertions that Honda must have learned of the defect through pre-release testing fail to acknowledge any of the relevant authority cited in Defendants' motions. (*Compare* Doc. 114, pp. 26-27, *with* Doc. 117, p. 25). "Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Brady v. Medtronic, Inc.*, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014). Tellingly, Plaintiffs cite ***no*** authority supposedly supporting their position. (Doc. 96, p. 54).

---

[8] From the first consumer complaint in 2016, Plaintiffs conclude that "Honda knew of the Fuel Pump Defect in January 2016." (Doc. 108, ¶ 269). This is plainly a legal conclusion masquerading as a factual allegation. Again, the Court already determined that a handful of complaints does not show knowledge. (Doc. 96, p. 54).

### b. Plaintiffs do not plausibly allege a duty to disclose (Counts 11, 25, 29, 37, 43, 49, 62, and 68).

Plaintiffs repeat a series of errors in arguing that Honda had a duty of disclosure. First, Plaintiffs misconstrue certain state requirements. They conflate the concept of active concealment, which requires an *affirmative* act, with the mere absence of disclosure. *See, e.g.*, *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 100 (2000). And this Court has already determined that generalized statements about safety and reliability are not "partial disclosures"; they are "puffery and cannot give rise to a duty to disclose." (Doc. 96, p. 69). Second, Plaintiffs often apply only part of a state's requirements, glossing over the part they cannot satisfy. For example, New Jersey law does not provide that a duty automatically arises when a party to a transaction knows its counterpart is entering the transaction under a mistake—there also must be an expectation of disclosure based on the parties' relationship, which arises only when the lack of disclosure is "so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling." *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554, 704 A.2d 38, 45 (App. Div. 1997) (quoting *Strawn v. Canuso*, 140 N.J. 43, 60–61 (1995)). Likewise, North Carolina's exclusive knowledge requirement is satisfied only when the issue arises in the context of a "negotiation," which Plaintiffs do not allege here. (Doc. 96, p. 73 (quoting *Packrite, LLC v. Graphic Packaging Int'l, LLC*, 2020 WL 7060395, at *3 (M.D.N.C. 2020)).

Finally, Plaintiffs cite out-of-state district court decisions for purported state-law requirements that have not been articulated by the relevant state courts. *See, e.g.*, *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017) (applying "safety" rule that does not exist under Illinois law). Plaintiffs have failed to plead a duty of disclosure for the reasons set forth in Honda's motion.

### c. Plaintiffs do not plausibly plead intent (Count 56).

The fact that intent "may be alleged generally" under Rule 9 is not a free pass for Plaintiffs' failure to *plausibly* allege it. *Iqbal*, 556 U.S. at 686–87. Courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Indeed, Plaintiffs themselves concede they "must allege facts that give rise to a strong inference of fraudulent intent." *Id.*

Courts have routinely found that "a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 354 (2020) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013). Yet Plaintiffs' opposition doubles down on such insufficient allegations. (Doc. 117, p. 29 ("Honda

249748.13

'[s]acrific[ed] consumer safety for profits' and 'chose to enrich [itself] by using false and misleading marketing to sell the Fuel Pumps and Class Vehicles as safe and durable at inflated prices.'" (quoting Doc. 108, ¶ 281))).

Plaintiffs' reliance on *In re Ford Fusion*, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015), is misplaced. There, the plaintiffs "narrowly" survived dismissal by showing a specific "motive for committing fraud and a clear opportunity for doing so, namely allegations that Ford was lagging in the hybrid market and sought to improve its positioning by advertising improved fuel economy[.]" *Id.* at *35 (internal quotations omitted). Thus, the plaintiffs in *Ford Fusion* "identif[ied] a *specific* circumstance that gave rise to an inference of fraudulent intent," whereas Plaintiffs here "only point to [Honda's] generalized profit motive to boost sales." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (distinguishing *Ford Fusion* on similar grounds).

Furthermore, Plaintiffs' attempts to distinguish *Catalano v. BMW of North America, LLC*, 167 F. Supp. 3d 540 (S.D.N.Y. 2016), are unavailing. First, *Catalano* applied the correct standard for intent, consistent with Second Circuit authority (i.e., "facts establishing a strong inference of defendants' fraudulent intent"). *Id.* at 560. Second, the amended allegations that later survived dismissal were not "like those pled here" (Doc. 117, p. 30), but rather were far more detailed, *see Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125, at *3–4 (S.D.N.Y. June

16, 2016) ("*Catalano II*"). For example, the plaintiffs in *Catalano II* alleged that the defendant had purposefully concealed information from NHTSA and blamed customers for damages the defendant knew were caused by a purportedly faulty design. *See id.* at *3. By contrast, Honda here is actively ***cooperating*** with NHTSA in managing a recall. (Doc. 108, ¶¶ 14–16.) And Plaintiffs do not allege Honda has attempted to shift the blame onto customers.[9]

### d. Stein's claim under the New Jersey CFA (Count 44) fails.

Stein concedes he does not allege anything new in support of his claim under the NJCFA, which this Court already dismissed. Instead, Stein argues that a duty to disclose is not required for an omission-based claim. But the weight of authority holds otherwise: "[i]mplicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009).[10] Here,

---

[9] Finally, accepting Plaintiffs' argument that the "severe recklessness" standard only applies to securities actions, that is all the more reason to grant Honda's motion. Plaintiffs do not allege that some lesser standard applies; they simply argue that severe recklessness is inapposite. For these reasons discussed above and in Honda's motion, Plaintiffs have failed to adequately plead intent.

[10] *See Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at *24 (D.N.J. Mar. 10, 2022) ("New Jersey law requires a duty to disclose for omission-based claims under the NJCFA."); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *23 (D.N.J. Dec. 16, 2021) (explaining "[t]here must also be a duty to disclose" in conjunction with omission-based NJCFA claim); *Scattaglia v. Mercedes-Benz USA, LLC*, 2021 WL 5918475, at *8 (D.N.J. Dec. 15, 2021) (holding complaint "fails to state [defendant] had the requisite . . . duty to disclose necessary to state an NJCFA claim"); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *25 (D.N.J. Mar. 31, 2021) (dismissing NJCFA claim for failure to allege duty to disclose); *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *9-10 (D.N.J. Dec. 29, 2011) (dismissing NJCFA claim because "[defendant] did not have a duty to disclose the alleged defect[]"); *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 543 (N.J. Super. Ct. App.

Stein does not allege any duty to disclose. (Doc. 96, p. 77).

Stein also contends he alleges ascertainable loss. Not so. As this Court already explained, Plaintiffs' bare-bones allegations that they "suffered diminished value of their vehicles" and "would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them" are not ascertainable losses under the NJCFA. (Doc. 96, p. 77–79). Stein does not identify anything "quantifiable or measurable." *D'Agostino v. Maldonado,* 78 A.3d 527, 537 (N.J. 2013). Furthermore, Stein leases his vehicle (Doc. 108, ¶ 143). "A loss-of-value theory cannot involve a leased vehicle because such a plaintiff is unable to advance an argument that [he or] she might be able to demonstrate loss in future resale value due to alleged, potentially defective replacement parts[.]" (Doc. 96, p. 79) (internal quotations and citations omitted). *Schechter v. Hyundai Motor Am.*, 2020 WL 1528038 (D.N.J. Mar. 31, 2020), is not to the contrary. The plaintiff there pled specific facts identifying "the prices of other, less expensive [comparable vehicles] that he could have instead leased," such that "[t]he difference between [the] figures, although not enumerated, suffice[d] to allege an ascertainable loss." *Id.* at *13. Stein does nothing of the sort here.

e.    **Butler and Oliver's Alabama fraudulent omission claim is barred by the economic loss rule and their failure to allege a plausible injury (Count 11).**

---

Div. 2003) (entering judgment for defendant on NJCFA claim because evidence did not support duty to disclose).

14

Plaintiffs mischaracterize the Court's decision regarding the application of Alabama's economic loss rule to Count 11. The Court explicitly held it was not deciding the issue of whether Alabama law bars recovery of purely economic losses in fraud claims. (Doc. 96, p. 63).[11] The "clear precedent from Alabama appellate courts [is] that the economic-loss rule prevents tort recovery if there is no damage to property other than the product itself." *Harman v. Taurus Int'l Mfg., Inc.*, 586 F. Supp. 3d 1155, 1165–66 (M.D. Ala. 2022). Accordingly, the Court should dismiss Plaintiffs' fraudulent omission claim.

Furthermore, Plaintiffs' new allegation that an unmanifested defect has "stigmatized" their vehicles and lowered the resale value (Doc. 108, ¶¶ 72, 81), does not state a plausible injury. Butler and Oliver have not alleged they experienced any symptoms of the alleged defect. (*See* Doc. 108, ¶¶ 66–83). And "courts have generally concluded that claims based upon allegations of inherent product 'defects' that have not caused any tangible injury are not viable[.]" *Ford Motor Co.*, 726 So. 2d at 629. The court in *Ford Motor Co.* held that plaintiffs failed to adequately allege "injury" to support a claim of fraudulent suppression because they "[could] point to no ***specific*** adverse economic consequences that

---

[11] The Court also noted that Honda did not raise the economic loss doctrine as a basis for dismissal of Count 11 and implied that, if Plaintiffs amend their complaint, they should assess the viability of Count 11 against Honda. (Doc. 96, p. 56 n.16).

15

have been caused by the alleged defect." *Id.* at 629 (emphasis added). The reasoning of *Ford Motor Co.* thus squarely supports dismissal here.

### 2. Kansky and Hackman cannot resuscitate their time-barred claims (Counts 38, 43, 63, and 68).

Kansky and Hackman do not dispute that they filed their claims outside the limitations periods, and their tolling arguments lack any basis in law or fact. Their own allegations defeat any discovery rule exception. Kansky and Hackman allege that they first experienced symptoms of the alleged defect in December 2015 and April 2016, respectively. (Doc. 108, ¶¶ 135, 179). These events "were reasonably likely to put [them] on notice that someone may have caused [their] injury." *Ford v. Lehman Cap.*, 2012 WL 1343977, at *7 (D. Mass. Apr. 17, 2012).[12] Even under the longest applicable limitations period of four years, the statute of limitations expired in April 2020, the month before they filed their original complaint.

The continuing violation doctrine is also unavailing. A "continuing violation is occasioned by continual unlawful acts." *Med. Mut. of Ohio v. Amalia Enters. Inc.*, 548 F.3d 383, 394 (6th Cir. 2008) (citation omitted). But Plaintiffs do not allege continuing unlawful acts by Honda after Kansky and Hackman bought their vehicles. They simply point to Honda's alleged failure to notify consumers of the

---

[12] In any event, Plaintiffs do not deny that the discovery rule does not apply to an action for damages under the Ohio Consumer Sales Practices Act ("OCSPA"). *See Siriano v. Goodman Mfg. Co.*, 2015 WL 12748033, at *16 (S.D. Ohio Aug. 18, 2015) (citing statutory authority and collecting cases). Accordingly, Count 63 must be dismissed.

16

alleged defect, without citing any authority that Honda's continued failure to disclose was itself unlawful.[13] (Doc. 117, p. 34). Moreover, courts in Ohio limit the continuing violation doctrine to Title VII civil rights violations; its application to contract claims is "unlikely." (Doc. 96, at 122 (citing *Cooper v. City of W. Carrollton*, 112 N.E.3d 477, 485 (Ohio 2018))).[14]

### 3. Kansky and Hackman's attempts to side-step pre-suit notice requirements also fail (Counts 38 and 65).

Kansky argues that he can ignore Massachusetts' pre-suit notice requirement because "there is no allegation that Honda (incorporated and headquartered in California) has a place of business or assets within Massachusetts." (Doc. 117, p. 36). This misstates the law. In fact, the inverse is true: courts routinely dismiss cases where plaintiffs fail to allege defendants have no business or assets in Massachusetts.[15] *Bean v. Bank of N.Y. Mellon*, 2012 WL 4103913, at *7 (D. Mass.

---

[13] At best, Plaintiffs allege continuing **injuries** from Honda's initial failure to disclose. But "'courts must be careful to differentiate between [the unlawful] acts and the ongoing injuries which are the natural, if bitter, fruit of such acts,' which do not restart the clock." *Monteferrante v. Williams-Sonoma, Inc.,* 241 F. Supp. 3d 264, 272 (D. Mass. 2017) (citation omitted).

[14] Plaintiffs' cases to rebut this point are inapposite. *See Roelle v. Orkin Exterminating Co.*, 2000 WL 664865, at *7 (Ohio Ct. App. Nov. 7, 2000) (explaining that, in the case of an annually renewed contract for services, the statute begins to run upon termination of the final renewal); *Keiber v. Spicer Const. Co.*, 1999 WL 335140 (Ohio Ct. App. May 28, 1999) (finding action not time-barred when the parties remained in repeated communication about the underlying OCSPA violations because the continued representations themselves constituted an "unfair or deceptive act or practice" under the law); *Ruth v. Unifund CCR Partners*, 2009 WL 585847, *11 (N.D. Ohio Mar. 6, 2009) (discussing the federal Fair Debt Collection Practices Act).

[15] *Richards v. Arteva Specialties*, the sole case on which Plaintiffs rely, is inapposite because the defendant *admitted* it did not have any assets or a place of business in Massachusetts. *See Richards v. Arteva Specialties S.A.R.L.*, 850 N.E.2d 1068, 1079 n.13 (Mass. App. Ct. 2006).

249748.13

Sept. 18, 2012); *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liability Litig.*, 155 F. Supp. 3d 772, 819 (N.D. Ill. 2016) ("Plaintiffs' allegation that Rust-Oleum is an Illinois corporation and silence as to a place of business or assets in Massachusetts does not suffice, however, as they 'must allege facts' supporting the exception's application." (citation omitted)). Here, Plaintiffs do not allege that Honda has no place of business or assets in Massachusetts. Accordingly, Plaintiffs cannot evade the pre-suit notice requirements under Massachusetts General Laws ch. 93A.

Hackman's arguments under Ohio law fare no better. As a threshold matter, compliance with OSCPA's pre-suit notice requirement can (and should) be decided at the motion to dismiss stage. *See, e.g.*, *Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *15 (N.D. Ohio Jan. 29, 2019) (dismissing OSCPA claim on prior notice grounds); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 870 (S.D. Ohio 2012) (same). As one of Plaintiffs' own cases illustrates, there is no need to wait for class certification:

> [T]he Court is not persuaded that the class action claims cannot be dismissed at this procedural juncture . . . . [I]f Plaintiffs cannot identify sufficient prior notice at this time, they will be unable to do so . . . in the future. A court should not allow class claims to continue if it only would be delaying inevitable dismissal.

*Gascho v. Global Fitness*, 863 F. Supp. 2d 677, 693 (S.D. Ohio 2012).

Furthermore, none of the 11 cases Hackman cites in the complaint satisfy

249748.13

OSCPA's notice requirements. Plaintiffs' opposition concedes that consent and default judgment cases do not constitute notice (Doc. 117, pp. 46–47), which renders five of the cases inapposite.[16] And the remaining cases do not involve substantially similar conduct to that alleged in the Complaint.[17] *See*, e.g., *Albright*, 2019 WL 5307068, at *15 (dismissing OSCPA claim on notice grounds where "[n]one of the conduct in the cases cited by Plaintiffs is analogous").

**E.    The Multistate Class Claims Still Fail (Counts 2 and 3).**

In partially granting Honda's first Rule 12 motion, the Court ordered Plaintiffs, "within 45 days of th[e] opinion, and before the commencement of discovery," to "identify a ***named plaintiff for each state*** for which the plaintiffs wish to assert a statutory state law claim." (Doc. 96, p. 20 (emphasis added); *see also* Doc 100). Plaintiffs blatantly refused to do so. The TAC raises statutory claims for many states for which there are no named plaintiffs. (Doc. 108, ¶¶ 430–60). According to Plaintiffs, this is acceptable because of *In re Zantac (Ranitidine)*

---

[16]    See *State ex rel. Montgomery v. Ford Motor Co.* (OPIF #10002123); *State ex rel. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); *State ex rel. Jim Petro v. Craftmatic Org., Inc.* (OPIF #10002347); *Brown v. Spears* (OPIF #10000403); *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

[17]    *See, e.g.*, *Cranford v. Joseph Airport Honda, Inc.* (OPIF #10001586) (involving backdating of a sales contract, using a term improperly in the contract, and failing to sell the vehicle at its advertised price); *Borror v. Marine Max of Ohio* (OPIF #10002388) (involving luxury boat that sustained damage prior to purchase and disclosure agreement did not set out critical facts about the extent of prior damage or the repair history); *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382) (involving vehicle afflicted by many different problems, requiring twenty repairs in two years). Indeed, another auto defect case distinguished *Mason* from those, like here, "in which the product contained a single or small number of defects." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d at 870.

*Products Liability Litigation*, 2022 WL 16729170 (11th Cir. Nov. 1, 2022). Not so. *Zantac* is not an excuse for refusing to follow court orders. If Plaintiffs believed *Zantac* altered the relevant law, they should have timely filed a notice of supplemental authority or motion for reconsideration. *Zantac* was decided in November 2022, four months before the Court issued its order. At no time between November 2022 and September 6, 2023, when Plaintiffs filed their instant opposition, did Plaintiffs bring *Zantac* to this Court's attention.

Furthermore, as Plaintiffs themselves concede, *Zantac* is unpublished and, thus, not binding. *See Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1436 (11th Cir. 2022) ("Our unpublished opinions are not precedential, so they do not bind us or district courts to any degree."). In the absence of controlling authority, this Court should not reward Plaintiffs' disregard of court orders by reversing course and allowing the multi-state classes to go forward without a named plaintiff for each state. Rather, this Court should enforce its prior orders. *See Degen v. United States*, 517 U.S. 820, 827 (1996) ("A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Counts 2, 3, 11, 25, 26, 29–31, 34, 37, 38, 43, 44, 49, 56, 57, 62, 63, and 68.

Dated: September 27, 2023

/s/ C. Meade Hartfield
C. Meade Hartfield
John E. Goodman
T. Brooks Proctor
BRADLEY ARANT BOULT CUMMINGS
LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
E-mail: mhartfield@bradley.com

William A. Delgado (*pro hac vice*)
Megan O'Neill (*pro hac vice*)
Justin Goodwin (*pro hac vice*)
Lauren Hudecki (*pro hac vice*)
DTO LAW
601 South Figueroa Street, Suite 2130
Los Angeles, CA 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802
E-mail: wdelgado@dtolaw.com

*Attorneys for Defendant*
*American Honda Motor Co., Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2023, I served a copy of the foregoing via the Court's electronic filing system, which will send notification of such filing to the following:

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Demet Basar (pro hac vice)
Lydia Keaney Reynolds (pro hac vice)
J. Mitch Williams
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Email: dee.miles@beasleyallen.com
        clay.barnett@beasleyallen.com
        mitch.williams@beasleyallen.com
        demet.basar @beasleyallen.com
        Lydia.Reynolds@BeasleyAllen.com
        Mitch.williams@Beasleyallen.com

Adam J. Levitt (pro hac vice)
John E. Tangren*
Daniel R. Ferri*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dicellolevitt.com
        jtangren@dicellolevitt.com
        dferri@dicellolevitt.com

*Counsel for Plaintiffs and
Interim Class Counsel*

249748.13

Timothy G. Blood (pro hac vice)
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, California 92101
Telephone: 619-338-1100
tblood@bholaw.com

Christopher A. Seeger *
Christopher L. Ayers *
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com
cayers@seegerweiss.com

Scott A. George *
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: 215-564-2300
sgeorge@seegerweiss.com

James E. Cecchi*
Lindsey H. Taylor*
Caroline F. Bartlett*
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRIDY & ANGELO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: 973-994-1700
jcecchi@carellabyrne.com

*Additional Counsel for Plaintiffs*
*pro hac vice forthcoming

　　　/s/ C. Meade Hartfield　　　　　
　　　　C. Meade Hartfield

23